UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LARRY EWERS,<br>    Plaintiff,<br><br>v.<br><br>CHRISTOPHER PATRICK HERON,<br>CORPORATION OF THE BANKHOUSE, INC.,<br>SOCIETE BANKHOUSE, and<br>JAMES F. POMEROY, II,<br>    Defendants. | CIVIL ACTION<br>NO. 04-10024-RWZ |

### AFFIDAVIT OF ALAN M. SPIRO IN SUPPORT OF
### PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT

I, Alan M. Spiro, on oath depose and state as follows:

1. I am a partner of Edwards & Angell, LLP. I am lead counsel in this case for plaintiff Larry Ewers ("Ewers").

2. Defendant Corporation of the BankHouse, Inc. ("COB") is a corporation organized under the laws of Delaware, is not an infant or incompetent person, and as a corporation, is not entitled to the Soldiers' and Sailors' Civil Relief Act of 1940.

3. Defendant James F. Pomeroy, II ("Pomeroy") is an individual who resides at 11 Meadow Haven Drive, Mashpee, Massachusetts. James F. Pomeroy, II is the principal owner and chief executive officer of COB. Mr. Pomeroy is not an infant or incompetent person, is not in military service, and is not entitled to the benefits of the Soldiers' and Sailors' Civil Relief Act of 1940.

4. Process was served by Constable John F. Keogh on COB by in-hand delivery to Pomeroy as president of the corporation on February 5, 2004.

- 2 -

5. Process was served by Constable John F. Keogh on Pomeroy by in-hand delivery to him on February 5, 2004.

6. Upon application of the Plaintiff, Notice of Default was entered on March 30, 2004 against defendants COB and Pomeroy, for failure to plead or otherwise defend as provided by Rule 55(a) of the Federal Rules of Civil Procedure.

7. As of the date of this motion, no response to the Complaint has ever been served on the plaintiff or reported as filed with the Court.

8. As of the date of this motion, no response to the Notice of Default has ever been served on the plaintiff or reported as filed with the Court.

9. Plaintiff seeks entry of judgment seeking a sum certain of $4,480,000 on each of Counts I – IV of the Complaint (but without duplication), trebled to $13,440,000 under Count V. These sums are calculated as follows.

10. In an Agreement dated January 17, 2002, a true copy of which is attached hereto as Exhibit A (the "Agreement"), Heron admitted to a debt defined as the "Cho/Liner Debt" in the amount of $1,980,000,000. *See* Exhibit A at § 1.15. Heron admitted in § 3.3 of the Agreement that "Mr. Heron is indebted to Mr. Liner for the Cho/Liner Debt."

11. Pursuant to an Exclusive Power of Attorney dated January 11, 2002, Ewers became, and remains, the sole and exclusive attorney-in-fact for Liner with respect to, among other matters, all of Liner's rights under the Agreement. A true copy of the Power of Attorney is attached as Exhibit B. The $1,980,000,000 Cho/Liner Debt is payable to Ewers.

12. In the Agreement, Heron agreed to pay "the Settlement Sum," defined in § 1.19 of the Agreement as "Seventy percent of the liquidated value of the Heron Net Worth." Heron agreed in § 4.1 of the Agreement to remit the Settlement Sum by "the Payment Date," defined in § 1.18 of the Agreement as January 24, 2002. The parties further agreed that "time shall be of the essence." § 4.1.

13. Heron did not pay the Settlement Sum by the Payment Date, nor has he paid the Settlement Sum at any time thereafter.

14. In § 4.2 of the Agreement, Heron further agreed to provide a "Financial Statement" of "the Heron Net Worth."

15. On January 31, 2002, defendant Pomeroy, on COB stationary, wrote Heron (*see* Exhibit C):

> "I have included for your review a letter of detail concerning the internal cash flow detail for Syndicate 150.... The report states value for only the remaining Participation Interests in the COB Syndicate 150. It does not value current or accrued coupons, partnership interests, rights or attachments of interests in underlying transactions."

A true copy of this correspondence is attached as Exhibit C.

16. The "Interim Review" attached to Pomeroy's letter stated:

> "Effective 15 January 2002, the syndicate holds remaining participation amounts of USD 1,814,158.25 in accordance with our internal cash flow detail for Syndicate 150. These participation amounts take the form of corporate note obligations exclusive of current and/or accrued coupons, rights or attachments in underlying transaction interests."

*See* Exhibit C. No value was provided for the excluded items, and they were not otherwise described.

17. Pomeroy's letter to Heron further stated:

BOS_448996_1/ASPIRO

> "We are negotiating with the South African partnerships at your direction the sale of the current participation amounts in Syndicate 150. This group valued the potential purchase of Syndicate 150 remaining interests at approximately USD $4.48 Million during our last working session."

18. On February 1, 2002, defendant Heron transmitted the Financial Statement required by the Agreement, which described his assets, as they related to defendants COB and Pomeroy, as follows:

> "Corporate note obligations held through Syndicate 150 Societe BankHouse (net of any outstanding liabilities and charges) Current Sale Value $4,480,000 USD...."

A true copy of this correspondence is attached as Exhibit D.

