UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LARRY EWERS,<br>Plaintiff,<br><br>v.<br><br>CHRISTOPHER PATRICK HERON,<br>CORPORATION OF THE BANKHOUSE, INC.,<br>SOCIETE BANKHOUSE, and<br>JAMES F. POMEROY, II,<br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

CIVIL ACTION
NO. 04- 10024-RWZ

### AFFIDAVIT OF ALAN M. SPIRO IN SUPPORT OF PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT AGAINST DEFENDANT CHRISTOPHER PATRICK HERON

I, Alan M. Spiro, on oath depose and state as follows:

1.      I am a partner of Edwards & Angell, LLP.  I am lead counsel in this case for plaintiff Larry Ewers ("Ewers").

2.      Defendant Christopher Patrick Heron ("Heron") is a citizen of the Republic of Ireland, who resides at 21 Dale House, Boundary Road, London, NW8, in the United Kingdom.  Heron is not an infant or incompetent person, is not in military service, and is not entitled to the benefits of the Soldiers' and Sailors' Civil Relief Act of 1940.

3.      Process was served on Heron on April 7, 2004, pursuant to Article 5(b) and 6 of The Convention On The Service Abroad Of Judicial And Extrajudicial Documents In Civil Or Commercial Matters.

4.      Service of the Complaint was effected on Heron at his residence, 21 Dale House, Boundary Road, London, United Kingdom, by delivery in hand on Heron, who,

according to the Process Server's Certificate of Service, "accepted it voluntarily" on April 7, 2004.

     5.    Proof of Service was filed in this Court on April 20, 2004, including the originals of:

     (A)    Certificate of Service, stamped by the Central London County Court;

     (B)    Certificate of Compliance with the Hague Convention, sworn before John Leonard, Solicitor.

     6.    Heron's response to the Complaint was due on April 27, 2004.

     7.    Upon application of the Plaintiff, Notice of Default against Heron was entered on June 4, 2004, for failure to plead or otherwise defend as provided by Rule 55(a) of the Federal Rules of Civil Procedure.

     8.    As of the present date, no response to the Complaint has been served on the plaintiff or reported as filed with the Court.

     9.    As of the present date, no response to the Notice of Default has been served on the plaintiff or reported as filed with the Court.

     10.    Plaintiff seeks entry of judgment seeking a sum certain of $1,980,000,000 on each of Counts II – IV of the Complaint (but without duplication), trebled to $5,940,000,000 under Count V.   These sums are calculated as follows.

     11.    In an Agreement dated January 17, 2002, a true copy of which is attached hereto as Exhibit A (the "Agreement"), Heron admitted to his debt, defined as the "Cho/Liner Debt," in the amount of $1,980,000,000. *See* Exhibit A at § 1.15. Heron admitted in § 3.3 of the Agreement that "Mr. Heron is indebted to Mr. Liner for the Cho/Liner Debt."

12.     Pursuant to an Exclusive Power of Attorney dated January 11, 2002, Ewers became, and remains, the sole and exclusive attorney-in-fact for Liner with respect to, among other matters, all of Liner's rights under the Agreement. A true copy of the Power of Attorney is attached as Exhibit B. Pursuant to the Power of Attorney, the $1,980,000,000 Cho/Liner Debt is payable to Ewers.

13.     In the Agreement, Heron agreed to pay "the Settlement Sum," defined in § 1.19 of the Agreement as "Seventy percent of the liquidated value of the Heron Net Worth." Heron agreed in § 4.1 of the Agreement to remit the Settlement Sum by "the Payment Date," defined in § 1.18 of the Agreement as January 24, 2002. The parties further agreed that "time shall be of the essence." § 4.1.

14.     Heron did not pay the Settlement Sum by the Payment Date, nor has he paid the Settlement Sum at any time thereafter.

