UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LARRY EWERS, )<br>)<br>　　Plaintiff, )<br>)<br>　　v. )<br>)<br>)<br>)<br>HOWARD EUGENE LINER, CREDITORS )<br>COMMITTEE OF THE BANKRUPTCY ESTATE )<br>OF CHRISTOPHER PATRICK HERON, AH PING )<br>BAN, FLAMECREST ENTERPRISES LIMITED )<br>TRUST, BLATZ RUDOLPH WOLFENSBERGER )<br>TRUST, )<br>)<br>　　Plaintiff-Intervenors, )<br>)<br>　　v. )<br>)<br>CHRISTOPHER PATRICK HERON, )<br>CORPORATION OF THE BANKHOUSE, INC., )<br>SOCIETE BANKHOUSE, and )<br>JAMES F. POMEROY, II, )<br>)<br>　　Defendants. ) | CIVIL ACTION NO.<br>04-10024-RWZ |

**COMPLAINT OF PLAINTIFF-INTERVENORS**

Jurisdiction and Venue

　　1.　　This Court has jurisdiction over this action pursuant to 18 U.S.C. § 1332 because it is an action between citizens of different states and nations and the amount in controversy exceeds the value of $75,000, exclusive of interest and costs.

　　2.　　This Court has personal jurisdiction over the Plaintiff and all Defendants.

　　3.　　Venue in this District is proper pursuant to 28 U.S.C. § 1391 (a) (2).

Parties

4.     Plaintiff Larry Ewers ("Ewers") is a United States citizen residing in Corpus Christi, Texas.

5.     Plaintiff-Intervenor Howard Eugene Liner ("Liner") is a citizen of the United States and is incarcerated by the Federal Bureau Of Prisons.

6.     Plaintiff-Intervenor Creditors Committee of the Bankruptcy Estate of Christopher Heron (the "Committee") is a committee duly appointed on July 22, 2004 to act on behalf of the estate in bankruptcy of Defendant Christopher Patrick Heron pending in the Courts of competent jurisdiction of the United Kingdom.

7.     Plaintiff-Intervenor Ah Ping Ban ("Ban") is a citizen and resident of Singapore and is represented by Alex Pladott by Power-of-Attorney.

8.     Plaintiff-Intervenor Flamecrest Enterprises Limited Trust ("Flamecrest") is a trust duly organized and validly existing under the laws of the United Kingdom, the authorized trustee of which is Alex Pladott ("Pladott").

9.     Plaintiff-Intervenor Blatz Rudolph Wolfensberger Trust ('Wolfensberger") is a trust duly organized and validly existing under the laws of the United Kingdom, the authorized trustee of which is Pladott.

10.    Defendant Christopher Patrick Heron ("Heron") is a citizen of Ireland and a resident of the United Kingdom.   Heron was adjudged bankrupt by the High Court of Justice In Bankruptcy in the United Kingdom on June 18, 2002 in the case of In re Christopher Patrick Heron, Case No. 1625 of 2002.  The High Court of Justice In Bankruptcy is a court of competent jurisdiction to adjudge Heron bankrupt and to adjudicate the liability of Heron to the Petitioner-Intervenors.

11. Defendant Corporation of the BankHouse, Inc. ("COB") is, on information and belief, a corporation incorporated and existing under the laws of Delaware, with a principal place of business at 30 Rowe's Wharf, Boston, Massachusetts.

12. Defendant Societe BankHouse ("Societe") is, on information and belief, a merchant banking entity with its principal place of business at 30 Rowe's Wharf, Boston, Massachusetts.

13. Defendant James F. Pomeroy, II ("Pomeroy") is, on information and belief, an individual who resides at 11 Meadow Haven Drive, Mashpee, Massachusetts. On information and belief, Pomeroy is the principal owner and chief executive officer of both COB and Societe.

Procedural Facts Regarding Instant Case

14. On January 4, 2004, Plaintiff Larry Ewers initiated the above-styled action against Defendants by filing a Complaint (the "Complaint").

15. On June 4, 2004 the Court granted to Ewers an Entry of Default against all Defendants herein.

16. On July 9, 2004 Ewers moved for Entry Of Final Judgment against Heron. Upon information and belief, no final judgment has yet been granted to Ewers.

