UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LARRY EWERS,<br>    Plaintiff,<br><br>v.<br><br>CHRISTOPHER PATRICK HERON,<br>CORPORATION OF THE BANKHOUSE, INC.,<br>SOCIETE BANKHOUSE, and<br>JAMES F. POMEROY, II,<br>    Defendants. | CIVIL ACTION<br>NO. 04-10024-RWZ |

## PLAINTIFF'S OPPOSITION TO
## MOTION FOR LEAVE TO ENTER APPEARANCE PRO HAC VICE

Plaintiff Larry Ewers opposes the Motion for Leave to Enter Appearance Pro Hac Vice filed on behalf of Thomas L. Kummer, Esq., on the grounds that (a) Mr. Kummer's suitability to practice in this jurisdiction is open to question because of his own plea of guilty to a Federal crime, and (b) Mr. Kummer appears to have been involved as a participant in certain troubling underlying events, is therefore likely to be subject to disqualification, and, in any event, his appearance would be unseemly.[1] Ewers submits this opposition "in the alternative," as he has opposed the intervenors' Motion to Intervene.

I. Mr. Kummer Has Pleaded Guilty To A Felony.

Thomas L. Kummer, whom we believe to be the same person as the movant, pleaded to one count of violating 18 U.S.C. § 1954 ("Offer, acceptance, or solicitation to influence operations of employee benefit plans") pursuant to a plea agreement. U.S. v. Kummer, 89 F.3d 1536, 1538 (11th Cir. 1996). The information alleged that, at a time when "Kummer was General Counsel of [the] Tahoe [Company]," "a real estate development company located in Reno,

---

[1] The undersigned has never before, in 22 years of practice, opposed a motion for *pro hac vice* appearance, and does not do so lightly now.

Nevada" (89 F.3d at 1539), and "Defendant Jernigan was the business agent and financial secretary for the United Brotherhood of Carpenters Local 256 in Savannah, Georgia [and] also trustee of the local's health and welfare plan, an employee benefit plan" (*id.* at 1538):

- ¶ 3: "Kummer conspired to obtain money for stock 'in exchange for' providing a loan for Jernigan's benefit" (89 F.3d at 1540);

- ¶ 6: Kummer "combined with others to offer value 'to influence' the operations of an employee benefit plan" (*id.*); and

- ¶ 7: Kummer "assisted others 'to influence' Jernigan to use plan moneys to buy Tahoe stock" (*id.*).

Although the Eleventh Circuit rejected Kummer's argument on appeal that he had "pleaded guilty only to the gratuity prong of § 1954" and "that the court should have applied the base offense level for gratuities" rather than that for a "bribe" (89 F.3d at 1541 – 42), and also determined that there was "sufficient evidence on which the court could find that the loan was a bribe" (*id.* at 1545), Kummer successfully appealed his eighteen-month sentence on the grounds that the District Court had told the defendants they "would be able to withdraw their plea if the court did not accept the [plea] agreement," and Kummer was "not afforded the opportunity to withdraw" his plea. 89 F.3d at 1543 – 44. The Court of Appeals remanded "with the direction that it permit them [Kummer and another defendant] to withdraw their guilty pleas." *Id.* at 1544.

Although Westlaw research does not yield the further history of the case, Mr. Kummer's apparent plea of guilty to one count of violating 18 U.S.C. § 1954 is troubling: it certainly raises sufficiently serious questions concerning his fitness for admission *pro hac vice* in this Court, so that Plaintiff opposes the motion. This is especially true in light of the rather unusual role that Mr. Kummer played in connection with certain of the underlying circumstances of this case, as described below.

II. **Mr. Kummer Appears To Have Been A Party To Certain Of Liner's Schemes Affecting Plaintiff Larry Ewers.**

As discussed in Plaintiff's Opposition to Motion to Intervene, Mr. Kummer's client, would-be intervenor Eugene Liner, was indicted in the Federal District Court for the District of Minnesota, tried, and, on September 16, 2003, convicted on nineteen (19) counts, including false statements and wire fraud, for these and other misrepresentations. *See* Exhibits A and B. The Information in United States of America v. Howard Eugene Liner, Cr. 03-78 (D. Minn., March 11, 2003), as well as a civil complaint brought by two Sioux Indian tribes, Lower Sioux Indian Community in Minnesota and Upper Sioux Community v. Howard Eugene Liner, Civ. 01-1171 (2001), allege, among other things, that Liner had defrauded the tribes and other investors of in excess of $1,000,000; that Liner engaged in a "scheme and artifice ... to fraudulently obtain money from investors;" that Liner "divert[ed] funds ... for his own personal use and benefit;" and, most directly pertinent to the present motion and opposition, that Liner had falsely stated to an FBI Special Agent "that he had been successful in a lawsuit in England and had recovered all investors' funds;" "that he would repay all investors within 30 days;". *See* Exhibit A.

