UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

LARRY EWERS,

    Plaintiff,

v().

HOWARD EUGENE LINER, CREDITORS
COMMITTEE OF THE BANKRUPTCY ESTATE
OF CHRISTOPHER PATRICK HERON, AH PING
BAN, FLAMECREST ENTERPRISES LIMITED
TRUST, BALZ RUDOLPH WOLFENSBERGER
TRUST,

    Plaintiff-Intervenors,

v.

CHRISTOPHER PATRICK HERON,
CORPORATION OF THE BANKHOUSE, INC.,
SOCIETE BANKHOUSE, and
JAMES F. POMEROY, II,

    Defendants.

CIVIL ACTION NO.
04-10024-RWZ

## SUPPLEMENTAL MEMORANDUM IN SUPPORT OF PLAINTIFF-INTERVENOR LINER'S MOTION TO INTERVENE AND RESPONSE TO PLAINTIFFS' OPPOSITION TO MOTION TO INTERVENE

### PROCEDURAL HISTORY OF THE INTERVENTION

On January 4, 2004 Larry Ewers (hereafter "Ewers" or "Plaintiff") filed the Complaint in the instant action (the "Complaint"). On June 4, 2004 the Court entered a default against Defendants. Pursuant to Rules 24(a) and 24(b), Fed.R.Civ.P., Howard

1

Eugene Liner ("Liner"), the Creditors Committee Of The Bankruptcy Estate Of Christopher Patrick Heron, Ah Ping Ban, Flamecrest Enterprises Limited Trust, and Blatz Rudolph Wolfensberger Trust (collectively "Plaintiff-Intervenors") moved for leave to intervene in the above-captioned matter (the "Intervention Complaint"). A Memorandum In Support Of Plaintiff-Intervenors' Motion To Intervene accompanied the Motion. On August 25, 2004 Plaintiff, Larry Ewers, filed Plaintiff's Opposition To Motion To Intervene (the "Opposition To Intervention"). There has been no opposition to the Intervention Motion by any Defendant.

This Memorandum is supplemental to that which accompanied the Intervention Motion and filed in anticipation of the Court setting a hearing on the Intervention Motion.

## STATEMENT OF RELEVANT UNDISPUTED FACTS

In the Opposition To Intervention, Plaintiff has neither admitted nor denied the factual allegations set forth in the Intervention Complaint as required. Therefore, the factual allegations in the Complaint must be deemed admitted. A review of the Intervention Motion and the Opposition To Intervention along with the various other pleadings in the case reveals that none of the facts relevant to the intervention of Liner are in controversy. The uncontroverted facts can be stated as follows:

1.      Defendant Christopher Patrick Heron ("Heron") was adjudicated bankrupt by the High Court Of Justice In Bankruptcy in the United Kingdom on June 18, 2002 in the case of In re Christopher Patrick Heron, Case No. 1625 of 2002 (the "Bankruptcy Proceeding"). The Bankruptcy Proceeding is being conducted pursuant to the applicable laws of the United Kingdom, and the Bankruptcy Estate is being administered by a duly appointed Trustee. (Complaint Paragraph 23; Intervention Complaint Paragraph 10)

2. The Bankruptcy Proceeding was initiated by filing of an involuntary petition by Liner (and one Cho) dated March 3, 2002. (Complaint Paragraph 23). A copy of the Bankruptcy Order listing Liner and Cho as the petitioners is attached hereto as Exhibit 1.

3. On January 17, 2002, had Heron entered into a Settlement Agreement with Plaintiff-Intervenors thereby settling the amount of each claim which the Plaintiff-Intervenors have against Heron (the "Settlement Agreement"). Ewers is not a creditor of Heron pursuant to the Settlement Agreement but Ewers signed the Settlement Agreement as the agent of Liner, who is a creditor of Heron as set forth in the Settlement Agreement. Heron's failure to satisfy the provisions of the Settlement Agreement led to the involuntary Bankruptcy Proceeding as set forth herein above.

4. On May 3, 2002 Liner and E.P.D. Management Company, LLC ("EPD") executed a Compensation Agreement (the "Compensation Agreement")[1]. The Compensation Agreement provides for EPD to receive a portion of any recovery by Liner on his Bankruptcy Claim against Heron (Paragraph 1) and EPD is to fund costs associated with pursuing Liner's Bankruptcy Claim to be reimbursed from amounts collected (Paragraph 2)[2].

