UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LARRY EWERS, )<br><br>Plaintiff, )<br><br>v. )<br><br>CHRISTOPHER PATRICK HERON, )<br>CORPORATION OF THE BANKHOUSE, INC. )<br>SOCIETE BANKHOUSE, AND )<br>JAMES F. POMEROY, II, )<br><br>Defendants. ) | CIVIL ACTION NO.<br>04-10024-RWZ |

PLAINTIFF'S SUPPLEMENTAL BRIEF
IN OPPOSITION TO
PLAINTIFF-INTERVENORS' MOTION TO INTERVENE

Plaintiff Larry Ewers ("Ewers") supplements his Opposition to the Plaintiff-

Intervenors' Motion to Intervene ("Plaintiff's Opposition") to respond to arguments and

allegations raised in the Supplemental Memoranda in Support of Motion to Intervene and

Response to Plaintiff's Opposition ("Supp. Memo") filed by Howard Eugene Liner

("Liner") and Alexander Pladott (purportedly as Attorney in fact for Ah Ping Ban and as

Trustee for Flamecrest Enterprises Limited Trust and Balz Rudolph Wolfensberger Trust)

("Pladott"), respectively. As Liner and Pladott stand in different positions with respect to

their Motion to Intervene and, in recognition of that fact, have filed separate

Supplemental Memoranda, Ewers responds to each in turn:

## I.  Liner Is Not Entitled to And Should Not be Permitted to Intervene.

Ewers does not dispute that Liner had an interest within the meaning of Fed. R. Civ. P. 24 in the instant proceeding.  Ewers opposed the Motion to Intervene with respect to Liner on the ground that Liner <u>voluntarily</u>, <u>irrevocably</u> and <u>exclusively</u> assigned the right to intervene he would otherwise have had to Ewers, by granting Ewers an "Exclusive Power of Attorney and Mandate" dated June 18, 2002 (the "POA") (Exhibit 3 to Plaintiff's Opposition), coupled with an interest.

Liner insists in his Supplemental Memorandum that he has revoked the power of attorney and that, in any event, he is entitled to intervene because Ewers violated an alleged fiduciary duty to Liner to keep him informed and obey all of his instructions. Liner's argument rests entirely upon a gross misinterpretation of the Compensation Agreement (Exhibit 4 to Plaintiff's Opposition); a laundry list of Ewers' alleged violations of fiduciary duties under general agency law that is not applicable, under <u>Texas</u> law, to the relationship created by the POA, and an outrageous allegation that Liner did not sign the POA.

### A.    The POA Was Signed By Liner.

The existence and continuing validity of the POA are decisive of the issue whether Liner may intervene in this case as either a matter of right or permission.  Oddly, Liner raises the issue whether the POA is a forgery – an extremely serious allegation – not as a direct allegation in the body of his Supplemental Memorandum, but in a footnote: "Liner ... contends that the purported document dated June 18, 2002 was not signed by him, and that the notarization of it is false."  Liner Supp. Memo, p. 4, fn 3.

BOS_465855_2/KNOURSE

Counsel's timidity in raising that allegation – made by a felon convicted of lying to an FBI agent concerning the true status of the Heron Bankruptcy, and multiple counts of fraud (*see* Plaintiff's Opposition at p. 8 fn. 7, and Exhibits 6 and 7 thereto) – is well founded. Attached as Exhibits 1 and 2 to this Supplemental Memorandum are an Affidavit of R. Bruce Buckley, the lawyer who drafted the POA at Liner's instruction, and the log book of the Notary Public, Tracy Steck, who notarized the POA, showing Liner signed the POA on June 19, 2002. Mr. Ewers has in his possession three executed originals of the POA.

**B.      The POA Is Exclusive and Has Not Been,**
**        and Cannot Be, Revoked by Liner.**

The POA expressly provides that Ewers has the power to act for Liner, "to the exclusion of all other persons or entities, including [Liner him]self, [his] heirs and assigns." Plaintiff's Opposition Exhibit 3, p. 3. Among the critical provisions of the POA are:

> "HOWARD EUGENE LINER ... does make, constitute, mandate and appoint LARRY EWERS ... as his sole, exclusive, true, and lawful Attorney-In-Fact and Mandate ... to act in [Liner's] place, and stead *for the purpose of doing any and every act, and exercise any and every power, that [Liner] could do, and that may be reasonably necessary regarding the following contracts and matters*: That certain memorandum of Understanding, dated July 18, 2000 ...; That certain Agreement dated January 17, 2002...; Cause No.384-SD-2001: In The High Court Of Justice In Bankruptcy: RE: Christopher Patrick Heron and Hsin-Ming Chuo and Howard Eugene Liner; and Cause No. 1625 of 2002: In The High Court Of Justice In Bankruptcy: RE: Christopher Patrick Heron."

