UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LARRY EWERS,<br>    Plaintiff,<br><br>v.<br><br>CHRISTOPHER PATRICK HERON,<br>CORPORATION OF THE BANKHOUSE, INC.,<br>SOCIETE BANKHOUSE, and<br>JAMES F. POMEROY, II,<br>    Defendants. | CIVIL ACTION<br>NO. 04-10024-RWZ |

## PLAINTIFF'S OPPOSITION TO DEFENDANT CHRISTOPHER PATRICK HERON'S MOTION TO DISMISS AND TO SET ASIDE DEFAULT

Plaintiff Larry Ewers hereby opposes the "Motion to Dismiss for Lack of Jurisdiction, Motion to Set Aside Default and Motion to Dismiss for Lack of Real Parties in Interest" (the "Motion") filed by Defendant Christopher Patrick Heron ("Heron").

### SUMMARY OF ARGUMENTS

Heron appears to make the following arguments:

1. "Lack of Subject Matter and Personal Jurisdiction"

Heron proffers a varied mix of unsupported, irrelevant, and/or unavailing arguments. First, he states as fact, but without any verified support, that there was "never ... adequate service of process" upon him (Motion, ¶ 2), a statement belied by Exhibit 7 (Certificate of Service, stamped by Central London County Court) and Exhibit 8 (Certificate of Compliance with The Hague Convention), as well as by Heron's own posting of correspondence to this Court from the very address identified in the Certificates.

Second, Heron claims that there is "no case or controversy ... because Ewers is not ... a creditor of mine" (Motion, ¶ 3), Ewers does not "assert that he has any claim against me"

(Motion, ¶ 4), and "has not alleged any right against me whatsoever." Id. In fact, Ewers' claims, which are based on a documented assignment and an exclusive, irrevocable power of attorney, are unimpeachably supported by the relevant instruments and applicable law.

Third, Heron argues that Ewers "lacks standing," because "Liner has denied ... that ... Ewers has his authority to proceed," and Ewers' Power of Attorney from Liner "does not authorize Ewers to sue me outside of the Bankruptcy Proceeding in the United Kingdom." (Id. ¶5.) Even apart from being based on unsupported factual allegations outside the pleadings, Heron's analysis is demonstrably wrong as a matter of law and clear contract provisions.

2. "Motion to Dismiss for Lack of Real Parties in Interest"

This Motion is simply a repetition of Heron's argument that Ewers lacks standing because Liner has purported to revoke the Power of Attorney. Whatever Liner may think or do, the Power of Attorney is irrevocable, and Ewers has exclusive standing to maintain this action.

3. "Motion to Set Aside Default"

Heron's stated basis for setting aside the default, which entered more than six months ago, is two-fold. First, Heron claims that the default "was procured by fraud, misrepresentation and misconduct of Ewers and his counsel." (Motion, ¶8.) This contention lacks any serious content but will be addressed seriously nonetheless. Second, Heron claims that he has "meritorious defenses," which are the two mentioned previously: that Ewers is not a "real party in interest," and "the Court has no jurisdiction." Both defenses are unavailing.

**FACTUAL BACKGROUND**

The facts most pertinent to Heron's Motion are as follows.

Ewers filed his Complaint against Heron and others on January 7, 2004 (*see* **Exhibit 1.**) The Complaint alleges that it is brought pursuant to an Exclusive Power of Attorney and

Mandate executed on June 18, 2002 by Howard Eugene Liner ("Liner"). *See* Complaint, ¶ 22.

Under the terms of the Power of Attorney (*see* Exhibit 3 hereto):

> "HOWARD EUGENE LINER ... does make, constitute, mandate and appoint LARRY EWERS ... as his sole, exclusive, true, and lawful Attorney-In-Fact and Mandate ... to act in [Liner's] place, and stead *for the purpose of doing any and every act, and exercise any and every power, that [Liner] could do, and that may be reasonably necessary regarding the following contracts and matters*: That certain memorandum of Understanding, dated July 18, 2000 ...; That certain Agreement dated January 17, 2002...; Cause No.384-SD-2001: In The High Court Of Justice In Bankruptcy: RE: Christopher Patrick Heron and Hsin-Ming Chuo and Howard Eugene Liner; and Cause No. 1625 of 2002: In The High Court Of Justice In Bankruptcy: RE: Christopher Patrick Heron."
>
> "This Exclusive Power Of Attorney And Mandate shall not terminate on my disability, *is irrevocable*, and *coupled with an interest*, and *shall only terminate upon the full and final adjudication, resolution, settlement, and disposal of the referenced matters and contracts*. I agree that anyone dealing with said Attorney-In-Fact and Mandate may rely upon the statement(s) of such Attorney-In-Fact and Mandate, that *this Exclusive Power of Attorney and Mandate has not been revoked* or modified in any manner...."
>
> "I hereby ratify and confirm that my sole and exclusive Attorney-In-Fact and Mandate shall lawfully do, or cause to be done by virtue of this Exclusive Power of Attorney and Mandate along with the rights and powers granted herein, *all acts necessary in the prosecution of the claims asserted in the referenced matter and the rights granted under said contracts.* Said Attorney-In-Fact and Mandate shall have the powers set forth herein *to the exclusion of all other persons or entities, including myself, my heirs and assigns.*" (Emphases added.)

