DATED    17th January    2002

(1) H E LINER ESQ

(2) A P BAN ESQ

(3) A PLADOTT ESQ

(4) A S FELDMAN ESQ

(5) C P HERON ESQ

---

# AGREEMENT

---

Anthony Feldman & Co
40 Manchester Street
London W1U 7LL

Tel: 020-7935 2718
Ref: 30.KB.1451/1452/1756/1799

AN AGREEMENT made the 17th day of January 2002 BETWEEN

(1) **HOWARD EUGENE LINER** of 21403 Crystal Greens, Katy, Texas 77450 USA ("Mr Liner")

(2) **AH PING BAN** of 231 Outram Road, 01-01 Tarng Chern Building, Singapore 169040 ("Mr Ban")

(3) **ALEXANDER PLADOTT** of 20000 Winnetka Place, Woodland Hills, California 91364 USA and **ANTHONY STEPHEN FELDMAN** of 40 Manchester Street, London W1U 7LL the Trustees of the Flamecrest Enterprises Limited Trust ("Flamecrest")

(4) **ALEXANDER PLADOTT** of 20000 Winnetka Place, Woodland Hills, California 91364 USA and **ANTHONY STEPHEN FELDMAN** of 40 Manchester Street, London W1U 7LL the Trustees of the Balz Rudolf Wolfensberger Discretionary Trust ("Wolfensberger")

(5) **CHRISTOPHER PATRICK HERON** of 21 Dale House, Boundary Road, St John's Wood, London NW8 0JB ("Mr Heron")

IT IS HEREBY AGREED as follows:

1. **Definitions**

1.1 "the Ban Contract"   An agreement in writing dated 25th November 1998 and made between Mr Heron (1) and Mr Ban (2) as amended firstly by an undated addendum to the said agreement and secondly by a further addendum to the said agreement dated 24th December 1998

1.2 "the Ban Debt"   US$500,000,000 payable pursuant to the Ban Contract by Mr Heron together with Interest thereon from 3rd December 1999

1.3 "the Ban Petition"   A bankruptcy petition to be issued by Mr Ban

|      |                            |                                                                                                                                                                                                                                                                       |
|------|----------------------------|---|
|      |                            | Chancery Division, In Bankruptcy, for non-payment by Mr Heron of the Ban Debt |
| 1.4  | "the Clients Account"      | The United States Dollar Clients Account of the Creditors' Solicitors at Barclays Bank Plc, Barclays Business Centre, Baker Street Branch, 93 Baker Street, London W1A 4SD Sort Code 20-30-19 SWIFT Code BARC GB 22 Account No. 83590699 |
| 1.5  | "the Creditors"            | Mr Liner, Mr Ban, Flamecrest and Wolfensberger |
| 1.6  | "the Creditors' Solicitors"| Messrs. Anthony Feldman & Co of 40 Manchester Street, London W1U 7LL |
| 1.7  | "the Financial Statement"  | A statement evidencing the amount of the Heron Net Worth as at 15th January 2002 containing full and precise particulars of Mr Heron's assets and liabilities supported by documents evidencing the same and prepared in accordance with generally accepted accounting principles |
| 1.8  | "the Flamecrest Contract"  | An agreement in writing dated 14th April 1999 made between Mr Heron (1) and Anthony Stephen Feldman Gabriel Frances MacEnroe and Alexander Pladott, the Trustees of the Flamecrest Enterprises Limited Discretionary Trust (2) |
| 1.9  | "the Flamecrest Debt"      | US$100,000,000 payable pursuant to the Flamecrest Contract by Mr Heron together with Interest thereon from 14th April 2000 |
| 1.10 | "the Flamecrest Petition"  | A bankruptcy petition to be issued by Flamecrest against Mr Heron in the High Court of Justice, |

