## CERTIFICATE - ATTESTATION

The undersigned authority has the honour to certify, in conformity with article 6 of the Convention
L'autorité soussignée a l'honneur d'attester conformément à l'article 6 de ladite Convention.

| | |
|---|---|
| **Your Reference:** 04 10024RWZ | **Our Reference:** SFP 2005-7139 |
| 1) that the document has been served* the (date) | **TUESDAY 4 OCTOBER 2005** |
| que le demande a été exécutée*    le (date) | |
| -at (place, street, number) | **HINDON COURT, 104 WILTON ROAD, LONDON, SW1V 1DU** |
| -a (localité, rue, numero) | |

- in one of the following methods authorised by article 5:
-dans une des formes suivantes prévues à l'article 5:

**X**   a) in accordance with the provisions of sub-paragraph (a) of the first paragraph of article 5 of the convention*
selon les formes légales (article 5, alinéa premier, lettre a)*

b) in accordance with the following particular method*:
selon la forme particulière suivante*:

c) by delivery to the addressee, who accepted it voluntarily*
par remise simple*

The documents referred to in the request have been delivered to:
Les documents mentionnés dans la demande ont été remis à:

| | |
|---|---|
| - (identity and description of person) | **CHRISTOPHER PATRICK HERON** |
| - (identité et qualité de la personne) | |
| - relationship to the addressee (family, business or other): | **IN PERSON** |
| - liens de parenté, de subordination ou autres, avec le desinataire de l'acts: | |

~~2) that the document has not been served, by reason of the following facts*:~~
~~que la demande n'a pas été exécutée, en raison des faits suivants*:~~

**In conformity with the second paragraph of article 12 of the Convention, the applicant is requested to pay the expenses details in the attached statement***
Conformément à l'article 12, alinéa 2 de ladite Convention, le requerant est prié de payer ou de rembourser les frais dont le détail figure au mémoire ci-joint*

**Annexes** - annexes

**Documents returned**
Pièces renvoyées

...........................................

...........................................

...........................................

**Done at:**   London
fait à

The:   **19 October 2005**

**Signature and/or stamp**
Signature et/ou cachet

19 OCT 2005

*In appropriate cases, documents establishing the service:
*Le cas échéant, la pièce justificative de l'exécution:

Sworn on behalf of the Claimant
Deponent: A Looker
1st Affidavit of Deponent
Exhibits: "AL1"
Sworn: 4TH oCTOBER 2005

IN THE UNITED STATES DISTRICT COURT  
DISTRICT OF MASSACHUSETTS (BOSTON)  
BETWEEN:

Case No: 04 10024RWZ

**LARRY EWERS**

Plaintiff

- and -

**CHRISTOPHER PATRICK HERON,**
**CORPORATION OF THE BANKHOUSE, INC.,**
**SOCIETE BANKHOUSE, II,**

Defendants

## EXHIBIT

This is the exhibit marked "AL1"
as referred to in the first affidavit of
**Anthony Looker**

Sworn this 4th day of October 2005
Before me,

Officer of the Court, appointed by the Judge under
Section 87 of the County Courts Acts 1959, to take affidavits.

AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

District of   Massachusetts (Boston)

Larry Ewers,
    Plaintiff

**SUMMONS IN A CIVIL CASE**

V.

Christopher Patrick Heron,
Corporation of The Bankhouse, Inc.,
Societe Bankhouse, and
James F. Pomeroy, II,
    Defendants

CASE NUMBER:

**04 10024 RWZ**

TO: (Name and address of Defendant)

Christopher Patrick Heron
Hindon Court
Apartment 4
104 Wilton Road
London
SW1 V1DU

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

Alan M. Spiro, Esq.
Edwards & Angell, LLP
101 Federal Street
Boston, Massachusetts 02110
USA

an answer to the complaint which is served on you with this summons, within ____20____ days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

CLERK

(By) DEPUTY CLERK

DATE   1-30-04

≈AO 440 (Rev. 8/01) Summons in a Civil Action

| RETURN OF SERVICE | |
|---|---|
| Service of the Summons and complaint was made by me[1] | DATE |
| NAME OF SERVER (PRINT) | TITLE |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant. Place where served: _____
_____