19. As of the time that COB, Pomeroy and Heron all agreed that COB was holding assets belonging to Heron in the amount of $4,480,000, Heron had admitted to the "Cho/Liner Debt" in the amount of $1,980,000,000, which debt is payable to Ewers.

20. Heron agreed the Settlement Sum would extinguish the debt currently owed to Ewers only if "the Settlement Sum is paid by Mr. Heron on or before the Payment Date." Agreement § 6. Other conditions were also imposed, and were not fulfilled by Mr. Heron, but Heron's failure to pay the Settlement Sum by the Payment Date, without more, rendered the entire $1,980,000,000 due and payable to Ewers.

21. Of the $1,980,000,000 due and payable to Ewers, $4,480,000 was held in trust for Heron by COB and Pomeroy.

22. Based on an application dated March 3, 2002, Heron was adjudged bankrupt in the United Kingdom on June 18, 2002. Ewers is informed and believes that there is no "automatic stay" of actions against such persons, and that no reciprocity applies between the courts of the United States and the United Kingdom. Furthermore,

the Trustee of the Heron Bankruptcy Proceedings has been informed of, and consented to, the prosecution of this action by Ewers. Therefore, there is no bar to maintaining the present action to judgment.

23. On his List of Creditors in the United Kingdom proceedings, Heron listed the Liner debt, for which Ewers is attorney-in-fact, as "U.S. $ 1.980" Billion Dollars, again admitting, under oath, the debt that is the subject of this lawsuit.

24. On his Schedule of Assets in the United Kingdom proceedings, Heron listed as his only significant asset: "Private Investment Syndicate held and managed on a full discretionary basis by Corporation of the BankHouse, Incorporated, 30 Rowes Wharf, Boston, Mass. U.S.A."

25. Count I of the Complaint states a claim against COB and Pomeroy for tortious interference with the Agreement. In summary, COB and Pomeroy interfered with the Agreement "by refusing to account for ... the Syndicate 150 assets, by refusing to return control of those assets, and by refusing to liquidate the assets and deliver the proceeds" to Heron (Complt. ¶ 35), despite the fact that they "knew of the existence and terms of the Heron Settlement Agreement and Heron's obligations thereunder" (Complt. ¶ 34), and were under a duty to account for and deliver said assets (Complt. ¶ 33). The damages under this Count are the amount of the funds held by COB and Pomeroy for the benefit of Heron and his creditor, Ewers. Pomeroy, COB and Heron have all admitted in writing that this amount was $4,480,000, plus interest as provided by law.

26. Count II of the Complaint states a claim against COB and Pomeroy for fraud and conspiracy to commit fraud. In summary, COB and Pomeroy conspired to and did "fraudulently conceal and preserve for their benefit the assets of Syndicate 150 from

BOS_448996_1/ASPIRO

Heron's creditors, including Ewers" (Complt. ¶ 39). Again, the damages under this Count are the amount of the funds held by COB and Pomeroy for the benefit of Heron and his creditor, Ewers, which amount Pomeroy, COB and Heron have all admitted in writing to be $4,480,000, plus interest as provided by law.

27. Count III of the Complaint states a claim against COB and Pomeroy for constructive trust. In summary, the Complaint alleges that if COB and Pomeroy maintain "any benefit from assets transferred from Heron," they "will be unjustly enriched" (Complt. ¶ 48), and the Complaint seeks a constructive trust in favor of Ewers (Complt. ¶ 49). Again, the damages under this Count are the amount of the funds held by COB and Pomeroy for the benefit of Heron and his creditor, Ewers, which amount Pomeroy, COB and Heron have all admitted to be $4,480,000, plus interest as provided by law.

28. Count IV of the Complaint states a claim against COB and Pomeroy in the nature of an action to reach and apply. In summary, the Complaint alleges that "Heron transferred assets to the Defendants without consideration, and with the intent to hinder, delay and defraud" Ewers. Again, the damages under this Count are the amount of the funds held by COB and Pomeroy for the benefit of Heron and his creditor, Ewers, which amount Pomeroy, COB and Heron have all admitted to be $4,480,000, plus interest as provided by law.

29. Finally, Count V of the Complaint states a claim against COB and Pomeroy under G.L. c. 93A for treble damages and attorneys' fees. Because of the substantial amount of the claim, and in order to simplify this application for entry of final judgment, the plaintiffs waive their claim to attorneys' fees, and seek only the amount of

their damages, $4,480,000, trebled pursuant to G.L. c. 93A to $13,440,000, plus interest as provided by law.

30.     I make this Affidavit solely in connection with Plaintiff's Application for a Default Judgment. I neither intend nor expect to be a witness in this case.

Signed under the penalties of perjury this 15th day of June, 2004.

Alan M. Spiro    BBO # 471650

**CERTIFICATE OF SERVICE**

I, Alan M. Spiro, hereby certify that on June 15, 2004, I served a true copy of the above document upon the above defendants Corporation of the BankHouse, Inc. and James F. Pomeroy II by first class mail to James F. Pomeroy, as President of Corporation of the BankHouse, and to James F. Pomeroy, individually, at 11 Meadow Haven Drive, Mashpee, MA 02649, and upon the defendant Christopher Patrick Heron by first class mail addressed to his residence at 21 Dale House, Boundary Road, London, NW8, United Kingdom.

Alan M. Spiro  (BBO No. 475650)