15.     Heron agreed that the Settlement Sum would extinguish the debt currently owed to Ewers only if "the Settlement Sum is paid by Mr. Heron on or before the Payment Date." Agreement § 6. Other conditions were also imposed, and were not fulfilled by Mr. Heron, but Heron's failure to pay the Settlement Sum by the Payment Date, without more, rendered the entire $1,980,000,000 due and payable to Ewers on January 25, 2002.

16.     Based on an application dated March 3, 2002, Heron was adjudged bankrupt in the United Kingdom on June 18, 2002. Ewers is informed and believes that there is no "automatic stay" of actions against such persons, and that no reciprocity applies between the courts of the United States and the United Kingdom. Furthermore, the Trustee of the Heron Bankruptcy Proceedings has been informed of, and consented to,

BOS_451808_1/ASPIRO

the prosecution of this action by Ewers. Therefore, there is no bar to maintaining the present action to judgment.

17.    On his List of Creditors in the United Kingdom proceedings, Heron listed the Liner debt, for which Ewers is attorney-in-fact, as "U.S. $ 1.980" Billion Dollars, again admitting under oath the debt that is the subject of this lawsuit.

18.    Count II of the Complaint states a claim against Heron (as well as against Defendants COB and Pomeroy) for fraud and conspiracy to commit fraud. With respect to Heron, the damages have been established: Heron has admitted, both in the Agreement and on his List of Creditors in the United Kingdom proceedings, that his debt to Ewers is $1,980,000,000. Judgment should be entered in favor of Ewers and against Heron in the amount of $1,980,000,000, plus interest as provided by law.

19.    Count III of the Complaint states a claim against Heron (as well as against Defendants COB and Pomeroy) for constructive trust. In summary, the Complaint alleges that if COB and Pomeroy maintain "any benefit from assets transferred from Heron," they "will be unjustly enriched" (Complt. ¶ 48), and the Complaint seeks a constructive trust in favor of Ewers (Complt. ¶ 49). With respect to Heron, the amount of this claim has been liquidated: Heron has admitted, both in the Agreement and on his List of Creditors in the United Kingdom proceedings, that the debt is $1,980,000,000, and a constructive trust should be imposed on all funds held by COB and Pomeroy for the benefit of Heron and his creditor, Ewers, up to the full amount owed by Heron to Ewers, or $1,980,000,000, plus interest as provided by law.

20.    Count IV of the Complaint states a claim against Heron (and against Defendants COB and Pomeroy) in the nature of an action to reach and apply. In

- 4 -

summary, the Complaint alleges that "Heron transferred assets to the Defendants without

consideration, and with the intent to hinder, delay and defraud" Ewers. With respect to

Heron, the amount of this claim has been established: Heron has admitted, both in the

Agreement and on his List of Creditors in the United Kingdom proceedings, that the debt

is $1,980,000,000, and the Court should (a) permanently enjoin Heron, COB and

Pomeroy from using, selling, conveying, transferring, assigning, pledging, encumbering,

hypothecating or otherwise disposing of any funds or assets held or obtained by any of

them from Heron, directly or indirectly, up to the full amount owed by Heron to Ewers,

or $1,980,000,000, plus interest as provided by law, and (b) apply any funds or assets

held by Heron or obtained by any of the Defendants from Heron, directly or indirectly, up

to the full amount owed by Heron to Ewers, or $1,980,000,000, plus interest as provided

by law.

21.    Count V of the Complaint states a claim against Heron under G.L. c. 93A

for treble damages and attorneys' fees. Because of the substantial amount of the claim,

and in order to simplify this application for entry of final judgment, the Plaintiff waives

his claim to attorneys' fees, and seeks the amount of his acknowledged damages,

$1,980,000,000, trebled pursuant to G.L. c. 93A to $5,940,000,000, plus interest as

provided by law.

22.    I make this Affidavit solely in connection with Plaintiff's Application for a

Default Judgment. I neither intend nor expect to be a witness in this case.

Signed under the penalties of perjury this 9th day of July, 2004.