17. Plaintiff-Intervenors solely intervene to protect their respective interest in the Final Judgment to be rendered against Heron herein and the funds and assets collected pursuant thereto.

Facts Concerning Claims Of Plaintiff-Intervenors Against Defendants

18. Plaintiff-Intervenors allege each and every fact set forth in the Complaint except as specifically otherwise alleged herein and such allegations are incorporated by reference as if fully set forth.

19. On January 17, 2002, Heron entered into a Settlement Agreement with the Plaintiff-Intervenors Liner, Flamecrest, Ban, and Wolfensberger, four of his creditors (the "Heron Settlement Agreement").

20. In the Heron Settlement Agreement, Heron acknowledged his indebtedness to the Plaintiff-Intervenors as follows: to Liner in the principal amount of One Billion Nine Hundred Eighty Million Dollars ($1,980,000,000.00); to Ban in the principal amount of Five Hundred Million Dollars ($500,000,000); to Flamecrest in the principal amount of One Hundred Million Dollars ($100,000,000); and to Wolfensberger in the principal amount of One Hundred Ten Million Dollars ($110,000,000).

21. The Settlement Agreement acknowledged the debt of each of the Plaintiff-Intervenors. Such debts are valid and legitimate obligations of Heron to the Plaintiff-Intervenors and such debts have been recognized in the courts of competent jurisdiction of the United Kingdom.

22. Heron agreed to liquidate his net worth, which he represented to be approximately Six Million ($6,000,000.00) Dollars, and to pay to the Plaintiff-Intervenors seventy percent of the liquidated value thereof on or before January 24, 2002. In addition, Heron was to provide a financial statement "evidencing the amount of the Heron Net Worth as at 15th January 2002 containing full and precise particulars of Mr.

Heron's assets and liabilities supported by documents evidencing the same and prepared in accordance with generally accepted accounting principles."

23. The "financial statement" tendered by Heron stated a net worth consisting entirely of Heron's ownership interest in what was eventually identified as Syndicate 150, an account under the exclusive management of COB, the entity controlled and directed by Pomeroy.

24. On the January 29, 2002, Heron wrote to the then solicitor for Plaintiff-Intervenors: "The schedule of assets will be contained in my financial statement, that schedule should be furnished today and include an estimate of the further time needed to liquidate the assets. I will not know the nature of the assets until I receive the schedule. The assets are under management of a third party with complete discretion with the proviso that the capital is not to be depleted."

25. The third party referred to by Heron in this correspondence was COB, an entity directed and controlled by Pomeroy.

26. On January 31, 2002, Pomeroy, as President of COB, replied to Heron. He attached an "Interim Review" to his letter and cautioned that that report "states value for only the remaining Participation Interests in the COB Syndicate 150. It does not value current or accrued coupons, partnership interests, rights or attachments of interests in underlying transactions." The attached "Interim Review" states: "Effective 15 January 2002, the syndicate holds remaining participation amounts of USD 1,814,158.25 in accordance with our internal cash flow detail for Syndicate 150. These participation amounts take the form of corporate note obligations exclusive of current and/or accrued

coupons, rights or attachments in underlying transaction interests." No value was given for the excluded items and they are not otherwise described.

27.  In the same January 31, 2002 correspondence, Pomeroy reported that: "We are negotiating with the South African partnerships at your direction, the sale of the current participation amounts in Syndicate 150. This group valued the potential purchase of Syndicate 150 remaining interests at approximately USD $4.48 Million during our last working session."

28.  On his financial statement of February 1, 2002, Heron described his asset as "Corporate note obligations held through Syndicate 150 Societe BankHouse."

29.  Based on the application of Liner as the petitioning creditor, Heron was placed in bankruptcy in the United Kingdom on June 18, 2002. On his schedule of assets, he listed as the only significant asset: "Private Investment Syndicate held and managed on a full discretionary basis by Corporation of the Bankhouse, Incorporated."

30.  On July 8, 2003, Ewers' representative requested Pomeroy in writing to identify the Syndicate 150 assets and to voluntarily produce the relevant documents. Pomeroy never responded.