Liner attempted to involve Ewers in his scheme by preparing, for fraudulent and self-serving purposes, letters to Ewers, including a letter dated eight (8) days after Liner's indictment, March 18, 2003, containing such statements as "it is my understanding that some or all of the [Heron] Bankruptcy estate will be disbursed to satisfy my claim in the near future." *See* Exhibit C. There was at the time absolutely no reason to believe that "some or all of the Bankruptcy estate" would be disbursed "in the near future": indeed, there had been no recovery of any significance in the Bankruptcy proceedings at this time (or since).

Ewers therefore immediately replied to Liner, in no uncertain terms, that "as I have repeatedly told you, I do not know when any proceeds from the bankruptcy proceedings will be

distributed to any of Mr. Heron's creditors, including you." *See* Exhibit D. Liner, Ewers suspected, and stated in writing to Liner, was apparently writing "for an audience other than the U.K.": in other words, Liner appeared to be using such letters to show to defrauded investors, in order to provide "cover" for his excuses for non-payment, to hold out hopes of imminent payment, and to string the investors along.

The strategy of the Liner letter is all-too-similar to the strategy alleged in the criminal information against Liner: he had falsely stated to an FBI Special Agent "that he had been successful in a lawsuit in England and had recovered all investors' funds," and "that he would repay all investors within 30 days." *See* Exhibit A. In his letter to Ewers, he was falsely implying that funds would soon be available to repay investors.

Liner's "instruction" to Ewers (*see* Exhibit C) was strange enough: to "instruct the Bankruptcy Court to transmit ... $25,000,000" to Liner, as if Ewers could "instruct" a Bankruptcy Court in the United Kingdom to do any such thing. However, the mechanics of transfer were equally strange, and bring us back to the instant motion: Liner instructed Ewers to wire funds to "Ware, Bryson, West and Kummer Trust Account, attn: John R. Kummer, Esq. For disbursement in accordance with instructions from Thomas L. Kummer, Esq." *See* Exhibit C. Thomas L. Kummer, however, was not an attorney at Ware, Bryson, West and Kummer – John Kummer was. Thomas L. Kummer is not admitted to practice in Kentucky, where the law firm is located. Thomas Kummer, however, was to receive "the sum of One Million United States Dollars ($1,000,000) ... as legal fees" from the $25,000,000 that the Bankruptcy Court in the United Kingdom was to be "instructed" to transfer. *Id.* at p. 3.

The "Escrow Instructions" attached to Liner's letter appear to have been prepared by attorneys. The "Escrow Instructions" state that $1,000,000 was to be disbursed to "Mary L. Sheffield, dba The Staatfield Trust, for services rendered." *See* Exhibit C.

On the same date as Liner's letter, March 18, 2003, Mr. Ewers received an equally bizarre letter from Mary L. Sheffield, Trustee of "The Staatfield Trust." This letter stated "We are expecting funds to be deposited *any second.*" *See* Exhibit E (emphasis added). Ms. Sheffield asked Mr. Ewers to "please send your wiring instructions to the following fax number: (801) 382-3416 to the attention of Mr. Tom Kummer, Esq."

Thus, apparently, Mr. Ewers was to "instruct the Bankruptcy Court" in the United Kingdom, to wire $25,000,000 in non-existent funds to Mr. Liner – *via* Mr. Kummer – and Liner had led Ms. Sheffield to believe that the entire sequence of events – Ewers' "instruction" to the Bankruptcy Court, the Bankruptcy Court's compliance with the instruction, and the wire transfer of non-existent funds -- was to be accomplished "any second."

It is not unreasonable to infer that, just as Liner was alleged to have told an FBI Agent "that he had been successful in a lawsuit in England and had recovered all investors' funds" and "that he would repay all investors within 30 days," Mr. Liner had told others to expect a multi-million dollar wire transfer from a Bankruptcy Court in the United Kingdom, courtesy of Mr. Ewers, in a matter of seconds.

While it is difficult to know precisely what game was being played, it seems clear that Mr. Kummer was a player in the game. He is therefore likely to have discoverable knowledge of Mr. Liner's ongoing fraudulent scheme. Mr. Kummer's appearance *pro hac vice* in this case, given his involvement in the bizarre game, which sought to enmesh Mr. Ewers in a fraud, his potential of having discoverable knowledge, and his own tainted past, would be unseemly.

Denial of Mr. Kummer's appearance *pro hac vice* would hardly leave the would-be intervenors unrepresented. Their Boston counsel, Charles P. Kazarian, is an experienced, highly competent professional, untainted by any involvement in the history of the case.

LARRY EWERS,

By his attorneys,

Alan M. Spiro (BBO No. 475650)
EDWARDS & ANGELL, LLP
101 Federal Street
Boston, Massachusetts 02110
(617) 439-4444

Dated: August 2, 2004

## CERTIFICATE OF SERVICE

I, Alan M. Spiro, hereby certify that on August 2, 2004, I served a true copy of the above document by hand upon Charles P. Kazarian, counsel for intervenors, at 77 North Washington Street, Boston, Massachusetts 02114, and by first class mail, postage pre-paid, upon all other parties to this case.

Alan M. Spiro (BBO No. 475650)