---

[1] Although the Compensation Agreement was not referenced in the Complaint, the allegations of Paragraph 34 of the Intervention Complaint have not been denied by Plaintiff, and Plaintiff has referenced the Compensation Agreement in the Opposition To Intervention and it is attached as Exhibit 4 thereto. Ewers has failed to note, however, that the Compensation Agreement grants him no interest of any kind since the parties thereto are EPD and Liner. There is no document which gives rise to any claim by Ewers against Heron or makes any assignment of any interest in Liner's claims against Heron to Ewers. EPD is not a party to the instant case.

[2] The Compensation Agreement explicitly limits any claims by EPD to "Bankruptcy Claims". Unless claims against Heron are pursued and collected and qualify as Bankruptcy Claims, neither EPD nor Liner have any interest whatsoever in them. The instant case is not brought on behalf of or as part of the Bankruptcy Proceeding unless conducted in accordance with the Deed (see Paragraph 6 below) and any recovery is brought within the jurisdiction of the Bankruptcy Court in the United Kingdom. Ewers' claim to an independent interest in the instant case is erroneous. There is no document which grants Ewers any interest in any claim against Heron, and if EPD has any claim against Heron it is a derivative claim to a

3

5. On May 21, 2002 Liner granted to Larry Ewers ("Ewers") a Power Of Attorney to act on Liner's behalf with respect to two causes pending in the High Court Of Justice In Bankruptcy against Christopher Patrick Herrin ("Power Of Attorney", attached hereto as Exhibit 2)[3]. (Complaint Paragraph 22; Intervention Complaint Paragraph 34.) The Power Of Attorney was granted to facilitate the Compensation Agreement and the Compensation Agreement and Power Of Attorney constitute an integrated transaction between EPD, Ewers and Liner[4].

6. On January 22, 2003 the Trustee in the Bankruptcy Proceeding issued a Deed authorizing Ewers as representative of Liner and Alex Pladott ("Pladott") as representative of other Plaintiff-Intervenors to pursue assets of Heron outside of the United Kingdom on behalf of the Heron Bankruptcy Estate under specific terms and conditions (the "Deed") (attached hereto as Exhibit 3)[5]. That such assets of Heron exist outside of the United Kingdom is alleged in Paragraph 27 of the Complaint.

---

percentage of the Bankruptcy Claims of Liner. It is not at all clear the instant case involves such a Bankruptcy Claim. It is also worthy of note that EPD has not filed a claim in the Bankruptcy Proceeding and is not a party to the instant civil action.

[3] Liner admits that he executed on May 21, 2002, the Power of Attorney attached hereto as Exhibit 3. However, in his Opposition To Intervention Ewers has alleged a Power Of Attorney And Mandate purportedly executed June 18, 2002 (Exhibit 3 to the Opposition To Intervention). Both documents purport to be made effective January 11, 2002. Liner concedes only that he granted Ewers the powers set forth in the May 21, 2002 document, and contends that the purported document dated June 18, 2002 was not signed by him, and that the notarization of it is false. A comparison of the signatures on the two documents validates Liner's contention. The two documents are significantly different but resolution of the validity of the June 18, 2002 document need not be made to determine the issue of Liner's intervention.

[4] The Plaintiff has not conceded this directly, but has implied the integration by pleading the connection between the claimed assignment and the Power Of Attorney as the basis for bringing the instant case in the Objection To Intervention. Ewers signed the Compensation Agreement as an officer of EPD, and the Power of Attorney was granted by Liner to Ewers in his capacity as an officer of EPD, and not in any way to provide Ewers with a separate claim to claims of Liner. If there are any claims arising from the Compensation Agreement, such claims belong to EPD and not Ewers individually.

[5] Plaintiff often refers to his relationship with the Trustee In Bankruptcy which relationship is governed by the provisions of the Deed in connection with efforts outside the United Kingdom to collect funds of Heron. The Deed is the only document authorizing Ewers to act to collect funds of Heron within the context of the Bankruptcy Proceeding to the knowledge of Liner, and the Deed authorizes Ewers to act only on behalf of Liner.

4

7.     The Complaint was filed by Ewers on behalf of Liner pursuant to the Power Of Attorney and with the consent of the Bankruptcy Trustee as set forth in the Deed. (Complaint Paragraph 22; Intervention Complaint Paragraph 32)

8.     Ewers has brought suit in the State of Texas against Liner[6]. (Paragraph I(e)(i) in the Opposition To Intervention)

## ARGUMENT

Plaintiff-Intervenor Liner claims the right to intervene as a matter of right pursuant to Rule 24(a) of the Federal Rules of Civil Procedure (Fed.R.Civ.P.), or, alternatively, permissively pursuant to Rule 24(b) of the Fed.R.Civ.P. The issue before the Court is simply whether Plaintiff-Intervenors qualify for intervention pursuant to one of these two Rules.