> "This Exclusive Power Of Attorney And Mandate shall not terminate on my disability, *is irrevocable*, and *coupled with an interest*, and *shall only terminate upon the full and final adjudication, resolution, settlement, and disposal of the referenced matters and contracts*. I agree that anyone dealing with said Attorney-In-Fact and Mandate may rely upon the statement(s) of such Attorney-In-Fact and Mandate, that *this Exclusive*

BOS 465855 2/KNOURSE

*Power of Attorney and Mandate has not been revoked* or modified in any manner...."

"I hereby ratify and confirm that my sole and exclusive Attorney-In-Fact and Mandate shall lawfully do, or cause to be done by virtue of this Exclusive Power of Attorney and Mandate along with the rights and powers granted herein, *all acts necessary in the prosecution of the claims asserted in the referenced matter and the rights granted under said contracts.* Said Attorney-In-Fact and Mandate shall have the powers set forth herein *to the exclusion of all other persons or entities, including myself, my heirs and assigns.*" (Emphases added.)

*See* Plaintiff's Opposition, Exhibit 3.

If this POA has not been revoked and continues in force and effect, Liner has agreed not to intervene in this or any other actions Ewers may take under the POA, and this Court should decline Liner's invitation to re-write Ewers' and Liner's contract under the guise of his Motion to Intervene.

Under Texas law, which Liner neither cites nor disputes, if the POA is coupled with an interest, it is irrevocable and continues in force and effect notwithstanding Liner's unilateral attempt to revoke it. Liner concedes that the Compensation Agreement and the POA granting Ewers his authority are part of an integrated transaction, but claims that Ewers does not have an interest because the Compensation Agreement is in favor of E.P.D. Management Company, L.L.C. ("EPD"), not Ewers. This argument is fatuous.

Ewers was and remains the sole member of EPD – a fact of which Liner "was very aware" at the time of execution of the Compensation Agreement and the POA, according to Liner's own attorney who represented him at the time in connection with the POA. *See* attached Exhibit 3 (EPD records) and Exhibit 2 (Buckley Affidavit, ¶ 4). As the sole member of EPD, Ewers has a beneficial interest in the Compensation Agreement. Under governing Texas law, already cited to this Court but neither controverted nor even

BOS_465855_2/KNOURSE

mentioned in Liner's Supplemental Memorandum: "To constitute an agency coupled with an interest, the agent must have a present, *beneficial* interest in the property on which the power is to operate...." Tex. Jur. 3d Agency §35 (emphasis added). *Any equitable interest*, even a mere security interest, is a sufficient interest, when coupled with a power of attorney, to make that power of attorney irrevocable. *Nelson v. Consumers County Mutual Ins. Co.*, 326 S.W.2d 535, 538 (Tex. Civ. App. – San Antonio, 1959, *reh'g denied*).

In an effort to avoid the conclusion that Ewers has a beneficial interest sufficient to make the power of attorney irrevocable, Liner misconstrues the Compensation Agreement, declaring: that it "may or may not constitute an assignment;" that "neither [Ewers] nor EPD can claim an interest any (sic) claim Liner may have against Heron outside of the Bankruptcy Proceeding;" that "[t]here has been no assignment to (sic) any claims outside the Bankruptcy Proceeding;" and concluding, "No legally binding assignment beyond a Bankruptcy Claim approved in the Bankruptcy Proceeding and disbursed pursuant to the Bankruptcy Proceeding (sic)." Liner Supp. Memo pp. 16-17.