Previously, by means of a Compensation Agreement dated May 3, 2002 (the "Compensation Agreement") (*see* Exhibit 4 hereto), Liner granted Ewers, through Ewers' wholly-owned and wholly-controlled Texas Limited Liability Company, E.P.D. Management Company, L.L.C. ("EPD"), an interest in the "Bankruptcy Claim," defined as "various claims," including "claims and causes of action against [Heron] which arise as a result of Heron's breach of the terms of a certain Memorandum of Understanding dated July 18, 2000":

> "Liner does hereby assign, transfer, and convey to EPD, fifty percent (50%) interest in and to the Bankruptcy Claim, including, without

> limitation, *fifty percent (50%) of all sums to be received by Liner as a result of the compromise, settlement, resolution, execution, or collection* of the Bankruptcy Claim."

Ewers was and remains the sole member of EPD – a fact of which Liner "was very aware" at the time of execution of the Compensation Agreement and the Power of Attorney, according to Liner's own attorney, who represented him at the time in connection with both instruments. *See* Affidavit of R. Bruce Buckley, attached hereto as Exhibit 13, ¶ 4). The interest assigned to EPD/Ewers was an interest in 50% "*of all sums to be received by Liner as a result of the compromise, settlement, resolution, execution, or collection* of the Bankruptcy Claim."

Ewer's Complaint plainly seeks collection of the Bankruptcy Claim. The Bankruptcy Claim was filed subsequent to Heron's default under a January 17, 2002 Settlement Agreement (the "Settlement Agreement") (*see* Exhibit 5), which Heron had executed with certain creditors, including Liner. Ewers executed the Settlement Agreement in exercise of his Power of Attorney.

In connection with the fulfillment of his obligations to pay those creditors 70% of his net worth under the Settlement Agreement, Heron sent a letter dated February 1, 2002 (the "Heron Financial Statement") to the creditors' solicitor, stating that his net worth consisted entirely of his ownership interest in an account that was identified as Syndicate 150 – an account under the management of Corporation of the BankHouse, Inc., the principal place of business of which was 30 Rowe's Wharf, Boston, Massachusetts. *See* Exhibit 6.

Process was served on Heron, by hand, on April 7, 2004, at his residential address, 21 Dale House, Boundary Road, London (the same address shown on his Financial Statement), pursuant to Article 5(b) and 6 of The Convention On the Service Abroad Of Judicial And Extrajudicial Documents In Civil Or Commercial Matters ("The Hague Convention"). Affidavit of Alan M. Spiro in support of Plaintiff's Motion for Entry of Default Judgment against

Defendant Christopher Patrick Heron, dated July 9, 2004 ("Spiro Affidavit" or "Aff.") (*see* Exhibit 2), ¶¶ 3 – 4; Exhibits 7, 8 hereto. Proof of Service on Heron was filed with this Court on April 20, 2004. Spiro Aff., ¶ 5; Docket # 7.

Although Heron's response to the Complaint was due on April 27, 2004, Spiro Aff., ¶ 6, no response to the Complaint was served on Ewers or reported filed with the Court. *Id.*, ¶ 8.

On May 11, 2004, Plaintiff filed a Verified Motion for Entry of Default against Heron. The Verified Motion for Default was served upon Heron at his residence – 21 Dale House, Boundary Road, London – by mail. Default entered against Heron three weeks later, on June 4, 2004, with Notice of Default sent to the parties by the Court on that same date. Docket # 9.

More than 30 days passed with no response from Heron. Therefore, on July 9, 2004, Ewers filed a Motion for Entry of Final Judgment against Heron, accompanied by the Affidavit of Alan M. Spiro in support thereof. The Motion for Entry of Final Judgment and the Affidavit were served on Heron at his residence – 21 Dale House, Boundary Road, London – by mail.

By letter dated July 22, 2004 ("Heron July 22 Letter"), with a copy to this Court, Heron acknowledged to Ewers that he had been served with Ewers' Motion for Entry of Final Judgment. The most significant import of Heron's letter is that it was mailed from, and specifically referenced, his residential address – 21 Dale House, Boundary Road, London – the same address at which he had been served with the Complaint under the Hague Convention (*see* Exhibits 7, 8), and the same address at which he had been served with the Verified Motion for Default and the Motion for Entry of Final Judgment.

Yet, Heron did not answer or otherwise plead. Instead, he waited until November 16, 2004, nearly six (6) months after this Court's entry of default, to file his putative Motion to Dismiss and to Set Aside Default.