|      |      |      |
|------|------|------|
|      |      | Chancery Division, In Bankruptcy, for payment by Mr Heron of the Flamecrest Debt |
| 1.11 | "the Heron Net Worth" | The sum of US$6,000,000 approximately |
| 1.12 | "Interest" | Interest at the Interest Rate accruing from the respective dates from which Interest is payable under the Cho/Liner Contract the Ban Contract the Flamecrest Contract and the Wolfensberger Contract until payment by Mr Heron of the amounts due under the Cho/Liner Contract the Ban Contract the Flamecrest Contract and the Wolfensberger Contract respectively |
| 1.13 | "the Interest Rate" | 8% per annum |
| 1.14 | "the Cho/Liner Contract" | An agreement in writing dated 18th July 2000 and made between Hsin-Ming Chuo and Mr Liner (1) and Mr Heron (2) |
| 1.15 | "the Cho/Liner Debt" | US$1,980,000,000 payable pursuant to the Cho/Liner Contract by Mr Heron together with Interest thereon from 18th July 2001 |
| 1.16 | "the Liner Petition" | A bankruptcy petition to be issued by Mr Liner against Mr Heron in the High Court of Justice, Chancery Division, In Bankruptcy, for payment by Mr Heron of the Cho/Liner Debt |
| 1.17 | "the Parties" | The parties to this agreement |
| 1.18 | "the Payment Date" | The 24th day of January 2002 |
| 1.19 | "the Settlement Sum" | Seventy percent of the liquidated value of the Heron Net Worth |

| | | |
|---|---|---|
| 1.20 | "the Statutory Demands" | The Statutory Demands issued against Mr Heron by the Creditors in respect of the Cho/Liner Debt the Ban Debt the Flamecrest Debt and the Wolfensberger Debt |
| 1.21 | "the Wolfensberger Contract" | An agreement in writing dated 15th April 1999 made between Mr Heron (1) and Anthony Stephen Feldman Gabriel Frances MacEnroe and Alexander Pladott, the Trustees of the Balz Rudolf Wolfensberger Discretionary Trust (2) |
| 1.22 | "the Wolfensberger Debt" | US$110,000,000 payable pursuant to the Wolfensberger Contract by Mr Heron together with Interest thereon from 15th April 2000 |
| 1.23 | "the Wolfensberger Petition" | A bankruptcy petition to be issued by Wolfensberger against Mr Heron in the High Court of Justice, Chancery Division, In Bankruptcy, for payment by Mr Heron of the Wolfensberger Debt |

## 2. Interpretation

2.1 References to a Clause where the context so admits are to a Clause of this Agreement

2.2 The clause and paragraph headings in this Agreement are for ease of reference only and are not to be taken into account in the interpretation of the clause or paragraph to which they refer

2.3 Words importing the singular meaning where the context so admits include the plural meaning and vice versa

2.4 Words of one gender include both other genders and words denoting natural persons include corporations and firms and all such words are to be construed interchangeably in that manner



2.5   Words denoting an obligation on a party to do any act matter or thing include an obligation to procure that it be done and words placing a party under a restriction include an obligation not to permit infringement of the restriction

3.    **Recitals**

3.1   Alexander Pladott and Anthony Stephen Feldman are the present Trustees of the Flamecrest Enterprises Limited Trust

3.2   Alexander Pladott and Anthony Stephen Feldman are the present Trustees of the Balz Rudolf Wolfensberger Discretionary Trust

3.3   Mr Heron is indebted to Mr Liner for the Cho/Liner Debt

3.4   Mr Heron is indebted to Mr Ban for the Ban Debt

3.5   Mr Heron is indebted to Flamecrest for the Flamecrest Debt

3.6   Mr Heron is indebted to Wolfensberger for the Wolfensberger Debt

3.7   The Parties have agreed to compromise and settle the amounts due respectively to the Creditors on the terms and conditions hereinafter appearing

4.    **Mr Heron's Obligations**

4.1   On or before the Payment Date Mr Heron shall remit or cause to be remitted to the Clients Account the Settlement Sum with a value date being on or before the Payment Date and in respect of this sub-clause time shall be of the essence of this agreement

4.2   On or before the 1st February 2002 Mr Heron shall provide the Financial Statement of the Heron Net Worth and certified copies of the sale notes evidencing the liquidated amount(s) thereof to the Creditors' Solicitors and in respect of this sub-clause time shall be of the essence of this agreement

4.3   Forthwith upon the signing of this agreement Mr Heron shall sign Consent Orders in the forms annexed hereto dismissing his applications to the Court to set aside the Statutory Demands

4.4   If and when served by the Creditors' Solicitors with any or all of the Liner Petition the Ban Petition the Flamecrest Petition and the Wolfensberger Petition Mr Heron will not on any grounds whatsoever oppose the making by the Court of a Bankruptcy Order against him and will not appeal the same

## 5.   Enforcement of the Contracts

If actual assets and/or liabilities of Mr Heron as at 15th January 2002 including any assets in the names of or under the control of nominees agents or servants increase Mr Heron's actual net worth after taking into consideration only those liabilities listed on the Financial Statement are in excess of the amount of the Heron Net Worth or are not listed in the Financial Statement then (but not otherwise) the amounts due under the Cho/Liner Debt the Ban Debt the Flamecrest Debt and the Wolfensberger Debt shall immediately become due and payable credit being given by the Creditors for the Settlement Sum (if received)