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

  Name of person with whom the summons and complaint were left: _____

☐ Returned unexecuted: _____
_____
_____

☐ Other (specify): _____
_____
_____

| STATEMENT OF SERVICE FEES | | |
|---|---|---|
| TRAVEL | SERVICES | TOTAL |

**DECLARATION OF SERVER**

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____    _____
              Date                         *Signature of Server*

                                       _____
                                       *Address of Server*

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LARRY EWERS,<br><br>   Plaintiff,<br><br>v.<br><br>CHRISTOPHER PATRICK HERON,<br>CORPORATION OF THE BANKHOUSE, INC.,<br>SOCIETE BANKHOUSE, and JAMES F. POMEROY, II,<br><br>   Defendants. | CIVIL ACTION<br>NO.<br><br>04-10024RWZ |

## COMPLAINT

### Nature of the Action

1.     This case arises out of a trans-national investment fraud resulting in a debt, admitted in signed writings, in the principal amount of $1,980,000,000.

### Parties

2.     Plaintiff Larry Ewers ("Ewers") is a U.S. citizen residing in Corpus Christi, Texas.

3.     Defendant Christopher Patrick Heron ("Heron") is, on information and belief, an individual citizen of Ireland, who resides at 21 Dale House, Boundary Road, London, England.

4.     Defendant Corporation of the BankHouse, Inc. ("COB") is, on information and belief, a corporation incorporated and existing under the laws of Delaware, with a principal place of business at 30 Rowe's Wharf, Boston, Massachusetts.

5. Defendant Societe BankHouse ("Societe") is, on information and belief, a merchant banking entity with its principal place of business at 30 Rowe's Wharf, Boston, Massachusetts.

6. Defendant James F. Pomeroy, II ("Pomeroy") is, on information and belief, an individual who resides at 11 Meadow Haven Drive, Mashpee, Massachusetts. On information and belief, Pomeroy is the principal owner and chief executive officer of both COB and Societe.

## Jurisdiction and Venue

7. This Court has jurisdiction over this action pursuant to 18 U.S.C. § 1332 because it is an action between citizens of different states and nations and the amount in controversy exceeds the value of $75,000, exclusive of interest and costs.

8. Venue in this district is proper pursuant to 28 U.S.C. § 1391 (a) (2).

## Facts

9. On information and belief, Heron is a sophisticated con artist who represents to investors that he will generate substantial profits from trans-national trading in debt instruments of large denomination. On information and belief, Heron has defrauded numerous individuals.

10. On January 17, 2002, Heron entered into a Settlement Agreement with four such defrauded creditors, including Howard Eugene Liner ("Liner") (the "Heron Settlement Agreement.")

11. In the Heron Settlement Agreement, Heron acknowledged his debt to Liner in the principal amount of $1,980,000,000.

12. Also in the Heron Settlement Agreement, Heron represented his net worth to be approximately $6,000,000.00. Heron agreed to liquidate this net worth, and to pay the creditors seventy (70%) percent of the liquidated value of his net worth on or before January 24, 2002.

13. In addition, Heron agreed to provide a financial statement "evidencing the amount of the Heron Net Worth as at 15th January 2002 containing full and precise particulars of Mr. Heron's assets and liabilities supported by documents evidencing the same and prepared in accordance with generally accepted accounting principles."

14. The "financial statement" tendered by Heron stated that Heron's net worth consisted entirely of his ownership interest in what was eventually identified as Syndicate 150, an account Heron claimed to be under the exclusive management of COB, an entity controlled and directed by Pomeroy.

15. On January 29, 2002, Heron wrote to the then solicitor for the creditors: "The schedule of assets will be contained in my financial statement, that schedule should be furnished today and include an estimate of the further time needed to liquidate the assets. I will not know the nature of the assets until I receive the schedule. The assets are under management of a third party with complete discretion with the proviso that the capital is not to be depleted."

16. The "third party" referred to by Heron in this correspondence was COB, an entity with its principal place of business in Boston, Massachusetts, which at all times material hereto was directed and controlled by Pomeroy, a citizen of Massachusetts.

17. On January 31, 2002, Pomeroy, the President of COB, replied to Heron. Pomeroy attached an "Interim Review" to his letter and cautioned that the report "states

value for only the remaining Participation Interests in the COB Syndicate 150. It does not value current or accrued coupons, partnership interests, rights or attachments of interests in underlying transactions." Heron's "Interim Review" stated: "Effective 15 January 2002, the syndicate holds remaining participation amounts of USD 1,814,158.25 in accordance with our internal cash flow detail for Syndicate 150. These participation amounts take the form of corporate note obligations exclusive of current and/or accrued coupons, rights or attachments in underlying transaction interests." No value was provided for the excluded items, and they were not otherwise described.