Alan M. Spiro    BBO # 471650

BOS_451808_1/ASPIRO

## CERTIFICATE OF SERVICE

I, Alan M. Spiro, hereby certify that on July 9, 2004, I served a true copy of the above document upon the upon the defendant Christopher Patrick Heron by first class mail addressed to his residence at 21 Dale House, Boundary Road, London, NW8, United Kingdom, upon the defendant Corporation of the BankHouse, Inc. by first class mail to James F. Pomeroy, as President of Corporation of the BankHouse, and upon the defendant James F. Pomeroy, individually, at 11 Meadow Haven Drive, Mashpee, MA 02649.

Alan M. Spiro  (BBO No. 475650)

- 6 -

BOS_451808_1/ASPIRO

# EXHIBIT A

DATED   17d January   2002


**(1) H E LINER ESQ**

**(2) A P BAN ESQ**

**(3) A PLADOTT ESQ**

**(4) A S FELDMAN ESQ**

**(5) C P HERON ESQ**

---

# AGREEMENT

---

**Anthony Feldman & Co**
**40 Manchester Street**
**London W1U 7LL**

**Tel: 020-7935 2718**
**Ref: 30.KB.1451/1452/1756/1799**

**AN AGREEMENT** made the 17th day of January 2002 **BETWEEN**

(1)    **HOWARD EUGENE LINER** of 21403 Crystal Greens, Katy, Texas 77450 USA ("Mr Liner")

(2)    **AH PING BAN** of 231 Outram Road, 01-01 Tarng Chern Building, Singapore 169040 ("Mr Ban")

(3)    **ALEXANDER PLADOTT** of 20000 Winnetka Place, Woodland Hills, California 91364 USA and **ANTHONY STEPHEN FELDMAN** of 40 Manchester Street, London W1U 7LL the Trustees of the Flamecrest Enterprises Limited Trust ("Flamecrest")

(4)    **ALEXANDER PLADOTT** of 20000 Winnetka Place, Woodland Hills, California 91364 USA and **ANTHONY STEPHEN FELDMAN** of 40 Manchester Street, London W1U 7LL the Trustees of the Balz Rudolf Wolfensberger Discretionary Trust ("Wolfensberger")

(5)    **CHRISTOPHER PATRICK HERON** of 21 Dale House, Boundary Road, St John's Wood, London NW8 0JB ("Mr Heron")

**IT IS HEREBY AGREED** as follows:

**1.      Definitions**

1.1    "the Ban Contract"          An agreement in writing dated 25th November 1998 and made between Mr Heron (1) and Mr Ban (2) as amended firstly by an undated addendum to the said agreement and secondly by a further addendum to the said agreement dated 24th December 1998

1.2    "the Ban Debt"             US$500,000,000 payable pursuant to the Ban Contract by Mr Heron together with interest thereon from 3rd December 1999

1.3    "the Ban Petition"          A bankruptcy petition to be issued by Mr Ban

|       |                             | Chancery Division, In Bankruptcy, for non-payment by Mr Heron of the Ban Debt |
|-------|-----------------------------|--|

| 1.4 | "the Clients Account" | The United States Dollar Clients Account of the Creditors' Solicitors at Barclays Bank Plc, Barclays Business Centre, Baker Street Branch, 93 Baker Street, London W1A 4SD Sort Code 20-30-19 SWIFT Code BARC GB 22 Account No. 83590699 |
|---|---|---|

| 1.5 | "the Creditors" | Mr Liner, Mr Ban, Flamecrest and Wolfensberger |
|---|---|---|

| 1.6 | "the Creditors' Solicitors" | Messrs. Anthony Feldman & Co of 40 Manchester Street, London W1U 7LL |
|---|---|---|

| 1.7 | "the Financial Statement" | A statement evidencing the amount of the Heron Net Worth as at 15th January 2002 containing full and precise particulars of Mr Heron's assets and liabilities supported by documents evidencing the same and prepared in accordance with generally accepted accounting principles |
|---|---|---|