Facts Concerning The Relationship Between Plaintiff and Plaintiff-Intervenors

31.  In paragraph 2 of the Complaint, Ewers alleged that he was the sole plaintiff and party in interest with respect to the causes of action alleged in the Complaint.

32.  In paragraph 22 of the Complaint Ewers alleged that he was acting as plaintiff in the case on behalf of Plaintiff-Intervenor Liner based on a Power-of-Attorney dated January 11, 2002 (the "Power Of Attorney").

33. Ewers has no interest in the causes of action set forth in the Complaint except as Liner's attorney-in-fact.

34. The Power Of Attorney was granted by Liner to Ewers as an integral part of the relationship set forth in that certain Compensation Agreement executed by Liner and Ewers on May 3, 2002 and made effective by its terms as of July 1, 2001 (the "Compensation Agreement"). There has never been a legally binding assignment of any interest owned by Liner in any assets, causes of action, or claims to Ewers. Liner is obligated to make payment or distribute value to Ewers, if at all, only if the assets or funds to be distributed are part of the Bankruptcy Estate of Heron pursuant to the terms of the Compensation Agreement.

35. On January 5, 2004 Ewers, acting as attorney-in-fact for Liner pursuant to the Power Of Attorney and the Compensation Agreement, filed the Complaint herein. Plaintiff-Intervenors realledge each and every factual allegation set forth in the Complaint herein except as specifically otherwise alleged herein.

36. The Power Of Attorney was terminated effective July 16, 2004.

37. Ewers, while serving as attorney in fact of Liner pursuant to the Power Of Attorney, breached his fiduciary duty to Liner and, upon information and belief, acted contrary to the interests of Liner, his principal, including but not limited to the following: (a) Ewers failed to inform Liner of the actions being undertaken pursuant to the Power Of Attorney or provide information to Liner after repeated requests for such information; (b) Ewers represented himself as a principal instead of attorney in fact in an attempt to obtain judgments in his own name to deprive Liner of his legitimate rights to any recovery pursuant thereto; (c) Ewers misrepresented to third parties, this court, and other

jurisdictions that he had received an assignment of causes of action and claims rightfully belonging to Liner; (d) Ewers has used the Power Of Attorney in an attempt to secret assets of Heron from the Bankruptcy Court in the United Kingdom and the Trustee In Bankruptcy appointed thereby; and (e) Ewers attempted to use the Power Of Attorney to maintain actions which are not authorized by the Power Of Attorney in other jurisdictions without informing Liner, his principal, in an attempt to obtain assets of Heron for himself and on his own behalf.

38.     On January 2, 2003 all Plaintiff-Intervenors executed a Memorandum Of Understanding whereby they appointed Alexander Pladott, a citizen and resident of the State of California ("Pladott"), to negotiate on behalf of Plaintiff-Intervenors with Heron and coordinate such efforts with the Trustee In Bankruptcy appointed by the High Court of Justice In Bankruptcy, London, U.K.  Pladott was and continues to be a trustee of Flamecrest and Wolfensberger.

39.     On January 29, 2003 Ewers and Pladott entered into a legally binding and valid agreement (the "January 29 Agreement").

40.     The January 29, Agreement provided, among other things, the following: (a) Pladott and Ewers would establish a joint bank account into which was to be deposited all assets recovered from Heron; and (b) division of amounts deposited into the joint bank account between and among the Plaintiff-Intervenors.

41.     On May 5, 2003 Pladott and Ewers entered into a valid and legally binding agreement (the "May 5 Agreement").

42.     The May 5 Agreement provided, among other things, for the division of all funds recovered from Heron among the Plaintiff-Intervenors.

## COUNT I

## Constructive Trust

43. Plaintiff-Intervenors reallege and incorporates by reference the allegations contained in paragraphs 1 through 42 as though fully set forth herein.

44. Plaintiff-Intervenors are the true parties in interest to the causes of action alleged in the Complaint.

45. Ewers and Plaintiff-Intervenors have agreed that all assets of Heron are to be deposited into a joint bank account with the representatives of the respective interest holders having signatory authority and divided among the claimants in accordance with their agreements.