Liner is entitled as a matter of right to intervene if he: (i) "claims an interest relating to the property or transaction which is the subject of the action"; (ii) the "disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest"; and (iii) the applicant's interest is not "adequately represented by existing parties". Rule 24(a) of the Fed.R.Civ.P.

---

[6] The allegations in the Texas Complaint relate to a Confidentiality Agreement which was purportedly executed by Liner. The purported parties thereto are Liner and "E.D.P. Management Company, LLC. The relationship between E.D.P. Management Company, LLC and EPD is unknown to Liner. Ewers signed the purported Confidentiality Agreement apparently as an officer or representative of E.D.P. Management Company, LLC. The litigation in Harris County, Texas has been brought by EPD, which was not a party to the Confidentiality Agreement. Liner takes the position that his signature on the purported Confidentiality Agreement is a forgery and that he never executed any such Confidentiality Agreement. Liner has so plead in the Harris County, Texas suit. In any event, the Confidentiality Agreement is not in issue here and is likely unenforceable. Nevertheless, the initiation of the Harris County, Texas suit against Liner verifies that Ewers is acting completely contrary to the interests of Liner.

If Liner is not entitled as a matter of right to intervene, the Court should allow him to intervene permissively because the applicant's claims have questions of law and fact in common with the main action. Fed.R.Civ.P. 24(b).

While an applicant bears the burden of establishing each of these requirements, Rule 24 is to be construed liberally and doubts resolved in favor of the proposed intervenor. See e.g., Southwest Ctr. for Biological Diversity v. Berg, 268 F.3d 810, 818 (9th Cir. 2001). Courts accept as true all well-pleaded, non-conclusory allegations in the motion to intervene, and the proposed complaint. Id. Here, Plaintiff has neither admitted nor denied the allegations directly in the Intervention Complaint but rather has made certain assertions which perhaps could be construed as constituting a denial in Section V of the Opposition To Intervention. These specific factual denials are addressed below. All other factual allegations in the Intervention Complaint must be accepted as true.

1. <u>Arguments Raised By Plaintiff Are Inadequate To Preclude Intervention Of Liner</u>.

Plaintiff offers several arguments in opposition to the Intervention Complaint. Each can readily be disregarded:

A. <u>Ewers' Power Of Attorney</u>[7]. Plaintiff makes much of whether the Power Of Attorney continues to be effective, but it is not necessary for this Court to decide that issue to determine that Liner has a substantial interest in the instant action. By his own

---

[7] It is important to note that much of Plaintiff's argument about the irrevocability of the Power Of Attorney hinges on language in the June 18, 2002 version which Liner claims to be a forgery. The opinions rendered by various parties associated with Ewers referenced in footnote 6 of the Opposition To Intervention were apparently based on the June 18, 2002 document and not the actual document signed by Liner dated May 21, 2002. Liner is not bound by such biased "legal" opinions in any event. However, both documents contain the following language: "An affidavit, executed by the Attorney-In-Fact and Mandate stating that he does not have, at the time of doing an act…actual knowledge of the revocation or termination of this Power Of Attorney and Mandate is, in the absence of fraud, conclusive proof of non-revocation and non-termination of the power at that time." Obviously, both documents contemplate that the power can be terminated and since Liner contends the Power Of Attorney has been terminated Ewers can no longer provide such an affidavit to third parties, including this Court.

6

admission Ewers is acting as the agent of Liner, and it is undeniable that Liner has a clear interest in the property and transactions which are the subject of the instant action as the principal of Ewers. Here the agent is fighting the intervention of his principal who is a real party in interest. Ewers admits that any claims he may have arise from the Compensation Agreement, which may or may not apply to the claims asserted against Heron here. Even if Ewers is correct that the Compensation Agreement gives him an interest in the instant litigation, it cannot be claimed that Ewers interest is exclusive of that of Liner. Ewers is not even a party to the Compensation Agreement. Therefore, Liner is a real party in interest and his interest for purposes of intervention are unmistakable and stand uncontroverted whether or not the Power Of Attorney has continuing validity[8].