The Compensation Agreement expressly states that "Liner does hereby assign, transfer, and convey to EPD, fifty percent (50%) interest in and to the Bankruptcy Claim...." It is unequivocally an assignment. Moreover, it recites in its premises that Liner owns claims arising from Heron's breach of the <u>underlying contract</u> between Heron, Liner and Hsin-Ming Chuo, and that Liner caused to be filed a bankruptcy petition asserting various claims against Heron, which claims are defined as the "Bankruptcy Claim." This describes the underlying cause of action and claim of Liner, namely the debt owed to Liner by Heron, which was the basis for the filing of the

BOS_465855_2/KNOURSE

bankruptcy petition. It was a 50% interest in this <u>underlying</u> claim that was assigned to

Ewers. The assignment was made effective July 1, 2001, long before any proceedings of

any nature were filed against Heron in England.  There is absolutely no language in the

Compensation Agreement suggesting that any approval of any bankruptcy court was

required to make the assignment effective, or that the assignment was limited to funds

"disbursed pursuant to the Bankruptcy Proceeding," as self-servingly asserted now by

Liner.  To the contrary, the Compensation Agreement (*see* Plaintiff's Opposition, <u>Exhibit</u>

<u>4</u>), states:

> "Liner does hereby assign, transfer, and convey to [Ewers], fifty percent
> (50%) *interest in and to the Bankruptcy Claim, including, <u>without</u>*
> *<u>limitation</u>, fifty percent (50%) of <u>all sums to be received by Liner</u> as a*
> *result of the compromise, settlement, resolution, execution, or collection*
> of the Bankruptcy Claim."  (Emphasis added.)

This litigation <u>is</u> an effort to collect the Bankruptcy Claim.  If successful, it will

result in "sums to be received … as a result of the compromise, settlement, resolution,

execution or collection of the Bankruptcy Claim."  Indeed, it is precisely because, and

only because, this litigation is an attempt to <u>collect</u> on the Bankruptcy Claim, that Liner

claims an interest in this litigation!  However, Liner has irrevocably appointed Ewers

"my sole and *exclusive* Attorney-In-Fact,*"* to *"*do … *all acts necessary in the*

*prosecution of the claims asserted in the referenced matter and the rights granted*

*under said contracts,"* and Liner agreed that Ewers would have these powers *"to the*

*exclusion of*" all others, including Liner himself.  Liner therefore has no role to play in

this litigation.

Liner's interpretation distorts the plain and express language of the Compensation

Agreement.  Liner's interpretation also ignores the express statement in the POA (which

must be construed together with the Compensation Agreement) that the power of attorney granted "is irrevocable, and coupled with an interest, and shall only terminate upon the full and final ***adjudication, resolution, settlement, and disposal*** of the referenced ***matters and contracts***." (POA p. 2, emphasis added.)  Among the referenced contracts is the Settlement Agreement of January 17, 2002, which is the basis for the causes of action asserted by Ewers in the instant proceeding.  The Compensation Agreement can only reasonably be construed to assign EPD an interest in all of the underlying causes of action Liner owned against Heron, and, thus, to create a beneficial interest in Ewers, which in turn rendered the POA, as it expressly so states, a power of attorney coupled with an interest and, hence, irrevocable.

Liner's final argument is the remarkable proposition: "When a fiduciary materially breaches his duty to his principal, the principal may terminate the fiduciary relationship regardless of the language of the agreements between them," citing *Burrow v. Arce*, 997 S.W.2d 229 (Tex. 1999).  *Burrow* contains no such statement: it is a legal malpractice case concerned with forfeiture of legal fees.  997 S.W.2d at 232.  The opinion does not address any termination issues at all, and does not involve a power of attorney coupled with an interest.  In fact, all of the cases cited in Liner's Supp. Memo concerning fiduciary duties involve questions of general agency law, and not one case cited by Liner involves a power of attorney coupled with an interest.

As stated in Tex. Jur. 3d Agency § 34 (cited in Plaintiff's Opposition): "The principles of law relating to the termination of the agency relation and the revocation of the agent's authority apply only to agencies in which the agent has no interest, except that

of a mere agent. Where the agent has an interest in the subject matter of the agency contract, a different set of rules is applicable."

Liner's chief claims regarding Ewers' alleged breach of fiduciary duty are that Ewers will not disclose to Liner everything he knows and will not obey Liner's instructions. Liner seeks to impose fiduciary duties on Ewers to obey his instructions, despite the express language of the power of attorney that Ewers has the <u>exclusive</u> right to act to collect the claim, ***even to the exclusion of Liner himself***. Incredibly, Liner even contends that Ewers' resort to the courts of Texas to adjudicate his rights and responsibilities is itself a breach of his fiduciary duty to Liner, and that Ewers' opposition to Liner in this Court is a breach of a fiduciary duty. That is specious nonsense. Despite his lurid allegations of what Ewers allegedly intends to do, the inescapable fact is that Liner has not a scintilla of evidence that Ewers has defrauded anyone, or collected one penny from Heron or from Heron's assets.