## ARGUMENT

I. **Heron's Claim That This Court Lacks Personal Jurisdiction Must Fail.**

Heron makes the cursory claim that this Court lacks personal jurisdiction, arguably invoking a request for dismissal pursuant to Fed. R. Civ. P. 12(b)(2). Motion, pp. 1, 4, 8. In evaluating Heron's request, this Court must evaluate Ewers' *prima facie* showing of personal jurisdiction over Heron, accepting Ewers' properly supported proffers of evidence as true. U.S. v. Swiss American Bank, Ltd., 274 F.3d 610, 619 (1st Cir. 2001) (citing United Electric Radio & Machine Workers of America v. 163 Pleasant St. Corp., 987 F.2d 39, 44 (1st Cir. 1993)); Barrett v. Lombardi, 239 F.3d 23, 26 (1st Cir. 2001). Despite Heron's unsupported challenges, this Court does properly exercise personal jurisdiction over Heron: the Massachusetts long-arm statute grants jurisdiction over Heron, and the exercise of jurisdiction comports with the strictures of the Constitution. Barrett, 239 F.3d at 26 (citing Pritzker v. Yari, 42 F.3d 53, 60 (1st Cir. 1994)); Noonan v. Winston Co., 135 F.3d 85, 89 (1st Cir. 1998).

**(a) Heron's Massachusetts Activities Satisfy the Massachusetts Long-Arm Statute, Mass. Gen. L. ch. 223A, § 3.**

By Heron's own admission, he has transacted business in Massachusetts with respect to precisely the assets that are at issue in this case. This case is here, and Heron is properly before this Court, precisely because – according to Heron himself – all of his assets were held by Corporation of the BankHouse, 30 Rowes Wharf, Boston, Massachusetts. *See* Exhibit 6. The Complaint is replete with allegations directly concerning Heron's parking of assets in Boston, correspondence to and from Boston, representations made from Boston, and a conspiracy between Heron, Corporation of the BankHouse and defendant James F. Pomeroy, II to defraud

creditors. *See, e.g.,* Complaint ¶¶ 4, 5, 6, 14, 16, 17, 18, 19, 21, 25, 26, 29, 30, 32 – 37, 39 – 46, 48 – 49, 53 – 54.

Pursuant to Mass. Gen. L. ch. 223A, § 3(a) "a court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action in law or equity arising from the person's (a) transacting any business in the commonwealth." Arnold v. Brooks, 2003 WL 22708469 (Mass. App. Div. Nov. 14, 2003) (finding personal jurisdiction when defendant partnership's primary bank account was in Massachusetts and complaint related to funds due from that account); *cf.* Tramonte v. Korean War Veteran's Assoc., Inc., 2002 WL 745813, at *3 (D. Mass. Feb. 5, 2002) (holding no personal jurisdiction over defendant when, among other factors, defendant had no "assets or property in Massachusetts and did not maintain [a] bank account in Massachusetts"); Debutts v. Prince of Fundy Cruises, Ltd., 1991 WL 104091, at *1 (D. Mass. June 4, 1991) (holding no personal jurisdiction when, among other factors, defendant had no bank accounts or assets in Massachusetts).

It is precisely because Heron transacted business in Massachusetts – parking, by his own account, all of his assets here, and colluding with agents here – Corporation of the BankHouse and Pomeroy – that Heron is being sued here. He is subject to jurisdiction here.

### (b) Heron Has Sufficient Minimum Contacts With Massachusetts So That This Court's Exercise Of Jurisdiction Over Heron Does Not Offend Due Process.

The inquiry into whether Heron's contacts with Massachusetts are sufficient focuses on the tests: (1) the claims underlying this litigation must relate to Heron's Massachusetts contacts; and (2) Heron's contacts with Massachusetts must represent a purposeful availment of the privilege of conducting activities in Massachusetts. Barrett, 239 F.3d at 26 (citing United Electric Radio & Machine Workers of America v. 163 Pleasant St. Corp., 960 F.2d 1080, 1089

BOS_468403_2/KNOURSE

(1st Cir. 1992). Ewers' Complaint relates directly to Heron's investment account in Boston and his activities with respect to those funds. Heron, by his own admission, invested substantially all of his funds in the account at Corporation of the BankHouse in Boston. In the Settlement Agreement, *see* Exhibit 5, Paragraph 1.11, Heron represented his net worth to be approximately $6,000,000. He later stated, in his Financial Statement, *see* Exhibit 6, that all his net worth was under the management of Corporation of the BankHouse in Massachusetts. Heron communicated into Massachusetts multiple times, requesting, for example, that Corporation of the BankHouse provide a statement confirming the value of Heron's interests in the Boston account (Complaint, ¶¶ 14 – 18, 29), and Heron purported to rely on that statement – sent from Boston – to support his Financial Statement (Complaint, ¶¶ 19, 25). Heron's investment activities in Boston represented his purposeful availment of the privilege of conducting activities in the Commonwealth. To find that a court in Massachusetts has personal jurisdiction over Heron, with respect to an action seeking to recover those very assets, hardly offends due process: a person who parks money in Boston, seeks representations to be issued from Boston, induces reliance on those representations, and repeatedly promises to satisfy a debt out of assets maintained in Boston, can hardly complain when the creditor seeks to garner those assets.