## 6.   Full and Final Settlement

Provided that pursuant to the terms of this agreement the Settlement Sum is paid by Mr Heron on or before the Payment Date and the Financial Statement is delivered on or before 1st February 2002 then (but not otherwise) and provided further that the actual net worth of Mr Heron as at 15th January 2002 does not exceed the net worth of Mr Heron as disclosed in the Financial Statement and there are no assets of Mr Heron in his name or in the names of or under the control of his nominees agents or servants not listed in the Financial Statement the Settlement Sum shall be in full and final settlement and extinction of the Cho/Liner Debt the Ban Debt the Flamecrest Debt and the Wolfensberger Debt

## 7.   Confidentiality

7.1   Each of the Parties to this Agreement shall at all times use its best endeavours to keep confidential (and to procure that its respective employees and agents shall keep confidential) any information which it or they may acquire in relation to the terms of this Agreement and shall not use or disclose such information except with

the consent of the other party to this Agreement or in accordance with the Order of a Court of competent jurisdiction

7.2   The Parties to this Agreement shall procure that the officers employees and agents of each of them observe a similar obligation of confidence in favour of the Parties to this Agreement

7.3   The obligations of each of the Parties contained in clause 7.1 shall continue without limit in point of time but shall cease to apply to any information coming into the public domain otherwise than by breach by any such party of its said obligations Provided that nothing contained in this clause 7 shall prevent any party from disclosing any such information to the extent required in or in connection with legal proceedings arising out of this Agreement

7.4   For the purposes of this clause 7 the expression "party" shall include the subsidiary companies of any party and any other company controlled by that party and the employees or agents of that party and of such subsidiary or controlled companies

7.5   This clause 7 shall survive expiry or termination of this Agreement

8.    **Miscellaneous Provisions**

8.1   Whole agreement
      This Agreement contains the whole agreement between the Parties and supersedes any prior written or oral agreement between them relating to it and the Parties confirm that they have not entered into this Agreement on the basis of any representations that are not expressly incorporated in it

8.2   Discretion
      No decision exercise of discretion judgment opinion or approval of any matter mentioned in this Agreement or arising from it shall be deemed to have been made by the Parties except if in writing

8.3   No modification
      This Agreement may not be modified except by an instrument in writing signed by all of the Parties or their duly authorised representatives

8.4   Force and effect

This Agreement shall be binding upon the Parties to this Agreement and their respective successors and permitted assigns Provided that none of the Parties to this Agreement shall be entitled to assign this Agreement or any of its rights and obligations under this Agreement except as may be otherwise approved in writing by the other parties to this Agreement and on terms that the transferee shall covenant with the other parties to perform all the obligations of the transferor under this Agreement

8.5  No waiver

No exercise or failure to exercise or delay in exercising any right power or remedy vested in any party under or pursuant to this Agreement shall constitute a waiver by that party of that or any other right power or remedy

8.6  Publicity

No party shall be entitled to make or permit or authorise the making of any press release or other public statement or disclosure concerning this Agreement or any of the transactions contemplated in it without the prior written consent of the other party

8.7  Governing law

This Agreement shall be governed by the law of England and Wales in every particular including formation and interpretation and shall be deemed to have been made within England and Wales and the Parties agree to submit to the exclusive jurisdiction of the Courts of England and Wales

AS WITNESS the hands of LARRY EWERS in exercise of a Power of Attorney under the hand of the said HOWARD EUGENE LINER dated the 11th day of January 2002 and of the said ANTHONY STEPHEN FELDMAN as Solicitor and Agent for the said AH PING BAN and of the other parties hereto the day and year first before written

SIGNED by the above named LARRY EWERS) HOWARD EUGENE LINER by his Attorney as the Attorney and in the name of the above  ) *Larry Ewers* named HOWARD EUGENE LINER in the presence of:

4227 SAN FELIPE, No. SF25
Houston, Texas 77027

SIGNED by the said **ALEXANDER** ) *[signature]*
**PLADOTT** in the presence of )

*[signature]*
AS ABOVE

SIGNED by the said **ANTHONY** ) *[signature]*
**STEPHEN FELDMAN** in the presence of )

*[signature]*
AS ABOVE

SIGNED by the said **CHRISTOPHER** ) *[signature]*
**PATRICK HERON** in the presence of )

*[signature]*
AS ABOVE