18. In the same January 31, 2002 correspondence, Pomeroy reported that: "We are negotiating with the South African partnerships at your [Heron's] direction, the sale of the current participation amounts in Syndicate 150. This group valued the potential purchase of Syndicate 150 remaining interests at approximately USD $4.48 Million during our last working session."

19. On his financial statement of February 1, 2002, Heron described his asset as "Corporate note obligations held through Syndicate 150 Societe BankHouse (net of any outstanding liabilities and charges) Current Sale Value $4,480,000 USD.... 70% of the net balance above equates to $3,135,000."

20. Heron made repeated fraudulent promises to pay the 70% of his net worth to his creditors, but failed ever to do so and, on information and belief, never had any intention to do so.

21. No other information concerning Syndicate 150 or the assets held in that name has ever been furnished by COB, Societe or Pomeroy. On information and belief,

Syndicate 150 has never been liquidated. No funds have been released from Pomeroy or Pomeroy-controlled entities to date.

22. Pursuant to an Exclusive Power of Attorney dated January 11, 2002, Ewers became and remains the sole and exclusive attorney-in-fact for Liner with respect to, among other matters, all rights of Liner under the Heron Settlement Agreement.

23. Based on an application dated March 3, 2002, Heron was adjudged bankrupt in the United Kingdom on June 18, 2002. However, Ewers is informed and believes that there is no "automatic stay" of actions against such persons, and that no reciprocity applies between the United States and United Kingdom courts. Therefore, there is no bar to maintaining the present action.

24. On his List of Creditors in the United Kingdom proceedings, Heron listed the Liner debt, for which Ewers is attorney-in-fact, as "U.S. $ 1.980" Billion Dollars, thereby acknowledging and admitting the debt that is the subject of this lawsuit.

25. On his Schedule of Assets in the United Kingdom proceedings, Heron listed as his only significant asset: "Private Investment Syndicate held and managed on a full discretionary basis by Corporation of the Bankhouse, Incorporated, 30 Rowes Wharf, Boston, Mass. U.S.A."

26. On information and belief, Heron's representation that his investment in Syndicate 150 was his only significant asset was false and fraudulent. By way of examples only, shortly after he made such representation, on May 3, 2002, Heron communicated with Boston attorney Robert Masud concerning a "Letter of Guarantee" in the amount of $20 million dollars, of which, Heron represented, "I am to be the First Beneficiary of the instrument...." On February 27, 2003, Heron executed an Affidavit

stating "I ... hereby confirm under penalty of perjury that funds are readily available for the completion of the transaction per the attached [Letter of Intent], being an Intent to Purchase Bank Guarantee in the amount of $200,000,000. On March 11, 2003, Heron transmitted a letter of "intent to purchase ... Bank Guarantees ... Amount of $10 Billion USD, First Tranche $100 Million USD." On information and belief, Heron has continued substantial investment activities, while at the same time falsely and fraudulently claiming that he has no liquid assets.

27.     On information and belief, Heron maintains millions of dollars of funds in accounts which he has claimed to be "outside the jurisdiction" of the United Kingdom Bankruptcy Court and "out of reach" of creditors.

28.     On April 3, 2003, Heron was charged with contempt in the United Kingdom proceedings and incarcerated for 60 days.

29.     On July 8, 2003, Ewers' representative requested Pomeroy in writing to identify the Syndicate 150 assets and to voluntarily produce the relevant documents. Pomeroy never responded.

30.     COB, Societe and BankHouse have been named as defendants in a number of related lawsuits filed in the United States District Court for the District of Massachusetts, including, without limitation, International Strategies Group, Ltd. v. Corporation of the BankHouse, Inc., Societe BankHouse and James F. Pomeroy, II, Civil Action No. 02-10532-RWZ, and St. Frederikslund Holding A/S v. SB Global, Inc., Societe BankHouse, James F. Pomeroy, II, and Corporation of the BankHouse, Inc., Civil Action No. 01-11968-RWZ. Each of these cases alleged a pattern of fraud against investors.