| 1.8 | "the Flamecrest Contract" | An agreement in writing dated 14th April 1999 made between Mr Heron (1) and Anthony Stephen Feldman Gabriel Frances MacEnroe and Alexander Pladott, the Trustees of the Flamecrest Enterprises Limited Discretionary Trust (2) |
|---|---|---|

| 1.9 | "the Flamecrest Debt" | US$100,000,000 payable pursuant to the Flamecrest Contract by Mr Heron together with Interest thereon from 14th April 2000 |
|---|---|---|

| 1.10 | "the Flamecrest Petition" | A bankruptcy petition to be issued by Flamecrest against Mr Heron in the High Court of Justice. |
|---|---|---|

|  |  | Chancery Division, In Bankruptcy, for payment by Mr Heron of the Flamecrest Debt |
|---|---|---|
| 1.11 | "the Heron Net Worth" | The sum of US$6,000,000 approximately |
| 1.12 | "Interest" | Interest at the Interest Rate accruing from the respective dates from which Interest is payable under the Cho/Liner Contract the Ban Contract the Flamecrest Contract and the Wolfensberger Contract until payment by Mr Heron of the amounts due under the Cho/Liner Contract the Ban Contract the Flamecrest Contract and the Wolfensberger Contract respectively |
| 1.13 | "the Interest Rate" | 8% per annum |
| 1.14 | "the Cho/Liner Contract" | An agreement in writing dated 18th July 2000 and made between Hsin-Ming Chuo and Mr Liner (1) and Mr Heron (2) |
| 1.15 | "the Cho/Liner Debt" | US$1,980,000,000 payable pursuant to the Cho/Liner Contract by Mr Heron together with Interest thereon from 18th July 2001 |
| 1.16 | "the Liner Petition" | A bankruptcy petition to be issued by Mr Liner against Mr Heron in the High Court of Justice, Chancery Division, In Bankruptcy, for payment by Mr Heron of the Cho/Liner Debt |
| 1.17 | "the Parties" | The parties to this agreement |
| 1.18 | "the Payment Date" | The 24th day of January 2002 |
| 1.19 | "the Settlement Sum" | Seventy percent of the liquidated value of the Heron Net Worth |

| 1.20 | "the Statutory Demands" | The Statutory Demands issued against Mr Heron by the Creditors in respect of the Cho/Liner Debt the Ban Debt the Flamecrest Debt and the Wolfensberger Debt |
| 1.21 | "the Wolfensberger Contract" | An agreement in writing dated 15th April 1999 made between Mr Heron (1) and Anthony Stephen Feldman Gabriel Frances MacEnroe and Alexander Pladott, the Trustees of the Balz Rudolf Wolfensberger Discretionary Trust (2) |
| 1.22 | "the Wolfensberger Debt" | US$110,000,000 payable pursuant to the Wolfensberger Contract by Mr Heron together with Interest thereon from 15th April 2000 |
| 1.23 | "the Wolfensberger Petition" | A bankruptcy petition to be issued by Wolfensberger against Mr Heron in the High Court of Justice, Chancery Division, In Bankruptcy, for payment by Mr Heron of the Wolfensberger Debt |

## 2. Interpretation

2.1 References to a Clause where the context so admits are to a Clause of this Agreement

2.2 The clause and paragraph headings in this Agreement are for ease of reference only and are not to be taken into account in the interpretation of the clause or paragraph to which they refer

2.3 Words importing the singular meaning where the context so admits include the plural meaning and vice versa

2.4 Words of one gender include both other genders and words denoting natural persons include corporations and firms and all such words are to be construed interchangeably in that manner



2.5    Words denoting an obligation on a party to do any act matter or thing include an obligation to procure that it be done and words placing a party under a restriction include an obligation not to permit infringement of the restriction