46. The establishment of the joint bank account contemplated by Ewers and Plaintiff-Intervenors under supervision of the Court and an order requiring Ewers and Plaintiff-Intervenors to deposit therein all assets of Heron is essential to protect the interests of the Plaintiff-Intervenors.

47. The establishment of the joint bank account contemplated by Ewers and Plaintiff-Intervenors under supervision of the Court and an order requiring Ewers and Plaintiff-Intervenors to deposit all assets of Heron therein is essential to avoid unjust enrichment of any claimant against heron.

## COUNT II

## (Injunction)

48. Plaintiff-Intervenors repeat, reallege and incorporate by reference the allegations contained in paragraphs 1 through 46 as though fully set forth herein.

49. Ewers has repeatedly declined to provide to Liner information concerning his actions pursuant to the Power Of Attorney.

50. Upon information and belief Ewers has utilized the Power Of Attorney for his own benefit and not for the benefit of Liner in breach of Ewer's fiduciary duty to Liner.

51. Ewers owes a duty to Liner to disclose all information concerning or relating to Heron's assets or causes of action against Heron or third parties relating to Heron to Liner.

52. Ewers owes a duty to Liner to disclose to Liner all instances and situations where the Power Of Attorney has been utilized in bringing suits, seeking the collection of assets, or take other action with respect to Heron or any third party.

## COUNT IIII

### (Reach and Apply)

53. Plaintiff-Intervenors repeat, reallege and incorporate by reference the allegations contained in paragraphs 1 through 52 as though fully set forth herein.

54. Upon information and belief, Ewers transferred assets to his own account or for his benefit which rightly belong to Plaintiff-Intervenors without consideration, and with the intent to hinder, delay and defraud Plaintiff-Intervenors.

55. Ewers is liable as a fiduciary to account to Liner for any and all instances in which Ewers or anyone acting on his behalf has transferred money or assets utilizing or based upon the Power Of Attorney.

WHEREFORE, Plaintiff-Intervenors pray that this Court:

1) Enter default judgment against Defendants in favor of Plaintiff-Intervenors;

2) Impose a constructive trust on behalf of Plaintiff-Intervenors on any assets obtained or collected pursuant to the default judgment by requiring the establishment of a joint bank account under the supervision and jurisdiction of the court and require deposit therein of all funds obtained by Ewers or any Plaintiff-Intervenors from any of the Defendants;

3) Temporarily and, after hearing, permanently enjoin Ewers from acting in any way pursuant to the Power Of Attorney and requiring Ewers to disclose all facts concerning any instance where Ewers has initiated any action or obtained any funds based upon the powers granted to him in the Power Of Attorney;

4) Grant all remedies sought in the Complaint against Defendants.

5) Provide such other and further relief as the Court may find just and proper.

<u>JURY DEMAND</u>

Plaintiff-Intervenor demand a trial by jury on all issues so triable.

                                                                     Plaintiff-Intervenors
                                                                     By their attorneys,

Dated: August 4, 2004                        _____S/_____
                                                                     Charles P. Kazarian, P.C.
                                                                     77 North Washington Street
                                                                     Boston, Massachusetts 02114
                                                                     (617) 723-6676
                                                                     BBO: 262660


                                                                  _____S/_____
                                                                  Thomas L. Kummer
                                                                 706 Brookdale Drive
                                                                Statesville, North Carolina 28677
                                                                N.C. State Bar No. 5708
                                                                (775)338-3705

## CERTIFICATE OF SERVICE

      The undersigned hereby certifies that on the 4th day of August, 2004 the attached Complaint Of Plaintiff-Intervenors was served by delivering copies thereof to the United States Post Office in envelopes properly addressed and First Class postage prepaid, which envelopes were addressed as follows:

| | |
|---|---|
| Larry Ewers<br>c/o Alan M. Spiro, Esq.<br>Edwards and Angell, LLP<br>101 Federal Street<br>Boston, Massachusetts 02110 | Corporation Of The Bankhouse, Inc.<br>Societe Bankhouse<br>James F. Pomeroy<br>11 Meadow Haven Drive<br>Mashpee, Massachusetts 02649 |
| Christopher Patrick Heron<br>21 Dale House, Boundary Road<br>London, NW8, United Kingdom | |

                                                                   _____S/_____
                                                                Charles P. Kazarian