  B.  <u>Timeliness.</u> Plaintiff's opposition on the basis of timeliness is directed to Plaintiff-Intervenor Pladott ("Pladott"). Plaintiff cites a myriad of communications with Pladott to support the proposition that Pladott knew of the instant litigation, but cites nothing to support the proposition that Liner had any knowledge thereof. In fact, within a few days of Liner discovering the litigation his counsel wrote to this Court and shortly thereafter the Intervention Complaint was filed. There is nothing in the Opposition To Intervention alleging that Liner did not act with dispatch. In fact, in footnote 7 of the

---

[8] It should be noted that the Complaint in <u>E.P.D. Management Company, LLC. And Larry Ewers v. Howard Eugene Liner</u> pending in the District Court of Harris County, Texas cited by Plaintiff was not served on Liner until recently, and a Motion To Dismiss for failure to state a claim has been filed by Liner <u>pro se</u>. Suffice it to say that no claims of any kind have been established by Ewers or EPD against Liner in any court of competent jurisdiction. Liner informs counsel that the Confidentiality Agreement which purports to be the basis of the Harris County, Texas litigation is a forgery and he has taken that position in Texas. Furthermore, it is irrelevant that Liner has been convicted of charges unrelated to the facts in the instant case or that Liner attempted to direct his portion of any recovery from Heron to a lawyer's trust account for proper disposition as alleged in footnote 7 of the Opposition To Intervention. Neither Ewers nor any entity associated with Ewers has established a right under the Compensation Agreement to any portion of the funds resulting from a judgment against Heron outside of the Bankruptcy Proceeding, if at all, and Ewers has not established in any court the unsubstantiated claims he is now pursuing against Liner in Texas.

Opposition To Intervention Plaintiff admits that he ceased communication with Liner sometime in 2003.

  C. <u>Prejudice To Ewers.</u> The allegation that delay will prejudice Ewers is surprising in that his opposition to the intervention has been the major factor in delaying the default judgment against Defendants in this case. Whatever unsubstantiated claims there may be, Ewers admits that at best he has a 50% interest in this case. Mr. Liner holds, therefore, at least an equal interest. Simply conceding the right of Liner to intervene will remove any claimed prejudice to Ewers conceivably attributable to Liner. Since Ewers is acting exclusively under the Power Of Attorney on behalf of Liner, Liner's intervention and appearance on the final judgment in the instant case can have no dilatory effect on Ewers' efforts on behalf of Liner, his principal, or his own interests, to the extent Ewers has any interest.

  D. <u>Prejudice To Liner.</u> Plaintiff claims that Liner should not be permitted to intervene because he will not be prejudiced. Plaintiff suggests that Plaintiff-Intervenors, presumably including Liner, "have the same ability to file suit against defendants, obtain judgment and seek to discover hidden assets as does Ewers." However, Ewers is acting on behalf of Liner and has a fiduciary duty to Liner. It is ludicrous for an agent to argue that although he is acting on behalf of his principal the principal should be required to bring a separate suit. The instant suit is brought by Ewers on behalf of Liner. Liner can hardly be expected to bring a separate suit against Heron on claims already bought by Ewers on Liner's behalf.

  Nothing is clearer than that Ewers cannot represent Liner's interests adequately. Ewers' actions of ceasing communication with Liner, suing Liner, and acting

8

without informing Liner and against Liner's wishes are enough to support the proposition that it is foreseeable Liner's interests are in jeopardy. Liner does not have to show actual injury, only that prejudice is foreseeable. If Ewers obtains a judgment against Defendants in his own name without acknowledgment in the judgment of Liner's interest, potential harm to Liner is clearly foreseeable. Ewers is not entitled to obtain the judgment excluding Liner when it is only on Liner's behalf that Ewers has any standing to initiate the suit.

Furthermore, the claims that Pladott refused to share costs are not relevant to Liner because the Compensation Agreement clearly contemplates that EPD will be paid for costs from any recovery and Liner is not obligated to pay costs until such recovery is achieved[9]. There is no mention in any document other than the Compensation Agreement of any obligation of Liner to pay costs of pursuing claims against Heron. (See Compensation Agreement Paragraph 2)

E. <u>Adequate Protection Of Liner's Interest.</u> Plaintiff argues that his interest and the interest of the Plaintiff-Intervenors is identical. Nothing could be further from the truth with respect to Liner. It is ludicrous to assert that while Ewers is suing Liner and seeking to extinguish his interest in Harris County, Texas, Ewers is simultaneously faithfully representing Liner's interest in Boston. It is true that Ewers interest may be consistent with Liner's interest against Defendants, but Defendants do not object to Liner's intervention. The mere fact that Ewers objects so strenuously to intervention by

---

[9] It is worthy of note that Plaintiff on page 8 of the Objection To Intervention quotes from the Compensation Agreement concerning the alleged obligation of Liner to reimburse Ewers for sums expended in the investigation and prosecution of the Bankruptcy Claim. Plaintiff conveniently fails to quote the entire sentence which addresses the method of such reimbursement as follows: "with an offset to Liner". The context makes clear that such an "offset" is to be made from amounts collected on behalf of Liner by Ewers and not before funds have been obtained from the Bankruptcy Claim.