## II. <u>Pladott  Is Not Entitled to And Should Not be Permitted to Intervene.</u>

### A. <u>Pladott's Purpose Is to Persuade This Court to Re-write the May 5, 2003 Agreement.</u>

If Pladott sought merely to intervene in the instant case to obtain judgments against the Defendants in the amounts of the respective debts owed to the parties for which he acts as Trustee or under a Power of Attorney, Ewers would not have objected, despite the untimeliness of the intervention and Pladott's refusal to pay any share of the expenses of this litigation to date. Were that Pladott's goal, he could easily have long ago filed his own, similar suit against the Defendants and achieved the same result. He could also have, and was invited to, join this litigation from its inception, subject only to paying his pro rata share of the cost. Pladott's response in September 2003, according to him,

was to "express the need for additional security for [his creditors] as a condition of voluntary financial assistance." Pladott's Supp. Memo, p. 5. In other words, Pladott wanted Ewers to agree to amend their May 5, 2003 Agreement (attached to Pladott's Supp. Memo as Exhibit I) to require full disclosure from Ewers and impose various fiduciary duties on Ewers for the benefit of Pladott. Pladott never ceased in his quest to get Ewers to amend the May 5, 2003 Agreement. *See* Pladott's Affidavit ¶ 34 and the attached Exhibits S, W, X, Y and Z. Ewers was, and is, under no obligation to agree to amend the May 5, 2003 Agreement as Pladott desired, and he refused.

Pladott owns no part of Ewers' claims against Heron and no part of the underlying transaction upon which those claims are based. Pladott's claims result from entirely separate transactions with Heron. His only connection with Ewers' claims derives from the May 5, 2003 Agreement. Ewers owes no duty to Pladott except as expressed in the May 5, 2003 Agreement, which does not require full disclosure from Ewers and does not impose fiduciary or trustee obligations on Ewers as Pladott desires.

The real purpose of Pladott's attempt to intervene in this case is to persuade this Court to re-write the May 5, 2003 Agreement in the form of "minor" injunctive relief "to compel [Ewers] to share what he knows," to obtain joint judgments, and to impose fiduciary obligations on Ewers to which he is not presently subject. *See* Pladott's proposed Complaint.

## B.    Pladott Seeks Unjust Enrichment By Obtaining Standing While Refusing To Pay A Pro Rata Share of Expenses.

Pladott has the unmitigated gall to request this Court to amend the existing agreement without offering to pay any part of the costs, leaving the entire cost and risk on Ewers' shoulders. He is not even consistent in attempting to justify his refusal to pay any

expenses. In his Affidavit, he swears first that "Ewers took it upon himself to finance all expenses connected with the recovery of the Heron assets" (Pladott Affidavit ¶ 4). Later in the same Affidavit, he swears, in relation to Ewers' request that he pay his share of the costs in this case, "My response was that in our initial agreement, Ewers promised that he would pay <u>all</u> expenses related to the recovery of Heron assets world-wide." Pladott Affidavit ¶ 19. In his Supp. Memo at p. 3, Pladott asserts: "Ewers took it upon himself to finance all expenses connected with the recovery of the Heron assets in the U.S." Did Ewers voluntarily assume the burden of expenses, did he agree or promise to pay all the expenses, did he volunteer or promise to pay all of the expenses just in the U.S. or everywhere? Pladott cannot make up his mind, and he cannot justify his refusal to pay his fair share.

He claims he spent money in England (Pladott's Supp. Memo p. 3); but in his Affidavit he carefully swears he "did in fact pay for some of the expenses incurred in England. Please see Paragraph 15 below." Pladott Affidavit ¶ 4. Paragraph 15 of the Affidavit says not one word about expenses Pladott allegedly paid in England. Even if he paid "some" expenses, he doesn't dare swear he paid his pro rata share of the expenses in England. To add further injury to Pladott's insults, Pladott's Solicitor in England, Feldman, eventually revealed that he and Pladott, without telling Ewers, persuaded Ban to give Pladott and Feldman 30% of any proceeds realized from his claims, based in part on their promise to pay his share of the expenses -- expenses that in fact were paid by Ewers! Pladott wants this Court to bless his free (and profitable) ride, at Ewers' expense. The Court should decline the invitation.