(c)     **Exercise of Personal Jurisdiction over Heron by this Court Is Reasonable.**

This Court also properly exercises jurisdiction over Heron under the so-called "gestalt factors" of reasonableness: Heron's burden of appearing; the interest of Massachusetts in adjudicating the dispute; Ewer's interest in obtaining convenient and effective relief; the judicial system's interest in obtaining the most effective resolution of the controversy; and the common interests of all sovereigns in promoting substantive social policies. Noonan, 135 F.3d at 89 (citing United Electric, Radio & Machine Workers of America, 960 F.2d at 1089).

Given that Heron found it convenient enough to invest all of his assets in Boston at Corporation of the BankHouse, and conducted other pertinent business in Boston – *see* Complaint, ¶ 26 (correspondence with Boston attorney Robert Masud and Affidavit transmitted to Boston representing Heron's intent to purchase a $200,000,000 instrument, at the same time that Heron was representing that he had no significant assets) – can hardly be heard to complain that he is burdened either in a quantitative (cost) or a qualitative way (fairness) by having to appear here to defend an action seeking those very funds. (Heron fails to mention that he was also employed by Corporation of the BankHouse.) Finally, Massachusetts has a compelling interest in adjudicating the fate of funds under the management of a company with its principal place of business in the Commonwealth. Similarly, Ewers, the judicial system, and all sovereigns have the strongest interest in obtaining convenient and effective relief from a Massachusetts court concerning assets maintained here and representations made here.

In light of these factors, the exercise of personal jurisdiction over Heron must be found to be reasonable. Heron's Motion to Dismiss for lack of personal jurisdiction must be denied.

## II. Heron's Motion To Dismiss For Lack Of Subject Matter Jurisdiction, Service Of Process, Standing, And Real Parties In Interest, Must Also Fail.

Heron moves to dismiss the Complaint based on alleged defects unrelated to personal jurisdiction. Those grounds for dismissal must be evaluated by assuming the truth of the allegations in the Complaint and drawing all reasonable inferences in the plaintiff's favor. Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co., 267 F.3d 30, 36 (1st Cir. 2001) (citing Beddall v. State Bank & Trust Co., 137 F.3d 12, 16 (1st Cir. 1998)). Dismissal is warranted only if Ewers' Complaint presents no set of facts justifying recovery. Cooperman v.

Individual, Inc., 171 F.3d 43, 46 (1st Cir. 1999) (citing <u>Dartmouth Review v. Dartmouth College</u>, 889 F.2d 13, 16 (1st Cir. 1989)).

### (a)  This Court Properly Exercises Subject Matter Jurisdiction over the Claims Asserted in Ewers' Complaint.

In his Motion, ¶¶ 3 – 7, Heron repeatedly states that Ewers is not a creditor of his, has never filed any claim in his bankruptcy pending in the United Kingdom, and, allegedly, has no authority to assert the claims of third parties against him. Based on these self-evidently false, unsupported and unsupportable allegations, Heron seeks dismissal of the Complaint for lack of subject matter jurisdiction, ostensibly pursuant to Fed. R. Civ. P. 12(b)(1).

Heron's essential "support" for his argument that Ewers does not have authority under the Power of Attorney is that Liner says so. Given that the Power of Attorney is both <u>irrevocable</u> and <u>exclusive</u>, Ewers has standing to pursue this action – <u>whatever</u> Liner may say.[1] Conversely, Liner himself is precluded from pursuing this case, despite Heron's say-so to the contrary.

Moreover, Ewers' wholly-owned company, EPD, is the assignee under the Compensation Agreement. As such, Ewers has a beneficial interest in fifty percent (50%) of Liner's claims against Heron. *See* <u>Exhibits 3, 4</u>. Despite Heron's unsupported allegation to the contrary, as Liner's "Attorney-In-Fact and Mandate," and as one holding a beneficial interest in these claims pursuant to the Compensation Agreement, Ewers has sufficient authority and interest to assert the causes of action alleged in this suit, as discussed in greater depth in Ewers' opposition (§ (b), *infra*) to Heron's closely related allegation that Ewers lacks standing.

Accordingly, Heron's contention that this Court lacks subject matter jurisdiction for lack of a case or controversy between Ewers and Heron must fail as a matter of law.

**(b)    Ewers Has Sufficient Standing and Interest to Bring Claims against Heron.**

Heron argues that Ewers lacks standing and is not a real party in interest for the purposes of bringing suit. *See* Motion to Dismiss, ¶¶ 5, 11-14. Neither argument is availing: Ewers does have sufficient standing and interest in the subject matter of the claims at issue.