## COUNT I
### (Tortious Interference with Contract)

31. Ewers repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 30 as though fully set forth herein.

32. Defendants were in full and absolute possession and control of Syndicate 150 and the assets held in the name of or for the benefit of Syndicate 150, all for the benefit of Heron, the true owner of the Syndicate 150 assets.

33. Defendants owed Heron a fiduciary duty to account for and deliver the Syndicate 150 assets to Heron.

34. Defendants knew of the existence and terms of the Heron Settlement Agreement and Heron's obligations thereunder.

35. Defendants intentionally and wrongfully interfered with the consummation of the Heron Settlement Agreement by refusing to account for (or even minimally to describe) the Syndicate 150 assets, by refusing to return control of those assets, and by refusing to liquidate the assets and deliver the proceeds, all in breach of their fiduciary obligations.

36. Defendants' tortious interference with the Heron Settlement Agreement has proximately caused actual damages to Ewers in the amount of his proportionate share of the value of the Syndicate 150 assets. On information and belief such damages exceed Three Million ($3,000,000.00) Dollars.

37. Defendants' actions were wrongful, willful and malicious, and/or were undertaken with reckless disregard for the rights of Ewers.

## COUNT II
### (Fraud and Conspiracy to Commit Fraud)

38. Ewers repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 37 as though fully set forth herein.

39. In the alternative, Pomeroy and Heron entered into a conspiracy to fraudulently conceal and preserve for their benefit the assets of Syndicate 150 from Heron's creditors, including Ewers.

40. In furtherance of the conspiracy, Heron misrepresented Pomeroy's willingness to perform his fiduciary duties and identify, account for and liquidate Syndicate 150 assets.

41. In furtherance of the conspiracy, Pomeroy, COB and Societe falsely represented that Syndicate 150 was being liquidated by a private sale to the "South Africans."

42. In furtherance of the conspiracy, Heron, Pomeroy and related entities continue to act in concert to conceal Syndicate 150 assets and evade their obligations.

43. Defendants intended for Ewers to rely on their false representations.

44. Ewers reasonably relied upon Defendants' false representations.

45. The fraud and conspiracy to commit fraud of Defendants has proximately caused damage to Ewers.

46. The actions of the Defendants were undertaken intentionally, willfully and with reckless disregard for Ewers' rights, entitling Ewers to recover punitive damages.

### COUNT III
### Constructive Trust

47. Ewers repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 46 as though fully set forth herein.

48. If the Defendants receive any benefit from assets transferred from Heron, Defendants will be unjustly enriched.

49. A constructive trust in favor of Ewers should be imposed upon any assets received by Defendants from Heron.

### COUNT IV
### (Reach and Apply)

50. Ewers repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 49 as though fully set forth herein.

51. Heron transferred assets to the Defendants without consideration, and with the intent to hinder, delay and defraud creditors, including Ewers.

### COUNT V
### (G.L. c. 93A)

52. Ewers repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 51 as though fully set forth herein.

53. Defendants' conduct constituted fraudulent, unfair and deceptive practices in violation of G.L. c. 93A § 2.

54. Defendants' conduct took place in trade or commerce.

55. Ewers is entitled to double or treble damages pursuant to G.L. c. 93A § 11, together with his costs including attorneys fees.

WHEREFORE, Plaintiff-Intervenor Ewers prays that this Court:

_428232_1/

1) Enter judgment for Ewers against each defendant on Counts I and II of the Complaint;

2) On Count III of the Complaint, impose a constructive trust on behalf of Ewers on any assets held in the name of or for the benefit of Syndicate 150;

3) On Count IV of the Complaint, temporarily and, after hearing, permanently enjoin all defendants from using, selling, conveying, transferring, assigning, pledging, encumbering, hypothecating or otherwise disposing of any funds or assets held or obtained by them, directly or indirectly from Heron, for the benefit of Syndicate 150;

4) Award pre- and post-judgment interest to Ewers;

5) Award attorneys fees and costs of court to Ewers;

6) Provide such other and further relief to which Ewers may show himself to be justly entitled.

### JURY DEMAND

Plaintiff-Intervenor demands a trial by jury on all issues so triable.

LARRY EWERS

By his attorneys,

Alan M. Spiro  BBO #475650
EDWARDS & ANGELL, LLP
101 Federal Street
Boston, Massachusetts 02110
(617) 439-4444

Dated: January 5, 2004