**3.    Recitals**

3.1    Alexander Pladott and Anthony Stephen Feldman are the present Trustees of the Flamecrest Enterprises Limited Trust

3.2    Alexander Pladott and Anthony Stephen Feldman are the present Trustees of the Balz Rudolf Wolfensberger Discretionary Trust

3.3    Mr Heron is indebted to Mr Liner for the Cho/Liner Debt

3.4    Mr Heron is indebted to Mr Ban for the Ban Debt

3.5    Mr Heron is indebted to Flamecrest for the Flamecrest Debt

3.6    Mr Heron is indebted to Wolfensberger for the Wolfensberger Debt

3.7    The Parties have agreed to compromise and settle the amounts due respectively to the Creditors on the terms and conditions hereinafter appearing

**4.    Mr Heron's Obligations**

4.1    On or before the Payment Date Mr Heron shall remit or cause to be remitted to the Clients Account the Settlement Sum with a value date being on or before the Payment Date and in respect of this sub-clause time shall be of the essence of this agreement

4.2    On or before the 1st February 2002 Mr Heron shall provide the Financial Statement of the Heron Net Worth and certified copies of the sale notes evidencing the liquidated amount(s) thereof to the Creditors' Solicitors and in respect of this sub-clause time shall be of the essence of this agreement

4.3    Forthwith upon the signing of this agreement Mr Heron shall sign Consent Orders in the forms annexed hereto dismissing his applications to the Court to set aside the Statutory Demands

4.4    If and when served by the Creditors' Solicitors with any or all of the Liner Petition the Ban Petition the Flamecrest Petition and the Wolfensberger Petition Mr Heron will not on any grounds whatsoever oppose the making by the Court of a Bankruptcy Order against him and will not appeal the same

## 5.    Enforcement of the Contracts

If actual assets and/or liabilities of Mr Heron as at 15th January 2002 including any assets in the names of or under the control of nominees agents or servants increase Mr Heron's actual net worth after taking into consideration only those liabilities listed on the Financial Statement are in excess of the amount of the Heron Net Worth or are not listed in the Financial Statement then (but not otherwise) the amounts due under the Cho/Liner Debt the Ban Debt the Flamecrest Debt and the Wolfensberger Debt shall immediately become due and payable credit being given by the Creditors for the Settlement Sum (if received)

## 6.    Full and Final Settlement

Provided that pursuant to the terms of this agreement the Settlement Sum is paid by Mr Heron on or before the Payment Date and the Financial Statement is delivered on or before 1st February 2002 then (but not otherwise) and provided further that the actual net worth of Mr Heron as at 15th January 2002 does not exceed the net worth of Mr Heron as disclosed in the Financial Statement and there are no assets of Mr Heron in his name or in the names of or under the control of his nominees agents or servants not listed in the Financial Statement the Settlement Sum shall be in full and final settlement and extinction of the Cho/Liner Debt the Ban Debt the Flamecrest Debt and the Wolfensberger Debt

## 7.    Confidentiality

7.1    Each of the Parties to this Agreement shall at all times use its best endeavours to keep confidential (and to procure that its respective employees and agents shall keep confidential) any information which it or they may acquire in relation to the terms of this Agreement and shall not use or disclose such information except with

the consent of the other party to this Agreement or in accordance with the Order of a Court of competent jurisdiction

7.2    The Parties to this Agreement shall procure that the officers employees and agents of each of them observe a similar obligation of confidence in favour of the Parties to this Agreement

7.3    The obligations of each of the Parties contained in clause 7.1 shall continue without limit in point of time but shall cease to apply to any information coming into the public domain otherwise than by breach by any such party of its said obligations Provided that nothing contained in this clause 7 shall prevent any party from disclosing any such information to the extent required in or in connection with legal proceedings arising out of this Agreement

7.4    For the purposes of this clause 7 the expression "party" shall include the subsidiary companies of any party and any other company controlled by that party and the employees or agents of that party and of such subsidiary or controlled companies