Liner, thereby disregarding the clear wishes of his principal, suggests further that Ewers has no intention of representing Liner's interests adequately. Ewers admits he has ceased communication with Liner. This is an admission by an agent that he has breached his fiduciary duty to his principal[10].

  F. <u>Standing.</u> Whether Liner has standing to intervene turns on the question of whether Liner would have been a proper party plaintiff when the suit was initiated. Arguably, Liner was an indispensable party, but in any event it is uncontroverted that Liner is the claimant and Ewers, to the extent he has any claim, derives that claim from Liner.

  Plaintiff's argument is that the language of the Power Of Attorney precludes Liner from having "standing" to be a party in the instant case. Here is where the material discrepancies between the Power Of Attorney Liner executed on May 21, 2002 and the document dated June 18, 2002 which was not signed by Liner come to light. In the May 21, 2002 the language with respect to the exclusivity of the power granted which is quoted so extensively by Plaintiff, does not appear[11].

---

[10] The matter of Ewers' breach of his fiduciary duty to Liner is addressed more fully below.

[11] The differences between the May 21, 2002 Power Of Attorney, which Liner concedes is authentic, and the June 18, 2002 document, which is of questionable authenticity, can be summarized as follows: (a) The powers granted are stated differently in the indented paragraph. In the May 21, 2002 Power of Attorney Ewers is granted powers only with respect to causes In The High Court Of Justice In Bankruptcy and such powers extend only to "conducting any and all business related to the claims and causes of action asserted by me against Christopher Patrick Heron before the Court in the above referenced matters". The bogus document of June 18, 2002 purports to grant powers relating not only to those causes pending In The High Court Of Justice In Bankruptcy but also relating to the Memorandum of Understanding dated July 18, 2000 and the Settlement Agreement. Nevertheless, even the June 18, 2002 document is limited to actions pending before the Bankruptcy Court in the United Kingdom ("the sole and exclusive power of the attorney for conducting any and all business transactions of every nature and kind relating to contracts, litigation, claims and causes of action asserted by me against Christopher Patrick Heron before the Court in the above referenced matters"). Neither the Power of Attorney nor the June 18, 2000 document would grant to Ewers the power to bring the instant action in his own name. Furthermore, the purported exclusivity of the right to settle and compromise claims appears only in the June 18, 2002 document and not in the actual Power Of Attorney which Liner concedes he signed; (b) In the third paragraph following the powers clause language has been added in the June 18, 2002 document which does not appear in the May 21, 2002 Power Of Attorney: "Said Attorney-In-Fact and Mandate shall have the powers set forth

The position of Plaintiff is apparently that once the agency relationship between Ewers and Liner was established, Liner could do nothing to protect his interest from malfeasance on the part of Ewers, his agent. The issue of whether the Power Of Attorney has been terminated need not be reached here. Since Ewers has established a position contrary to Liner and yet concedes that Liner has a minimum of a 50% interest in the claims asserted against Defendants, the language in the Power Of Attorney is not effective to preclude intervention under Rule 24 (a) or (b) of the Fed.R.Civ.P.

Plaintiff-Intervenors cited in their initial Memorandum the case of Mountain Top Condominium Ass'n v. Dave Stabbert Master Builder, Inc., 72 F.3d 361, 367 (3rd Cir. 1995). The principals enunciated therein are dispositive here on the issue of "standing". Here Liner claims a direct and undisputed interest. He is not precluded because of the interest of others from participating in the suit to protect his interest. Liner is, at least in part, the intended beneficiary of all acts by Ewers predicated on the Power Of Attorney and as such Liner has the right to intervene regardless of the language of the Power Of Attorney[12].

2.   **Ewers Has Breached His Fiduciary Duty To Liner And His Opposition To Liner's Intervention Is Contrary To Ewer's Fiduciary Duty To Liner.**

---

herein to the exclusion of all other persons or entities, including myself, my heirs and assigns". The addition of this language in the June 18, 2002 questionable document is the basis of most of Plaintiff's protestations. Regardless, Ewers is acting on behalf of Liner, his principal, in the instant case whichever document is authentic and both documents make clear that Ewers alone has no power to act on behalf of Liner outside the High Court Of Justice In Bankruptcy in the United Kingdom.

[12] The question of whether Ewers has an interest separate from Liner and whether the Power Of Attorney continues are addressed below. Suffice it to say here that as an agent representing a principal under either document, Ewers owes a fiduciary duty to follow the directions of his principal, act in the best interest of the principal, and otherwise protect his principal. Since Liner has directed his agent to name him as a party in a suit brought on Liner's behalf, Ewers, the agent, cannot fulfill his fiduciary obligations by seeking to block his principal from such intervention in direct contravention of the wishes of his principal.