### C. <u>Ewers' Refusal to Amend the May 5, 2003 Agreement Is Fully Justified.</u>

BOS_465855_2/KNOURSE

Pladott speculates that the only reason Ewers opposes this intervention is because of a nefarious scheme to defraud all of the other creditors. This is the only conceivable reason, Pladott speculates, that Ewers does not wish to be "fettered" with the other creditors. Pladott's Supp. Memo, p. 14. In fact, Ewers does not want to be chained to Pladott for very good reasons, in addition to Pladott's stated unwillingness to bear his share of the expenses. Pladott is uncontrollable, and has continually acted unilaterally without informing Ewers, and interfered with Ewers' attempts in both England and in the United States to prosecute his claims against Heron and his cohorts.

- As early as February 2002, Ewers complained to Pladott about talking to Heron when all parties had agreed that only Feldman would have direct conversations with Heron. *See* attached Exhibit 4.

- After Heron's computer was seized and searched in the English bankruptcy proceeding (paid for entirely by Ewers), a great deal of information about Heron's world-wide activities came to light. Pladott, without informing Ewers as agreed, began to contact some of the parties with whom Heron had apparently done business, including the Royal Falcon Group. Ewers heatedly protested by letter of July 1, 2003. *See* Exhibit 5.

- In Boston, Ewers, at his sole expense, investigated all of the various parties who had claims against Pomeroy or BankHouse. As was his practice, he kept Pladott fully informed, only to find Pladott was writing and emailing to those parties without informing Ewers. *See* Exhibit 6 regarding Koan Investment Corporation. Again, Ewers furiously protested. *See* Exhibit 7.

- In November 2003, Ewers, through Mr. Spiro, was attempting to arrange a meeting between Robert Masud, a Boston attorney who, it was hoped, might shed some light on the dealings of the Defendants, only to find that, once again, Pladott interfered, muddying the waters. *See* Exhibit 8. Mr. Ewers had to assure Mr. Masud, through Mr. Spiro, that Pladott would not be present for the meeting to go forward. *See* emails attached as Exhibit 9.

- As recently as two days ago, Pladott emailed numerous documents to Ewers' English solicitor, Mr. Harrison. *See* Exhibit 10.

BOS_465855_2/KNOURSE

Ewers has justifiably lost patience with Pladott's constant interference, which only makes his task more difficult, more time consuming and more expensive.

The second reason Ewers insists on keeping Pladott at arm's length and opposing his intervention is that Pladott is only a Trustee. Pladott refuses to identify the history of these trusts, or the identity of the alleged beneficiaries. In this post-9/11 world, Ewers justifiably does not care to be tied to unknown international parties. He can derive little comfort from the trustees of these trusts who were originally Pladott, Feldman (now disbarred in England for his involvement in the same sorts of fraudulent schemes Heron perpetrated), and one Gabriel McEnroe, a fugitive from a criminal indictment in the United States believed to be hiding abroad.

The final reason concerns the breaches of contract Ewers believes Pladott has committed, which were raised in Plaintiff's Opposition and are stated in detail in the Complaint Ewers filed in Harris County, Texas, a copy of which is attached to the Opposition. Pladott dismisses those grievances with the disingenuous observation that he has not been served. Pladott's Supp. Memo p. 6. He has not been served because he is apparently dodging service, as no less than 18 attempts to serve him at his home in California have been made. *See* Exhibit 11.

### D.    There Has Never Been Any "Secret Litigation" By Ewers Against Heron in New York or Canada.

As Pladott well knows, there are no secret "Sealed Level I" cases in New York or Canada. Such cases do not and never have existed, and no responsible person would believe in such fictions for one moment. The existence of every civil case filed in either jurisdiction involving entirely private parties is a matter of public record. Ewers never uses the phrase "Sealed Level I case" in any of the numerous communications attached to

- 12 -

Pladott's Supplemental Memorandum. Ewers admits that he adopted Feldman's invention of a story of litigation in New York and Canada, in order to deflect Pladott's persistent attempts to get Ewers to disclose everything Ewers might learn, through investigations for which Ewers exclusively pays, which Ewers has always been unwilling to do for the reasons stated above. Pladott cannot be trusted not to interfere on his own, like a bull in a china shop, with whatever information he is given.