Fed. R. Civ. P. 17(a) requires every action to be "prosecuted in the name of the real party in interest." Although federal rules require suit in the name of the party with substantive rights, a procedural matter, federal courts refer to the relevant state substantive law to identify the true owner of the legal interests at issue. Torske v. Bunn-O-Matic Corp., 216 F.R.D. 475, 478 (D.N.D. 2003); MHI Shipbuilding, LLC v. National Fire Ins. Co. of Hartford, 286 B.R. 16, 28 (D. Mass. 2002) ("a party is the real party in interest if, under the relevant substantive law creating the right being sued upon ... the suit has been commenced by the party holding the substantive right to relief") (citing Swanson v. Bixler, 750 F.2d 810, 813-14 (10th Cir. 1984); ECI Management Corp. v. Scottsdale Ins. Co., 23 F.3d 354, 356 (11th Cir. 1994); American Triticale, Inc. v. Nytco Services, Inc., 664 F.2d 1136, 1141 (9th Cir. 1981). Specifically, "whether a complainant is the real party in interest under state law is generally resolved by inquiring whether he or she has standing under state law." Swanson, 750 F.2d at 813.

Ewers' power over and interest in the claims asserted in this action are sufficient under the relevant law of the State of Texas, under which the Power of Attorney and Compensation Agreement must be enforced, to confer him standing and the status as a "real party in interest" for the purposes of Fed. R. Civ. P. 17(a). Indeed, Ewers' powers with respect to the prosecution

---

[1] We have extensively briefed the irrevocability of the Power of Attorney in our brief, appendix of controlling Texas authority, and supplemental brief in opposition to certain proposed intervenors' motion to intervene, and will not repeat that authority here.

of the claims against Heron are not only sufficient – they are <u>exclusive</u> – "to the exclusion of all other persons or entities, including myself [Liner]." *See* <u>Exhibit 3</u>, p. 3, first paragraph.

Ewers brings the claims asserted in this litigation, not only on the basis of the Power of Attorney, but also coupled with a beneficial interest in those claims arising from the assignment of fifty percent (50%) of Liner's claims against Heron. As Heron acknowledges in his Motion, ¶6, Ewers' wholly-owned LLC was assigned a "fifty percent (50%) interest in and to the Bankruptcy Claim, including, without limitation, fifty percent (50%) of all sums to be received by Liner as a result of the compromise, settlement, resolution, execution, or collection of the Bankruptcy Claim" (*see* <u>Exhibit 4</u>, p. 1). As the sole member of EPD, Ewers has a beneficial interest in the Bankruptcy Claim.[2]

Thus, Ewers alone possesses the standing to bring this action against Heron, among others, and sufficient interest in these claims. See <u>Grassi v. Ciba-Geigy</u>, 894 F.2d 181, 185 (5th Cir. 1990) ("with a partial assignment ... an *actual* transfer of a fractional interest is made, making both the transferor and transferee real parties in interest"); <u>Utility Fuels, Inc. v. Whittaker Corp.</u>, 1986 WL 14835, at * 5 (S.D. Tex. Dec. 24, 1986) ("when there has been only a partial assignment, the assignor and the assignee each retain an interest in the claim and are both real parties in interest").[3]

---

[2] As the sole member of EPD, Ewers has a beneficial interest in the Compensation Agreement. Under governing Texas law: "To constitute an agency coupled with an interest, the agent must have a present, <u>beneficial</u> interest in the property on which the power is to operate...." Tex. Jur. 3d Agency §35 (emphasis added). <u>Any</u> equitable interest, even a mere security interest, is a sufficient interest, when coupled with a power of attorney, to make that power of attorney irrevocable. <u>Nelson v. Consumers County Mutual Ins. Co.</u>, 326 S.W.2d 535, 538 (Tex. Civ. App. – San Antonio, 1959, reh'g denied).

[3] *See also* <u>Advanced Magnetics, Inc. v. Bayfront Partners, Inc.</u>, 106 F.3d 11, 17-18 (2nd Cir. 1997) (holding power of attorney not coupled with an assignment of the claims at issue insufficient to confer interest sufficient to sue in own name); <u>Titus v. Wallick</u>, 306 U.S. 282, 289-90 (1939) ("while a power of attorney to sue, standing alone, does not ... operate as an assignment to vest the attorney with such title or interest as will enable him to maintain the suit

BOS_468403_2/KNOURSE

### (c) Heron Was Adequately Served Process.

Heron claims, without verified support by way of Affidavit, that "there has never been adequate service of process" on him, which appears to implicate dismissal pursuant to Fed. R. Civ. P. 12(b)(4) and/or 12(b)(5). Motion, ¶¶ 2, 7. Heron's unsupported say-so rings hollow, in the face of Ewer's April 7, 2004 service of the Complaint, in conformity with Fed. R. Civ. P. 4(f) and Article 5(b) and 6 of The Hague Convention, through personal delivery to, and voluntary acceptance by, Heron at 21 Dale House, Boundary Road, London, NW8. See Exhibit 1 (Heron Summons and certified copy of the Complaint served under The Hague Convention); Exhibit 7 (Certificate of Service, stamped by Central London County Court); Exhibit 8 (Certificate of Compliance with The Hague Convention).[4] Because service was made on Heron in person in the United Kingdom by a solicitor in conformity with The Hague Convention, Heron's claim of a failure of "adequate service of process" fails. See Supra Medical Corp. v. McGonigle, 955 F.Supp. 374, 384-85 (E.D.Pa. 1997) (denying defendant's motion to dismiss for insufficiency of service of process when, as permitted by The Hague Convention, complaint was served on resident of U.K. by U.K. solicitor).