7.5    This clause 7 shall survive expiry or termination of this Agreement

8.    **Miscellaneous Provisions**

8.1    Whole agreement
This Agreement contains the whole agreement between the Parties and supersedes any prior written or oral agreement between them relating to it and the Parties confirm that they have not entered into this Agreement on the basis of any representations that are not expressly incorporated in it

8.2    Discretion
No decision exercise of discretion judgment opinion or approval of any matter mentioned in this Agreement or arising from it shall be deemed to have been made by the Parties except if in writing

8.3    No modification
This Agreement may not be modified except by an instrument in writing signed by all of the Parties or their duly authorised representatives

8.4    Force and effect

This Agreement shall be binding upon the Parties to this Agreement and their respective successors and permitted assigns Provided that none of the Parties to this Agreement shall be entitled to assign this Agreement or any of its rights and obligations under this Agreement except as may be otherwise approved in writing by the other parties to this Agreement and on terms that the transferee shall covenant with the other parties to perform all the obligations of the transferor under this Agreement

8.5     <u>No waiver</u>

No exercise or failure to exercise or delay in exercising any right power or remedy vested in any party under or pursuant to this Agreement shall constitute a waiver by that party of that or any other right power or remedy

8.6     <u>Publicity</u>

No party shall be entitled to make or permit or authorise the making of any press release or other public statement or disclosure concerning this Agreement or any of the transactions contemplated in it without the prior written consent of the other party

8.7     <u>Governing law</u>

This Agreement shall be governed by the law of England and Wales in every particular including formation and interpretation and shall be deemed to have been made within England and Wales and the Parties agree to submit to the exclusive jurisdiction of the Courts of England and Wales

AS WITNESS the hands of **LARRY EWERS** in exercise of a Power of Attorney under the hand of the said **HOWARD EUGENE LINER** dated the 11th day of January 2002 and of the said **ANTHONY STEPHEN FELDMAN** as Solicitor and Agent for the said **AH PING BAN** and of the other parties hereto the day and year first before written

SIGNED by the above named **LARRY EWERS**) **HOWARD EUGENE LINER** by his Attorney

as the Attorney and in the name of the above   )

named **HOWARD EUGENE LINER** in the        )  *Larry Ewers*

presence of:                                                    )

4227 SAN FELIPE, No. SF25
HOUSTON, TEXAS  77027

SIGNED by the said **ALEXANDER**                    )

**PLADOTT** in the presence of                    )

AS ABOVE

SIGNED by the said **ANTHONY**                    )

**STEPHEN FELDMAN** in the presence of )

AS ABOVE

SIGNED by the said **CHRISTOPHER**    )

**PATRICK HERON** in the presence of    )

AS ABOVE

# EXHIBIT B

## EXCLUSIVE POWER OF ATTORNEY AND MANDATE

THAT HOWARD EUGENE LINER, being one and the same person as H.E. Liner, Howard E. Liner, and Gene Liner, a resident of Rosenberg, Fort Bend County, Texas, United States of America, has made, constituted, and appointed, and by these presents does make constitute, mandate, and appoint LARRY EWERS a resident of Corpus Christi, Nueces County, Texas, United States of America as his sole, exclusive, true, and lawful Attorney-In-Fact and Mandate for me and to act in my place, and stead for the purpose of doing any and every act, and exercise any and every power, that I might or could do, and that may be reasonably necessary regarding the following contracts and matters:

That certain Memorandum of Understanding, dated July 18, 2000 by and between Chris Heron, Hsin-Ming Chuo, and Howard E. Liner;

That certain Agreement dated January 17, 2002 by and between Howard Eugene. Liner, AH Ping Ban. Alexander Pladott, Anthony Stephen Feldman, and Christopher Patrick. Heron;

Cause No. 384-SD-2001; In the High Court Of Justice In Bankruptcy; RE: Christopher Patrick Heron and Hsin-Ming Chuo and Howard Eugene Liner; and