11

Liner is prepared to demonstrate that Ewers has since at least August 22, 2003 been embarked upon a calculated plan to act in a manner completely contrary to the interests of Liner. The purpose of this calculated plan is to misappropriate all of the claims of Liner for Ewers' personal benefit. In execution of Ewers' plan, Ewers has violated the following fiduciary responsibilities to Liner:

1. An agent is under a duty to the principal to act only as authorized. Bank of British North America v. Cooper, 137 U.S. 473, 11 S.Ct. 160, 34 L.Ed. 759 (1890); Tropp v. Bache Halsey Stuart Shields, Inc., 650 F.2d 817 (6th Cir. 1981). Here Ewers authority is circumscribed by the Power Of Attorney and Compensation Agreement. Ewers is not authorized therein to act on his own behalf, or to take any action without the knowledge and consent of Liner, his principal. The authority in the Power of Attorney is only to act in accordance therewith.

2. As an agent of Liner, Ewers is bound to exercise the utmost good faith, loyalty, and honesty toward his principal, regardless of whether the agency is one coupled with an interest. Wadsworth v. Adams, 138 U.S. 380, 11 S.Ct. 303, 34 L.Ed 984 (1891); Manufacturers Cas. Ins. Co v. Martin-Lebreton Ins. Agency, 242 F.2d 951 (5th Cir. 1957); Life Care Centers of America, Inc. v. Charles Town Associates Ltd. Partnership, 79 F.3d 496 (6th Cir. 1996). Under Texas law the duty of loyalty is applicable and protection of the honest relationships between principals and agents is enforced by compensation or forfeiture. Burrow v. Arce, 997 S.W.2d 229 (Tex. 1999). In the instant case, Ewers has attempted to misappropriate the claims of Liner for himself. Ewers and others have conspired to do so through an elaborate scheme encompassing misrepresentations to Liner with respect to the location and nature of the assets of Heron,

misrepresentations to third parties concerning pending litigation in this and other jurisdictions, false representations to third parties, intentionally keeping information concerning his activities from Liner, and pursuing Liner's claims in his own name and on his own behalf[13].

3. As an agent of Liner, Ewers has a duty to make full disclosure of all material facts relevant to the agency and Ewers must give his principal any information that the principal desires to have and which can be communicated without violating a superior duty to a third person. Such a duty is fundamental to the fiduciary relationship of principal and agent. In re Distilled Spirits, 78 U.S. 356, 20 L.Ed. 167 (1870); Evvtex Co., Inc. v. Haretley Cooper Associates Ltd, 102 F. 3rd 1327 (2d Cir. 1996); Brown v. Slenker, 220 F.3d 411 (5th Cir. 2000). In the instant case, Ewers has declined to provide any material information to Liner, and has instead proceeded to enter into contracts, commitments, agreements and litigation all without making disclosure to Liner. Of course, Liner is bound by these acts of Ewers while the Power Of Attorney remained in effect, and at this point Liner has no idea what has been done and Ewers simply refuses to disclose any information to Liner.

4. An agent has a duty to keep records and render to the principal an account of all transactions within the scope of the agency. Kilborun v. Sunderland,

---

[13] The pleadings of Ewers in the instant case and that filed in Harris County, Texas concede that Ewers has attempted to eliminate Liner and appropriate Liner's claims for himself. In the Texas case Ewers is seeking to expunge Liner's interest based on a Confidentiality Agreement on the basis that Liner disclosed certain information, but the information claimed to have been disclosed is clearly not confidential as it is a matter of public record. Furthermore, Ewers claims in the Texas suit that Liner made misstatements of fact, but misstatements of fact cannot be disclosure of confidential information. Additionally, the signature on the Confidentiality Agreement is claimed by Liner to be a forgery. Ewers has apparently brought the instant suit in his own name because he believes he can extinguish Liner's claims. However, his standing in the instant suit derives from Liner, and Liner's claims have not been extinguished and likely will not be. If Liner becomes a party to the instant suit and Ewers ultimately prevails in expunging Liner's interest there can be no harm to Ewers by the intervention sought here.

13

130 U.S. 505, 9 S.Ct. 594, 32 L.Ed. 1005 (1889). Ewers has declined to provide records relating to his activities purportedly pursuant to the Power Of Attorney, and has expended funds which he claims are reimbursable by Liner while refusing to render an accounting thereof.