Pladott himself has twice acknowledged, in writing, to Nicholas Pike (the Trustee's English solicitor), that he knew that the story of the alleged litigations originated with Feldman and was untrue. *See* Exhibit 12; letter dated March 15, 2004 ("Mr. Feldman himself is the source of the unfounded allegations regarding the legal proceedings in the US and Canada"), and Exhibit 13; letter dated March 16, 2004 ("You indicate there are many references to proceedings in the US and Canada. ... I hope that you are not referring to rumors started from Mr. Feldman.")

Now, however, Pladott attempts to convince this Court to amend the May 5, 2003 Agreement, based on the same "unfounded allegations" which Pladott himself disclaimed months ago.

BOS_465855_2/KNOURSE

**Conclusion**

For the foregoing reasons, Plaintiff Ewers respectfully requests that this Court

deny Intervenors' Motion to Intervene.

LARRY EWERS,

By his attorneys,

Charles A. Sharman
*(Pro Hac Vice* admission pending)
State Bar of Texas No. 18114400
Nine Greenway Plaza, Suite 3040
Houston, Texas  77046
(713) 655-1197

Alan M. Spiro  (BBO No. 475650)
EDWARDS & ANGELL, LLP
101 Federal Street
Boston, Massachusetts  02110
(617) 439-4444

Dated:  October 28, 2004

CERTIFICATE OF SERVICE
I HEREBY CERTIFY THAT A TRUE COPY OF THE ABOVE
DOCUMENT WAS SERVED UPON THE ATTORNEY OF
RECORD FOR EACH OTHER PARTY BY MAIL/HAND ON 10/28/04

- 14 -

# EXHIBIT 1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LARRY EWERS,<br><br>    Plaintiff,<br><br>v.<br><br>HOWARD EUGENE LINER, CREDITORS COMMITTEE OF THE BANKRUPTCY ESTATE OF CHRISTOPHER PATRICK HERON, AH PING BAN, FLAMECREST ENTERPRISES LIMITED TRUST, BALZ RUDOLPH WOLFENSBERGER TRUST,<br><br>    Plaintiff-Intervenors,<br><br>v.<br><br>CHRISTOPHER PATRICK HERON, CORPORATION OF THE BANKHOUSE, INC. SOCIETE BANKHOUSE, AND JAMES F. POMEROY, II,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    CIVIL ACTION NO.<br>04-10024-RWZ |

## AFFIDAVIT OF R. BRUCE BUCKLEY

I, R. Bruce Buckley, being duly sworn, under the penalty of perjury, depose and say:

1.    I am over twenty-one years of age, have never been convicted of a felony, am a citizen of the United States residing in Harris County, Texas, and make the following statements of my own personal knowledge and recollection.

2.    I am duly licensed and in good standing to practice law in the State of Texas and a partner in the law firm of Buckley, Mathews, White & Howell, L.L.P. located in Houston, Texas.

3.    During the years 2000 through 2002, my law firm represented Howard Eugene Liner with respect to various transactions involving Larry Ewers. At no time during this period did I or any member of my law firm simultaneously represent Mr. Ewers during

this time period in any matter whatsoever, and have not represented Mr. Ewers in any matter since that time.

4.    My firm, in particular, represented Liner in the preparation of that certain Compensation Agreement dated May 22, 2002, between Liner and E.P.D. Management Company, L.L.C., and that certain Exclusive Power of Attorney and Mandate, dated May 22, 2002, effective as of January 11, 2002, from Liner to Larry Ewers. Both documents were prepared by my firm at Mr. Liner's direction, with his approval, and were signed by him in my presence. To the best of my knowledge and belief, everyone involved in this transaction, including Mr. Liner, was very aware that E.P.D. Management Company, L.L.C. was owned by Mr. Ewers. On or about June 18, 2002, Liner instructed my firm to prepare another Exclusive Power Of Attorney And Mandate instrument to Larry Ewers for Liner's execution, said instrument to be dated June 18, 2002, and effective as of January 11, 2002.The June 18, 2002, Exclusive Power Of Attorney And Mandate was not executed in my presence, but was to be executed before a Notary Public in and for the State of Texas.

5.    As compensation for the legal services rendered to Liner by the firm, Liner executed and delivered to me that certain Fee Agreement dated November 9, 2000, and that certain Amendment to Contingent Fee Agreement effective May 9, 2002, between Liner and Buckley, Mathews, White & Howell, L.L.P. These two (2) instruments are the only instruments which the firm has with regard to fees for legal services rendered to Liner. The firm has no fee agreement or arrangement with Larry Ewers for legal fees to be paid for legal services of any nature or kind rendered to Larry Ewers.