### III. The Default Judgment Against Heron Should Not Be Set Aside.

This Court entered default against Heron pursuant to Fed. R. Civ. P. 55(a). Heron must therefore seek relief pursuant to Fed. R. Civ. P. 55(c), which states, in relevant part, "[f]or good cause shown the court may set aside an entry of default."

---

in his own name, ... the addition of the power to petitioner's assignment did not deprive it of its force and character as an assignment.")

[4] Through an apparent clerical error, the certificates of service and compliance with The Hague Convention reference an incorrect civil action number. However, the proper Complaint for this action, C.A. No. 04-10024-RWZ, was served on Heron (Spiro Aff. ¶¶ 3 – 5), and the correct parties ("Plaintiff Larry Ewers vs. Defendant Christopher Patrick Heron") were identified in the Certificate of Compliance with The Hague Convention. See Exhibits 1, 7, 8.

Of course, this Court enjoys broad discretion to deny Heron's motion to set aide default. Sea-Land Service, Inc. v. Ceramica Europa II, Inc., 160 F.3d 849, 851 (1st Cir. 1998); Leshore v. County of Worcester, 945 F.2d 471, 472 (1st Cir. 1991); Coon v. Grenier, 867 F.2d 73, 75 (1st Cir. 1989). When considering whether to set aside Heron's default, this Court "should consider whether the default was willful, whether setting is aside would prejudice [Ewers], and whether a meritorious defense is presented." Coon, 867 F.2d at 76 (internal quotations omitted). Based on these considerations, entry of default as to Heron must not be set aside.

(a) **Heron's Default Was Willful.**

As evidenced by Heron's own letter of July 22, 2004, see Exhibit 9 (see also Exhibits 5, p. 1; 6, p. 2), Heron indeed resides at the address at which both the Complaint and the Verified Motion for Entry of Default were served upon him. He had actual notice of this lawsuit, the Notice of Default, and the Motion for Entry of Final Judgment. Yet still Heron waited until November to take any action. He makes no effort to explain or justify his delay. His default was knowing and intentional, and his unrepentance demonstrates that it was willful.

(b) **Ewers Would Be Prejudiced If Heron's Default Were Set Aside.**

Ewers has both a 50% beneficial interest in, and an exclusive Power of Attorney over, the claims in this case, and stands to lose valuable ground in his attempts to recover funds due him and other creditors if Heron's default were set aside despite Heron's willful default. Ewers would also incur unnecessary expense to pursue his claims anew.

(c) **Heron's Defenses Are Not Meritorious.**

The futility of Heron's arguments concerning the alleged lack of jurisdiction of this Court over both Heron and the subject matter of Ewers' claims and the alleged insufficiency of process or service of process are discussed above: Heron may not rely on those arguments.

Heron also claims that the Spiro Affidavit, submitted in support of entry of default judgment (not the default itself) against Heron, contained various "misrepresentations." Heron's claims are so specious as barely to merit response, but we will nonetheless respond seriously.

(i) Heron alleges that the statement in § 3.3 of the Settlement Agreement that "Mr. Heron is indebted to Mr. Liner for the Cho/Liner Debt," is not a determination of debt. *See* Motion to Dismiss, ¶10(A)(i)). In a flight of non-sequitur, Heron claims that the statement made at ¶11 of the Spiro Affidavit, *viz.*, that "Heron admitted to his debt, defined as the 'Cho/Liner Debt,'" is a "misrepresentation," because, Heron argues, "there has been no determination in the Bankruptcy Proceeding of [the] validity [of Liner's claims]."

First, Heron's argument is a non-sequitur, since Heron did "admit" the debt, as the Spiro Affidavit states. The Settlement Agreement contains the admission in several places:

- § 3.3 ("Mr. Heron is indebted to Mr. Liner for the Cho/Liner Debt");

- § 1.15 (defining "the Cho/Liner Debt" as "US $1,980,000,000 payable pursuant to the Cho/Liner Contract by Mr. Heron together with interest thereon from 18th July 2001"); and

- § 5 (if Heron's assets exceeded $6,000,000, "the amounts due under the Cho/Liner Debt ... shall immediately become due and payable").

*See* Exhibit 5. As if this were not enough, Heron listed the debt on his List of Creditors in the Bankruptcy Proceeding. *See* Exhibit 11, p. 6, last entry, "U.S. $ 1.980 b."