Cause No. 1625 of 2002; In The High Court Of Justice In Bankruptcy; RE: Christopher Patrick Heron

EXCLUSIVE POWER OF ATTORNEY AND MANDATE
Page 1

_(Initial)_

To do any and every act, and exercise any and every power, that I may have that the Attorney-In-Fact and Mandate shall deem proper or advisable, intending hereby to unconditionally vest in the Attorney-In-Fact and Mandate the sole and exclusive power of attorney for conducting any and all business transactions of every nature and kind relating to the contracts, litigation, claims, and causes of action asserted by me against Christopher Patrick Heron before the Court in the above referenced matters, including without limiting the generality of the powers granted herein, the full exclusive right and authority to compromise and settle said matters.

This Exclusive Power Of Attorney And Mandate shall not terminate on my disability, is irrevocable, and coupled with an interest, and shall only terminate upon the full and final adjudication, resolution, settlement, and disposal of the referenced matters and contracts. I agree that anyone dealing with said Attorney-In-Fact and Mandate may rely upon the statement(s) of such Attorney-In-Fact and Mandate, that this Exclusive Power Of Attorney and Mandate has not been revoked or modified in any manner.

Any action so taken, unless otherwise invalid or unenforceable, shall be binding upon me and my heirs or assigns. An affidavit, executed by the Attorney-In-Fact and Mandate stating that he does not have, at the time of doing an act pursuant to this Exclusive Power Of Attorney and Mandate, actual knowledge of the revocation or termination of this Exclusive Power Of Attorney and Mandate is, in the absence of fraud, conclusive proof of the non-revocation and non-termination of the power at that time.

I hereby ratify and confirm that my sole and exclusive Attorney-In-Fact and Mandate shall lawfully do, or cause to be done by virtue of this Exclusive Power Of Attorney and

EXCLUSIVE POWER OF ATTORNEY AND MANDATE
Page 2


(Initial)

Mandate along with the rights and powers granted herein, all acts necessary in the protection of the claims asserted in the referenced matter and the rights granted under said contracts. Said Attorney-In-Fact and Mandate shall have the powers set forth herein to the exclusion of all other persons or entities, including myself, my heirs and assigns. I hereby indemnify and hold harmless, and I further authorize said Attorney-In-Fact and Mandate to indemnify and hold harmless any third party who accepts and acts under this Exclusive Power Of Attorney and Mandate against any and all claims, demands, losses, damages, actions and causes of action, including expenses, costs, and reasonable attorneys' fees which such third party may incur in connection with his reliance on this Exclusive Power Of Attorney and Mandate.

I hereby bind myself to indemnify and hold harmless said Attorney-In-Fact and Mandate against any and all claims, demands, losses, damages, actions and causes of action, including expenses, costs, and reasonable attorneys' fees which its attorney, at any time, may sustain or incur directly with carrying out the authority granted to him in this Power Of Attorney and Mandate:

This Power Of Attorney and Mandate shall be construed pursuant to the laws of the State of Texas.

EXCLUSIVE POWER OF ATTORNEY AND MANDATE
Page 3

(Initial)

**IN WITNESS WHEREOF,** Howard Eugene Liner executes this Power Of Attorney and Mandate on this the 15ᵗʰ of June, 2002, which shall become effective as of the 11ᵗʰ day of January, 2002 for all purposes.

_Howard E. Liner_
**Howard Eugene Liner**

**THE STATE OF TEXAS**

**COUNTY OF** _Harris_

This Exclusive Power of Attorney and Mandate was acknowledged before me on the _18th_ day of June, 2002, by Howard Eugene Liner.

TRACY STECK
MY COMMISSION EXPIRES
February 2, 2004

_Tracy Steck_
Notary Public In And For
The State Of Texas

**EXCLUSIVE POWER OF ATTORNEY AND MANDATE**
Page 4

_HEL_
(Initial)