5. An agent has a duty to obey all reasonable instructions and directions with regard to the manner of performing a service to his principal and to adhere faithfully thereto. Manufacturers Cas. Ins. Co v. Martin Lebreton Ins. Agency, supra. Ewers has intentionally kept information from Liner and sought to shield Liner from knowing the acts undertaken and the manner of performing them to keep Liner from giving adequate direction to Ewers with respect to protecting Liner's interest. Ewers has done so because Ewers intends, with others, to misappropriate the funds of Liner arising from Liner's claims against Heron. A prime example of Ewers' failure to act on the wishes of Liner is Ewers' strenuous efforts to defeat Liner's attempts to intervene in the instant case.

6. An agent who has received or collected money for the principal has a duty to notify the latter at once and to pay over such money to the principal as soon as, or within a reasonable time after, it is received or collection. See Restatement Of Agency Second, Agency Section 417. It is the duty of an agent to keep the property and funds of the principal separate from his own. Liner, because Ewers has denied him access to all information about actions taken by Ewers, does not know whether funds have been collected and commingled by Ewers. However, if the judgment in the instant case is rendered in the sole name of Ewers commingling can hardly be avoided with respect to any funds obtained pursuant to the judgment.

7.  A person who undertakes to act as agent for another cannot deal in the agency matter for his own benefit without the consent of the principal, freely given with full knowledge of every detail known to the agent which might affect the transaction. Carpenter v. U.S., 484 U.S. 19, 108 S.Ct. 316, 98 L.Ed.2d 275 (1987); Byer v. International Paper Co., 314 F.2d 831 (10th Cir. 1963). An agent may not acquire a private interest in opposition to the principal's interest even at the expense of the agent's own in matters connected with the agency. U.S. v. Carter, 217 U.S. 286, 30 S.Ct. 515, 54 L.Ed. 769 (1910); Armstrong v. Republic Realty Mortg. Corp., 631 F.2d 1344 (8th Cir. 1980); Brotherhood of Locomotive Firemen and Enginemen v. Mitchell, 190 F.2d 308 (5th Cir. 1951). Here, Ewers has embarked on litigation in his own name and not the name of his principal, and seeks thereby to acquire a private interest in the judgment rendered while taking an adversarial position as to his principal both in the matter of intervention but also in a suit brought in Texas.

In the final analysis, resisting the intervention of Liner is a breach of the fiduciary duty Ewers owes to Liner. The instant case is brought under a Power of Attorney from Liner, and opposition to Liner's intervention by Ewers, his agent, is nonsensical unless Ewers is acting against the interests of Liner.

3.  Purported False Allegations In The Intervention Complaint.

Liner responds to the alleged misstatements in the Intervention Complaint in order to clarify the record, although to a great extent the alleged misstatements are not relevant to the issue of intervention. The alleged misstatements are set forth in Section V of the Opposition To Intervention. Paragraph references are to paragraphs in the Intervention Complaint.

Paragraph 8. Plaintiff contends that Plaintiff-Intervenor Flamecrest has been liquidated. This is simply not the case. Reference to Exhibit 19 to the Opposition To Intervention makes clear that the document does not relate to the party seeking intervention in the instant case. The alleged misstatement has nothing to do with Liner in any event.

Paragraph 31. Plaintiff contends that the allegation is incorrect because Plaintiff referenced various other creditors in the Complaint. It is clear, however, that Plaintiff did not allege other parties as necessary parties to the causes of action and pursued the instant suit in his own name only. Now, Plaintiff contends that his principal Liner is not even a proper party. In every essential, Plaintiff has taken the position that he is the sole party in interest with respect to the causes of action in the Complaint, and he has brought suit against Liner in Harris County, Texas seeking to establish himself as sole claimant.

Paragraphs 33 and 34. Although Plaintiff contends that the allegations are incorrect, the quoted portion of the Compensation Agreement, which was not alleged at all in the Complaint, makes clear that any assignment therein relates solely to the "Bankruptcy Claim". However, in the Complaint Plaintiff alleges that the suit is brought not to enforce a claim in the Bankruptcy Proceeding, but outside of such proceeding. (Complaint Paragraph 23). To the contrary, Plaintiff asserts in the Complaint that he is specifically not seeking to enforce a Bankruptcy Claim but rather that the cause of action is not barred by the pending Bankruptcy Proceeding.