Date: October 27, 2004
Houston, Texas

R. BRUCE BUCKLEY

**STATE OF TEXAS**          §
                           §
**COUNTY OF HARRIS**        §

This instrument was acknowledged before me on October 27, 2004, by **R. Bruce Buckley.**



CHRIS T. LOVING
MY COMMISSION EXPIRES
February 9, 2007

NOTARY PUBLIC IN AND FOR
THE STATE OF TEXAS

# EXHIBIT 2



Atten: Mark Matthews       -       Fax: 713-789-7700
From: Pat Marksberry       -       Phn: 832-391-3025
Re: Power of Attorney notary

Here is a copy of the page (see line #302) from Ms. Steck notary book for the above referenced notary. You mentioned the date was 6/18/02. Our records show 6/19/02. Also, if you need to contact Ms. Steck, her place of employment is Cinco Ranch Veterinary Clinic, 23144 Cinco Ranch Boulevard, #E, Katy, TX 77494, and the phone # is 281-693-7387.

# EXHIBIT 3

# MINUTES OF THE ORGANIZATIONAL MEETING

## OF THE MANAGERS OF

## E.P.D. MANAGEMENT COMPANY, L.L.C.

### TABLE OF CONTENTS

**Article**                                                          **Page**

| | | |
|---|---|---|
| 1 | Authority To Act | 2 |
| 2 | Identification Of Meeting | 2 |
| 3 | Chairman of Meeting | 2 |
| 4 | Record Book | 2 |
| 5 | Articles Of Organization | 3 |
| 6 | Regulations and Operating Agreement | 3 |
| 7 | Seal | 3 |
| 8 | Membership Certificates and Record | 4 |
| 9 | Officers | 4 |
| 10 | Express Authority of Officers | 4 |
| 11 | Bank Account(s) | 5 |
| 12 | Banking Resolution | 6 |
| 13 | Issuance of Membership Interests | 6 |
| 14 | Waiver and Consent | 7 |
| 15 | Prior Business | 7 |
| 16 | Adjournment | 7 |

Approval of Minutes                                                        8
Contents of Appendices to Minutes                                          9

Appendices to Minutes
A.      Specimen Share Certificate
B.      Banking Resolution

## ARTICLE ONE

The organizational meeting of the Managers of E.P.D. Management Company, L.L.C., a Texas Limited Liability Company, was held on the 18TH day of October, 1998.

The meeting was called by the initial Managers named in the Articles of Organization, which were filed, in the office of the Secretary of State of the State of Texas on October 16, 1998.

Present at the meeting was Initial Manager, Mr. Don Butler and Mr. Larry Ewers, which constitutes a quorum. At the Meeting the following business was conducted, and on motions duly made, seconded and carried, the following resolutions and actions were adopted:

## ARTICLE TWO

RESOLVED, that this meeting is the organizational meeting of the Managers of E.P.D. Management Company, L.L.C. (hereinafter referred to as the "Company"). Mr. Don Butler appointed Mr. Larry Ewers as sole Manager and submitted his resignation as the Manager of the Company. The Company acknowledges the receipt of Mr. Butler's resignation and has accordingly accepted the same.

## ARTICLE THREE

RESOLVED, that the Company hereby appoints and elects Mr. Larry Ewers as the sole Manager of Company. Mr. Larry Ewers shall be, and hereby is, elected Chairman of this meeting and that Mr. Larry Ewers shall be, and hereby is, elected Secretary of the meeting.

## ARTICLE FIVE

RESOLVED, that a file-marked copy of the Articles of Organization of the Company and the original Certificate of Organization from the Secretary of State of Texas are hereby accepted and approved and shall be inserted in the Corporate Record Book.

## ARTICLE SIX

RESOLVED, that the Regulations and Operating Agreement presented to and considered at the meeting are hereby adopted as the Regulations and Operating Agreement of the Company.

The Secretary of the Company is ordered to certify a copy of such Regulations and Operating Agreement, insert the same into the Corporate Record Book, maintain them in the principal business office of the Company, and keep them open for inspection by the Members at all reasonable times during office hours.

## ARTICLE SEVEN

RESOLVED, that the form of seal presented to this meeting be, and hereby is, adopted as the Company's official seal, and that an impression thereof be embossed on the margin of these minutes below this resolution, the seventh article of these minutes.