Second, the adjudication of Bankruptcy in the United Kingdom, subsequent to Heron's default on the Settlement Agreement, did indeed operate, as a matter of law, as an adjudication of the debt. Section 270 of the Insolvency Act of 1986 provides:

> "The Court shall not make a bankruptcy order on a creditor's petition unless it is satisfied that the debt, or one of the debts, in respect of which the petition was presented is either:

BOS_468403_2/KNOURSE

> a) a debt which, having been payable at the date of the petition or having since become payable, has been neither paid nor secured nor compounded for, or
>
> b) a debt which the debtor has no reasonable prospect of being able to pay when it falls due."

In the opinion of U.K. bankruptcy counsel,[5] entry of the Bankruptcy Order (*see* Exhibit 11) by the High Court of Justice is:

> "conclusive evidence that the High Court of Justice has accepted that the creditors in the petition were owed the petition debt by the debtor and that the petition debt was unpaid. ... In the circumstances, in my opinion, it is beyond doubt that the bankrupt [*i.e.*, Heron] is indebted to the petitioners in the sum claimed."

*See* Exhibit 10. Thus, not only has Heron repeatedly admitted his debt, both in the Settlement Agreement and in his List of Creditors, but his objections to the debt were adjudicated against him by the High Court. In any event, the Spiro Affidavit merely attached a copy of the Settlement Agreement and stated: "Heron admitted to his debt, defined as the 'Cho/Liner Debt,' in the amount of $1,980,000,000. *See* Exhibit A at § 1.15. Heron admitted in § 3.3 of the Agreement that 'Mr. Heron is indebted to Mr. Liner for the Cho/Liner Debt.'" These statements, far from being "misrepresentations," are documented and true.

(ii) Heron's claim that § 4.1 of the Settlement Agreement required him only to pay 70% of nothing (the value, he now claims, of his disclosed assets), and therefore, he did not breach the Settlement Agreement by paying nothing (Motion, ¶ 10(A)(ii)), is mere sophistry. Section 1.11 of the Settlement Agreement defined "the Heron Net Worth" as "the sum of US $6,000,000 approximately," and § 1.19 defined "the Settlement Sum," as "seventy percent of the liquidated value of the Heron Net Worth." Heron was obligated to pay "the Settlement Sum" by "the

Payment Date," defined as January 24, 2002. It was because Heron failed to do so that the Bankruptcy Petition was filed and, on June 18, 2002, over Heron's objections, Heron was "adjudged bankrupt." *See* Exhibit 12. Heron's claim that "Ewers denies that I have any assets" (Motion, ¶ 10(A)(ii)) is absurd on its face and flatly contradicted by Complaint ¶¶ 26 – 27.

(iii) Heron's argument that § 5 of the Settlement Agreement limits the rights of any party to enforce the Settlement Agreement" is, again, absurd. Section 5 merely provides for an undoing of the settlement if Heron was lying about his net worth. Heron repeatedly acknowledged the Cho/Liner debt over which Ewers has Power of Attorney, and upon failure to pay the "Settlement Sum" by the "Payment Date," Heron agreed that he would "not on any grounds whatsoever oppose the making by the Court of a Bankruptcy Order against him." Thus, Heron agreed either to pay the Settlement Sum, or to accept his debts in full.

(iv) Heron's argument that "the Settlement Agreement is governed by the laws of England and Wales, and in paragraph 8.7 it is made clear that the parties have limited the jurisdiction which can adjudicate a breach of the Settlement Agreement to the courts of England and Wales" (Motion, ¶ 10(A)(iv)) is, again, absurd. The Settlement Agreement's breach needs no adjudication – its admissions as to the underlying debts are plain on their face, and its validity and breach were adjudicated by the Bankruptcy Order on June 18, 2002. What is now being enforced is the Bankruptcy Claim, which was assigned to Ewers and over which he has Power of Attorney – *i.e.*, the $1,980,000,000 "Cho/Liner Debt," which is based on the "Cho/Liner Contract," which Heron admitted in the Settlement Agreement (*see* §§ 1.14 and 1.15), included

---

[5] Wragge & Co. is a law firm of 412 attorneys, based in Birmingham, England, with offices in London and Brussels. Information concerning Wragge & Co. can be found in Martindale-Hubbell at http://lawyers.martindale.com, or at www.wragge.com. The opinion was rendered by Ian Weatherall, a partner of Wragge & Co.

in his List of Creditors (*see* <u>Exhibit 11</u>), and owes, "together with interest thereon from 18th July 2001" (*see* Settlement Agreement, § 1.15) at 8% (*see id.*, § 1.13).

(v) Heron's argument that "there is nothing in the Settlement Agreement that makes anything payable to Ewers" and that "it is a misrepresentation to say that a breach gives rise to a claim against be by Ewers" (Motion, ¶ 10(A)(v)) is frivolous. In the Settlement Agreement, Heron acknowledged the $1,980,000,000 debt, 50% of which Ewers beneficially owns, and over 100% of which Ewers has exclusive, irrevocable Power of Attorney.