The Compensation Agreement, which may or may not constitute an assignment, clearly applies only to a Bankruptcy Claim and is between Liner and EPD, which is not a party to the instant litigation. Ewers may be able to act on behalf of Liner,

16

but neither he nor EPD can claim an interest any claim Liner may have against Heron outside of the Bankruptcy Proceeding. The Deed sets forth how Bankruptcy Claims are to be handled, yet there has been no account established as contemplated therein and the Deed was not plead in the Complaint. Once there is recovery based on claims of Liner and the funds are brought within the purview of the Bankruptcy Proceeding in accordance with the Deed, then and only then is there a Bankruptcy Claim within the meaning of the Compensation Agreement. There has been no assignment to any claims outside the Bankruptcy Proceeding. It is in this context that the allegations in Paragraph 33 of the Intervention Complaint are precisely correct. With respect to the allegations in Paragraph 34 of the Intervention Complaint, they too are precisely correct. No legally binding assignment beyond a Bankruptcy Claim approved in the Bankruptcy Proceeding and disbursed pursuant to the Bankruptcy Proceeding.

Paragraph 36. In the Opposition To Intervention Plaintiff has gone to great lengths to establish that under Texas law the Power Of Attorney cannot be terminated. However, Plaintiff overlooks the fact that in all the cases cited to support the argument that a power of attorney coupled with an interest cannot be terminated are based on the premise that the agent has fulfilled the fiduciary duty to the principal. That is simply not the case here, and the question of whether the Power of Attorney is terminable does not affect Ewers' obligation to act as a fiduciary to Liner.

When a fiduciary materially breaches his duty to his principal, the principal may terminate the fiduciary relationship regardless of the language of the agreements between them. See Burrow v. Arce, 997 S.W.2d 229 (Tex. 1999), supra. Liner has notified Ewers of the termination of the Power Of Attorney in writing and no

17

jurisdiction has determined that such termination is not valid and binding. As stated above, it is not necessary for this Court to consider the validity of such termination as Ewers concedes that regardless of whether the Power Of Attorney continues effective Liner has a very substantial interest in the causes of action. However, Liner is prepared to support his factual allegations before this Court at an evidentiary hearing if necessary.

Paragraph 37(b) and (d). The issues of assignment of claims has been addressed above. With respect to secreting Assets of Heron from the Bankruptcy Court in the United Kingdom, Liner is prepared to call the Trustee and to bring before this Court the considerable factual basis of his allegations. It is clear, as noted above, that the instant case was brought outside of the Bankruptcy Proceeding, and that the provisions of the Deed which require the proceeds of all claims pursued by Ewers to be deposited into a joint account with Pladott under the supervision of the Bankruptcy Trustee was not brought to this Court's attention by Ewers. Liner is prepared to show that Ewers has consistently misled the Bankruptcy Trustee and his Barrister. However, no such hearing is required here as the intervention of Liner is not affected by this factual issue.

Paragraph 54. The allegations are made upon information and belief. There is ample evidence which Plaintiff-Intervenors are prepared to bring forward that Ewers has pursued litigation on his own behalf in other jurisdictions where assets of Heron are located and that he intends to utilize the judgment from the instant case to obtain the funds of Heron located in other jurisdictions for his own benefit. Only discovery will flesh out Plaintiff-Intervenors' understanding of what Ewers has done with funds of Heron he has discovered and against which he has brought suit on his own behalf.

## CONCLUSION

It is clear that Liner meets all of the criteria for intervention as a matter of right, and that alternatively, the Court should permit his intervention. In accordance with Rule 24(a) it is indisputable that Liner legitimately claims an interest in the transactions which are the subject of the action, that Liner is so situated that the disposition of the action may impair his ability to protect his interest, and that Ewers can in no way adequately represent Liner's interests. That is all that is required for granting intervention. Plaintiff has tried to obscure the issues by attacking on all fronts, but in the final analysis the facts relevant to the issue of intervention are uncontroverted and uncontrovertable.

For all of the foregoing reasons, Plaintiff-Intervenors respectfully request that this Court grant this Motion to Intervene.

Plaintiff-Intervenors
By their attorneys

Dated: October 21, 2004

Charles P. Kazarian, P.C.
77 North Washington Street
Boston, Massachusetts 02114
(617)-723-6676

س/ى/

Thomas L. Kummer
706 Brookdale Drive
Statesville, North Carolina 28677
N.C. State Bar No. 5708
(775)338-3705

CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 21st day of October, 2004 copies of the forgoing were served by delivering copies thereof to the United States Post Office in envelopes properly addressed and First Class postage prepaid, which envelopes were addressed as follows:

Larry Ewers
Alan M. Spiro, Esq.
Edwards and Angell, LLP
101 Federal Street
Boston, Massachusetts 02110

Christopher Patrick Heron
21 Dale House, Boundary Road
London, NW8, United Kingdom

Corporation Of The Bankhouse, Inc.
Societe Bankhouse
James F. Pomeroy
11 Meadow Haven Drive
Mashpee, Massachusetts 02649

*Charles P. Kazarian*