## ARTICLE EIGHT

RESOLVED, that this Company hereby adopts that certain form of Membership Interest Certificate presented to this meeting as the form that will be used to evidence ownership of Membership Interests of the Company, and the Secretary is directed to attach a specimen copy of such certificate to the Minutes of this meeting for identification.

## ARTICLE NINE

RESOLVED, that the following persons are hereby elected as officers of the Company:

President & Treasurer:        Mr. Larry Ewers

## ARTICLE TEN

RESOLVED, that the President of the Company be, and hereby is authorized to purchase, sell, and convey any and all real and personal property of every kind and nature as may be determined by said officer to be in the best interest of the Company for such price and on such terms, including part cash and part credit, all cash, or all credit, as said officer may deem proper and in the best interest of said Company.

BE IT FURTHER RESOLVED, that the President be, and hereby is, authorized and empowered to enter into contracts, execute notes, deeds of trust, deeds, releases, leases, transfers, mortgages, mechanic's lien contracts, plats, easements, dedications, land use restrictions and amendments thereto and to execute such other instruments in writing affecting the title to real estate or other property belonging to the Company or otherwise,

as in the judgment of the said officer is deemed best for said Company, all of which, when so executed by said officer, shall be for and on behalf of the Company and shall constitute the act and deed of said Company, and it shall not be necessary for the Secretary to attest to any instrument so executed by the Corporation.

BE IT FURTHER RESOLVED, that the President be, and hereby is, authorized and empowered to borrow money on behalf of the Company in such amounts and on such terms as determined by said officer to be in the best interest of the Company; as security therefor to make and deliver security agreements and deeds of trust creating liens on the real and personal property owned by the Company; and to perform these actions as determined in said officer's discretion to be in the best interest of the Company. It shall be expressly necessary for the Secretary to attest to any instrument relating to the borrowing of money on behalf of the Company.

### ARTICLE ELEVEN

RESOLVED, that the Company establish in its name one or more deposit accounts with a bank chosen by the President and/or Treasurer, on such terms and conditions as may be agreed on with said bank, and that the President and/or Treasurer of the Company be, and are hereby, authorized to establish all such accounts;

BE IT FURTHER RESOLVED, that the below-named and subscribed officers of the Company be, and hereby are, authorized to draw checks on the Company's accounts, with signatures duly certified to the bank by the Secretary of this Corporation, and the bank is hereby authorized to honor and pay any and all checks so signed, including those drawn to the individual order of any officer or other person authorized to sign the same.

Signature

Larry Ewers

## ARTICLE TWELVE

RESOLVED, that this Corporation hereby adopts by reference all of the resolutions and provisions of the banking resolution heretofore presented to the meeting, and it is directed that a conformed copy thereof be attached to and made a part of the minutes of this meeting.

## ARTICLE THIRTEEN

RESOLVED, that this Company authorizes the issue of Membership Interests to the following person(s) and/or entities, in the amount set forth opposite each name, for the value of the services and labor set forth below:

| Member | Membership Interest | Contribution |
|---|---|---|
| Mr. Larry Ewers | 100% labor | $1000.00 cash and for and services |

previously performed.

## ARTICLE FOURTEEN

RESOLVED, that the Managers, by their signatures affixed to the minutes of this organizational meeting of the Managers, and by this resolution, does hereby waive notice of the time and place of this meeting, consent to the meeting and do approve of the contents of the minutes of this organizational meeting.

## ARTICLE FIFTEEN

RESOLVED, that all actions of the initial Managers of this Company, and all contracts and agreements entered into by the initial Managers of this Company, acting either individually or as a group, pursuant to and since organization of the Company to do business be, and they are hereby, ratified and adopted as if such acts were authorized by the Managers at this meeting.

## ARTICLE SIXTEEN

There being no further business to come before the Managers, the meeting was duly adjourned.

The foregoing reflects all business conducted by the Managers at the organizational meeting or through unanimous consent to action take in lieu of the organizational meeting.

_Janice Ewers_                              _Janice Ewers_
                                              Secretary

**APPROVED:**

_Larry Ewers_
    Chairman

## APPROVAL OF MINUTES

We hereby approve the foregoing minutes of the organizational meeting of the Managers and acknowledge the exhibits attached hereto.

_Larry Ewers_
Larry Ewers/Manager