Heron also makes the claim in ¶ 10(B) of his Motion that ¶12 of the Spiro Affidavit is "misleading," because the Power of Attorney "does not give Ewers the power of authority to bring this action in this Court and Liner has specifically denied he has given such a power to Ewers." The Power of Attorney in fact gives Ewers <u>extensive</u> powers:

> "to act in [Liner's] place, and stead *for the purpose of doing any and every act, and exercise any and every power, that [Liner] could do, and that may be reasonably necessary regarding the following <u>contracts</u> and <u>matters</u>*: That certain *Memorandum of Understanding*, dated July 18, 2000 ...; That certain *Agreement* dated January 17, 2002...; Cause No.384-SD-2001: In The High Court Of Justice In Bankruptcy: RE: Christopher Patrick Heron and Hsin-Ming Chuo and Howard Eugene Liner; and Cause No. 1625 of 2002: In The High Court Of Justice In Bankruptcy: RE: Christopher Patrick Heron."

The Power of Attorney goes on:

> "I hereby ratify and confirm that my sole and exclusive Attorney-In-Fact and Mandate shall lawfully do, or cause to be done by virtue of this Exclusive Power of Attorney and Mandate along with the rights and powers granted herein, all acts necessary in the prosecution of the claims asserted in the referenced matter *and the rights granted under said contracts.* Said Attorney-In-Fact and Mandate shall have the powers set forth herein to the exclusion of all other persons or entities, including myself, my heirs and assigns."

**Thus, Ewers has Power of Attorney over the "contracts" as well as the "claims." One of these "contracts" is the July 18, 2000 "Cho/Liner Contract" as defined in the Settlement Agreement, §**

1.14, pursuant to which the $1,980,000,0000 "Cho/Liner Debt" is due. *Id.*, § 1.15. Another of these "contracts" is the "Agreement dated January 17, 2002" – the Settlement Agreement itself.

Moreover, the <u>Compensation Agreement</u> gives Ewers, as sole owner of EPD, a beneficial interest in "50% of all sums to be received by Liner as a result of the compromise, settlement, resolution, execution or collection of the Bankruptcy Claim." This case <u>constitutes</u> an action to collect the Bankruptcy Claim, which includes the "Cho/Liner Debt," which is due under the Cho/Liner Contract and under the Settlement Agreement. Nothing limits Ewers' powers to the Bankruptcy Court in England. If that were the case, then Heron could attempt to evade collection merely by placing his assets outside the reach of the U.K. court. That is, of course, precisely what he is attempting to do, as alleged in the Complaint (¶¶ 27 – 29, 39 – 46, 51), and his efforts should not be aided by this Court. Ewers' Complaint is properly before this Court, because the claims asserted by Ewers constitute an attempt to collect on the contracts, debts, matters, claims and causes of action over which Ewers has Power of Attorney and in which he has a 50% beneficial interest.

Finally, Heron claims (Motion, ¶ 10(C)), that ¶ 18 of the Spiro Affidavit, stating that Heron has admitted that his debt to Ewers is $1,980,000,000, is not true. Yet again, Heron's assertion is baseless. Taken together with ¶ 17 of the Spiro Affidavit, it is obvious that the statement made in ¶18 is founded on Ewers' status as Liner's attorney-in-fact. Paragraph 17 of the Spiro Affidavit states:

> "On his List of Creditors in the United Kingdom proceedings, Heron listed the Liner debt, for which Ewers is attorney-in-fact, as 'U.S. $ 1.980' Billion dollars."

Heron does <u>not</u> bother to deny the statement that the Cho/Liner Debt is listed on his List of Creditors as "'U.S. $ 1.980' Billion dollars." Heron's List of Creditors is attached hereto as Exhibit 11: Heron does not deny the statement because it is undeniable.

Thus, Heron's allegations that the Spiro Affidavit contains "misrepresentations" or that the default was procured by "fraud, misrepresentation and misconduct," all fail. Default entered entirely properly. Heron's attempts to raise dust are too little, too late, and frivolous. There is no good reason to set aside the default.

## CONCLUSION

For the foregoing reasons, Plaintiff Ewers respectfully requests that this Court deny Heron's Motion to Dismiss for Lack of Jurisdiction and Real Parties in Interest and Motion to Set Aside Default in its entirety.

LARRY EWERS,

By his attorneys,

*[signature]*

Alan M. Spiro (BBO No. 475650)
Kenneth V. Nourse (BBO No. 655781)
EDWARDS & ANGELL, LLP
101 Federal Street
Boston, Massachusetts 02110
(617) 439-4444

Dated: December 15, 2004

**CERTIFICATE OF SERVICE**
I HEREBY CERTIFY THAT A TRUE COPY OF THE ABOVE DOCUMENT WAS SERVED UPON THE ATTORNEY OF RECORD FOR EACH OTHER PARTY BY MAIL/HAND ON 12/15/04

*[signature]*

BOS_468403_2/KNOURSE