CAUSE NO. 2003-33307

FILED
IN CLERKS OFFICE

2006 MAY 22  P 3: 21

U.S. DISTRICT COURT
DISTRICT OF MASS.

| | | |
|---|---|---|
| E.P.D. MANAGEMENT COMPANY | § | IN THE DISTRICT COURT OF |
| L.L.C. AND LARRY EWERS, | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | |
| | § | |
| INTERNATIONAL CHILDREN'S | § | HARRIS COUNTY, TEXAS |
| FUND-ROKHA PARAKEY, INC., | § | |
| Intervenor, | § | |
| | § | |
| and | § | |
| | § | |
| HOWARD EUGENE LINER, | § | |
| Defendant. | § | 151ST JUDICIAL DISTRICT |

## THIRD AMENDED PETITION IN INTERVENTION

Intervenor, International Children's Fund-Rokha Parakey, Inc., files this petition in intervention as a party-plaintiff.

### A. Parties

1.     International Children's Fund-Rokha Parakey, Inc. ("ICF") is a Texas non-profit organization formed for the purpose of providing a camping experience to underprivileged children.

2.     Plaintiff, EPD Management Company, L.L.C., ("EPD"), is a Texas limited liability company with its principal place of business located in Corpus Christi, Nueces County, Texas. EPD has already appeared in this case and may be served through its counsel of record.

3.     Plaintiff, Larry Ewers is an individual resident in Corpus Christi, Nueces County, Texas. Mr. Ewers has already appeared in this case and may be served through his counsel of record.

4.     Defendant, Howard Eugene Liner is an individual resident in Rosenberg, Fort Bend County, Texas. Mr. Liner has already made an appearance in this case and may be served

through his counsel of record.

## B. Background

5.      On June 13, 2003, Plaintiffs brought this lawsuit against Defendant for breach of contract, declaratory judgment, and attorneys' fees. On October 13, 2005, the Defendant counterclaimed for breach of contract, fraud, declaratory judgment, temporary restraining order and temporary injunction, and attorneys' fees. All claims of all parties find their genesis in an investment with a man named Christopher Heron, who is a resident in the United Kingdom.

6.      International Children's Fund-Rokha Parakey, Inc. is the real party of interest to the investment with and subsequent claim against Christopher Heron as outlined in the Plaintiff's Original Petition and Defendant's First Amended Answer and Counterclaim. At one point in time, Defendant and Counter-Plaintiff Mr. Liner was a vice president and director of ICF. In that capacity, he entered into, on behalf of ICF, a profit-sharing agreement with Alex Cho on May 9, 2000. Mr. Cho provided $220,000,000.00 in investment capital.

7.      Also, on May 9, 2000, Mr. Liner assigned all of his interest in the profit-sharing agreement to ICF. (See Exhibit "A"). On May 10, 2000, ICF assigned 50% of the proceeds of the deal back to Mr. Liner. (See Exhibit "B"). On July 18, 2000, Mr. Liner entered into an agreement to invest the funds from the profit-sharing agreement with Mr. Heron.

8.      On November 9, 2000, Mr. Liner allegedly signed a fee agreement with Larry Ewers as manager for EPD agreeing to pay approximately $19 million to EPD out of Mr. Liner's share of the profit-sharing agreement.

9.      Although the invested funds enjoyed an outstanding increase, Mr. Heron breached his contract with the Liner/ICF group by refusing to pay any of the money. Litigation was

2

started against Mr. Heron in the United Kingdom. Mr. Heron entered bankruptcy in the U.K. On January 17, 2002, Mr. Heron signed a settlement agreement for all outstanding bankruptcy claims with Mr. Cho, Mr. Liner, and other claimants. Mr. Ewers ostensibly signed the agreement on behalf of Mr. Liner. Mr. Heron breached this agreement as well.

10.     In May of 2002, the Plaintiffs Ewers and EPD allegedly entered into a compensation agreement with the Defendant Liner. This apparently superceded the November 9, 2000 agreement. Under that agreement, EPD agreed to work to collect the claim against Heron. Under the terms of the agreement, EPD was to receive 50% of the sums that Liner received from the bankruptcy. ICF is not a signatory to that agreement. At the time he signed the agreement, Mr. Ewers was aware that Mr. Liner only had the right to 50% of the proceeds. He knew that Mr. Liner had transferred 100% ownership to ICF.

11.     At the time the Plaintiffs allegedly entered into the compensation agreement increasing his interest to 50% of the entire claim, he knew that he had already found assets of Heron in excess of $1 billion. He also knew that Mr. Ewers had signed the settlement agreement with Heron on Liner's behalf claiming he had a power of attorney from Liner. None of these facts were told to Mr. Liner.

12.     On May 3, 2002, the Plaintiffs Ewers and EPD allegedly entered into a non-disclosure agreement with Mr. Liner in which both parties agreed not to disclose confidential information. ICF was not a party to that agreement.

13.     The Plaintiffs Ewers and EPD filed this action against Mr. Liner in an attempt to gain 100% of the Heron claim. The Plaintiffs claim that Mr. Liner breached the compensation agreement by not reimbursing the Plaintiffs their expenses. The Plaintiffs somehow believe that

3

a failure to reimburse expenses can somehow divest the Defendant and its assigns of their interest in a claim that predates the contract.

14.     The Plaintiffs also allege that in defending himself of criminal charges, Mr. Liner told others about the fact that he had a claim against Christopher Heron that successfully ended in a settlement agreement. Plaintiffs argue that this is somehow the release of confidential information which somehow in turn now entitles them to 100% of the claim against Heron.

15.     On January 5, 2004, Mr. Ewers filed a suit in Boston, Massachusetts in his own name against Mr. Heron and others to which the Defendants defaulted in face of a proposed judgment exceeding $3 billion in *Civil Action No. 04-CV-10024; Ewers v. Heron, et al., In the United State District Court for the District of Massachusetts (Boston)*. Mr. Ewers neglected to inform Mr. Liner and ICF. The federal judge in that case expressly awaits a decision in this court as to who holds what interest in the claims against Mr. Heron. (See memorandum attached as Exhibit "C").

16.     In short, the Plaintiffs EPD and Mr. Ewers started as a broker with a very small percentage. Through deception, self-serving manipulation, and exploitation of Mr. Liner's misfortune, the Plaintiffs are now seeking to take over 100% of a claim that was never initially theirs.

17.     All of the above facts are based upon current information and belief.

## C. Declaratory Judgment

18.     The Plaintiffs have admitted that ICF owns an undivided interest in the $1.98 billion claim against Heron. See Plaintiffs' Motion to Strike Intervention filed on March 20, 2006 at p. 4. ICF seeks a declaratory judgment that ICF's share amounts to 50% of the $1.98

4

billion claim with the remaining 50% going to Mr. Liner and/or Mr. Ewers.

## D. Breach of Contract

19.     In November and December of 2001, the Plaintiff Mr. Ewers had meetings with

ICF directors Stan R. Smith and Larry Morris. At the meetings, Mr. Ewers expressly recognized

the fact that ICF owned half of the Liner/Heron claim. Mr. Ewers specifically asked that ICF

refrain from intervening into the U.K. litigation for the reason that he thought it would

complicate the issues and reflect negatively on the credibility of Mr. Liner. ICF agreed not to

intervene. ICF also agreed to help Mr. Ewers secure more than a 4% interest in the proceeds. In

exchange for ICF's agreement not to intervene and to support Mr. Ewers' interest, Mr. Ewers

agreed to protect ICF's interest by including ICF in any efforts to collect money, to keep ICF

informed of the progression of the claim, and to distribute ICF its rightful share of any proceeds.

20.     As an alternative claim, the Intervenor pleads a cause of action for breach of

contract. The Plaintiffs breached their agreement with ICF by hiding material facts from ICF, by

filing a lawsuit in Boston in the name of Mr. Ewers only, and by conspiring to deprive ICF of its

rightful share.

## E. Breach of Fiduciary Duty

21.     Under all the facts pled above, the Plaintiff Ewers owes a fiduciary duty to the

Defendant Liner and the Intervenor ICF as well. The Plaintiffs have breached that duty by their

various attempts to hide information from the Defendant and Intervenor and to secure all of the

proceeds for themselves. Intervenor seeks the remedy of disgorgement under Texas law. The

evidence will show that the Plaintiffs have openly plotted with others to take over the Liner/ICF

claim for themselves. Plaintiffs should be divested of all of their interest in the claims against

5

Heron, forfeiting those interests to the Intervenor.

22.    Intervenor pleads in the alternative that although it was not a signator to the power of attorney, the Defendant Liner entered into that agreement on behalf of both himself and ICF.

### F.  Detrimental Reliance

23.    The promises made by Mr. Ewers as outlined in Paragraph 19 also give rise to an alternative claim of detrimental reliance.  Plaintiffs made those promises with the intent that the Intervenor would rely upon them.  At the time it was reasonable for the Intervenor to rely on the Plaintiffs' promises.  The Intervenor relied on the promises to its detriment.

### G.  Clean Hands Doctrine

24.    As outlined above, the Plaintiffs come to this court with unclean hands.  Under the unclean hands doctrine, they are not entitled to any equitable relief.

### H.  Liquidation Clause

25.    The non-disclosure agreement contains a liquidated damage clause which purports to disgorge a violator of his entire interest.  Mr. Liner only owns 50% of the claim.  The other 50% is owned by ICF.

26.    The Plaintiffs claim that Mr. Liner violated the non-disclosure agreement by telling others that he had a successful claim against Mr. Heron.  This is not confidential information that he received from Mr. Ewers.  Every statement that the Plaintiffs allege that Mr. Liner made was either wrong or a rendition of information within the public domain.  Mr. Liner did not violate the agreement.

27.    If Mr. Liner violated the clause by outlining the Liner claim in defense of his

6

criminal indictment, then Mr. Ewers and EPD violated it as well when they filed the *Ewers v. Heron* suit in Boston. The evidence will show that Mr. Ewers disclosed confidential information to several other parties as well. The Plaintiffs should therefor forfeit their interest in the claims, leaving ICF as the sole owner of the claim.

28.     In the alternative, the liquidation clause is not enforceable under the facts pled by the Plaintiffs. In order to be effective, a liquidation clause must represent a reasonable estimate of the amount of actual damages caused by the breach. A jury must first find the amount of damages caused by the breach and it must then be shown that the liquidated damage clause accurately reflects that amount.

29.     Plaintiffs have alleged in the *Ewers v. Heron* case that the claims against Mr. Heron are worth $6 billion. The Plaintiffs seek to then wipe out a $3 billion interest because Mr. Liner allegedly told some people he had a successful claim against Mr. Heron. Such a ridiculous result would be in the nature of a penalty and therefore void under Texas law.

## I. Lack of Agency

30.     Intervenor, ICF was not a party to the non-disclosure agreement and therefore could not have violated it. Mr. Liner was terminated as vice president and director in June of 2001. Any disclosures that he may have made were not made in any capacity for ICF. The liquidated damage clause of the non-disclosure agreement has in no way been violated by ICF.

## J. Fraud

31.     The Plaintiffs Mr. Ewers and EPD induced Mr. Liner to enter into the compensation agreement by knowingly withholding material facts. The Plaintiffs knew that a settlement agreement was already in place and money already had been found before the

7

compensation agreement and power of attorney were signed. The Plaintiffs, as fiduciaries, were under an obligation to disclose this information. Mr. Liner justifiably relied on the Plaintiffs' misrepresentations and transferred 50% of his interest to the Plaintiffs. Insofar as that assignment may affect the Intervenor, the Intervenor seeks rescission.

32.    In the alternative, the Intervenor seeks damages in the amount of 50% of the Heron claims, as well as punitive damages.

## K. General Denial

33.    Intervenor also files this Intervention to defend against any claim for expenses claimed against Mr. Liner and/or ICF. Intervenor generally denies such a claim.

## L. Damages

34.    Intervenor seeks as damages against the Plaintiffs Ewers and EPD:

*    The loss of Heron's assets caused by the Ewers continued delay. This amount could exceed $6,000,000,000.00;

*    Attorneys' fees; and

*    Disgorgement of any interest the Plaintiffs may have on any portion of the claims against Heron.

## M. Rescission

35.    As an alternative remedy, the Intervenor seeks rescission of the compensation agreement and the three powers of attorney running from Mr. Liner to Mr. Ewers.

## N. Jury Demand

36.    Intervenor demands a jury trial and tenders the appropriate fee with this petition.

## O. Prayer

8

37.    For these reasons, Intervenor asks the court to render judgment against

Defendants in favor of Intervenor for all of his damages as outlined above, costs of suit, pre-

judgment interest, post-judgment interest, and for all other relief to which he may be entitled.

Respectfully submitted,

ROBERT D. GREEN & ASSOCIATES, P.C.

BY: _____

ROBERT D. GREEN
State Bar No. 08368025
440 Louisiana St., Ste. 1930
Houston, Texas 77002
(713) 654-9222 - Telephone
(713) 654-2155 - Telecopier

**ATTORNEY FOR INTERVENOR,
INTERNATIONAL CHILDREN'S FUND-
ROKHA PARAKEY, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been
forwarded to all known counsel of record via hand delivery, certified mail, return receipt
requested, or telecopier, in accordance with the Texas Rule of Civil Procedure, on this the
day of May 2006, as follows:

Kevin R. Michaels
Law Offices of Kevin R. Michaels, P.C.
11767 Katy Freeway, Suite 730
Houston, Texas 77079

Charles A. Sharman
Attorney at Law
Nine Greenway Plaza, Suite 3040
Houston, Texas 77046

Robert W. Painter
The Painter Law Firm, P.L.L.C.
5625 FM 1960 West, Suite 404
Houston, Texas 77069

_____

ROBERT D. GREEN

9

## ASSIGNMENT, CONVEYANCE
## AND BILL OF SALE

This ASSIGNMENT, CONVEYANCE and BILL OF SALE ("Conveyance") from HOWARD E. LINER (hereinafter referred to as "Grantor") to INTERNATIONAL CHILDREN'S FUND-ROHKA PARAKEY, INC. (hereinafter referred to as "Grantee"), was delivered and effective as of the 9TH day of May, 2000, ("Effective Date").

### WITNESSETH:

For the sum of Ten and No/100 Dollars ($10.00) cash, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by Grantors, Grantor does hereby ASSIGN, TRANSFER, AND CONVEY, subject to the provisions herein, and all matters effecting or describing, in whole or in part, unto Grantee, effective as of the Effective Date:

All of Grantor's right, title, and interest, including without limitation, all proceeds derived therefrom, in and to the following instruments:

That certain Profit Sharing Agreement dated May 9, 2000, by and between Howard E. Liner and Hsin-Ming Chuo "Alex Cho" individually and as the authorized signatory of Big Power Products Corporation.

All of the foregoing interests, rights, properties and estates identified hereinabove is referred to the "Contracts".

It is the intent of this Conveyance that Grantee shall own, after the Effective Date, the entirety of the interest owned by Grantor in the Contract as of the Effective Date, subject to all matters recited herein.

All of the terms, provisions, covenants, and agreements herein contained, shall extend to, and be binding upon, the parties hereto, and their respective successors and assigns.

If this Conveyance is executed in multiple counterparts, or by facsimile, each shall, for all purposes, be deemed to be an original, and all such counterparts together shall constitute but one and the same instrument. All such counterparts, if any, shall be identical.

**Page 1 of 2**



FROM : ICF RP                    FAX NO. :                    Dec. 16 2004 01:03PM P2

EXECUTED on the date set forth below in the acknowledgment, but effective for all purposes as of the Effective Date.

"GRANTOR"

HOWARD B. LINER

*H. E. Liner*

Howard B. Liner

STATE OF TEXAS          §
                        §
COUNTY OF HARRIS        §

This instrument was acknowledged before me on the 9th day of May, 2000, by Howard B. Liner.



CHRIS TILLERSON
MY COMMISSION EXPIRES
February 8, 2003

Notary Public In And For The
State Of Texas

Page 2 of 2

# PROCEEDS ASSIGNMENT AGREEMENT

This Proceeds Assignment Agreement ("Agreement") from INTERNATIONAL CHILDREN'S FUND-KOHKA PARAKEY, INC., a Texas non-profit corporation ("Assignor"), to HOWARD E. LINER, (Assignee"), delivered on and effective as of 10th day of May, 2000, ("Effective Date").

## W I T N E S S E T H:

1.     In and for the sum of TEN AND NO/100 DOLLARS ($10.00) cash and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by Assignor, Assignor does, with full corporate and legal authority, hereby irrevocably and unconditionally Assign, Transfer and Convey to Howard E. Liner an undivided Fifty Percent (50%) of the total gross profits and/or proceeds derived from those certain agreements that are attached hereto and made a part hereof as Exhibit "A" (hereinafter referred to as "Contracts").

2.     Said Proceeds shall be paid to the Assignee without protest, restriction, delay, impediment, cost, assessment, or fee, regardless of any variation, modification, conditions, or prerequisites which may be agreed upon or suggested by any party.  Notwithstanding the foregoing, it is agreed and understood that between Assignor and Assignee that each shall be required to execute all necessary and appropriate documents required by the person and/or entity disbursing said Proceeds which will effectuate disbursement of Proceeds to each party.

3.     Assignor agrees and warrants to Assignee that this Agreement shall be irrevocable and unconditional and shall be immediately effective for all purposes. Upon execution and delivery of same to the Assignee, Assignor further warrants and agrees that the payment of any proceeds based upon this Agreement shall be irrevocable and remain in effect until the completion of the referenced Contracts, including any and all renewals, and/or extensions.

4.     Proceeds shall be disbursed as they are received and shall be delivered directly to the Assignee at the bank coordinates which shall be provided to the Assignor in writing.

5.    This Agreement shall be, to the extent necessary or required, deposited and lodged, along with all documents relating to the Contracts with the appropriate parties, including without limitation, the person and/or entity disbursing proceeds from the Contracts.

6.    The Assignor and Assignee hereby agree to use their best efforts to amicably resolve any claims and/or controversies arising out of this Agreement; however, if said parties fail to amicably resolve any such claims and/or controversies, then the claiming party shall deliver to the other party a written notice identifying the basis of any such unresolved claim and/or controversy. If within thirty (30) days after receipt of such written notice of the basis of any such unresolved claim and/or controversy the matter is not resolved, the parties shall submit any such claim and/or controversy to binding, non-appealable arbitration pursuant to the rules of the American Arbitration Association. The three (3) member arbitration panel shall be established by each party appointing one (1) arbitrator within thirty (30) days from the date written notice of any unresolved claim or controversy is delivered. The two (2) appointed arbitrators shall then appoint a third arbitrator who shall act as the chairman of the arbitration panel. If the two (2) appointed arbitrators are unable to agree on a third arbitrator within forty-five (45) days from the date written notice of any unresolved claim or controversy is delivered, then the third arbitrator shall be appointed by the American Arbitration Association. The arbitration hearing shall be conducted at a mutually agreeable location in Houston, Harris County, Texas, and all costs of arbitration, including, without limitation, the prevailing party's reasonable attorney's fees shall be borne solely by the party against which the arbitration panel's award is rendered.

7.    All duly executed facsimile copies of this Agreement shall be deemed as an original, binding and fully enforceable. The parties hereby agree that this is the entire Agreement between the parties and that the Agreement embodies the entire agreement between the parties (superseding all prior agreements, arrangements and understandings relating to the subject matter hereof), and may be supplemented, altered, amended, modified or revoked by writing, signed by all parties hereto.

8.    The undersigned hereby warrants and attests that it has the lawful authority and legal capacity to enter into, make, execute, deliver, and perform pursuant to the terms of this Agreement.

9.    All the terms, provisions, covenants, and agreements herein contained shall extend to, and be binding upon the parties hereto, their respective successors and assigns.

Case 1:04-cv-10024-RWZ    Document 63-2    Filed 05/22/2006    Page 14 of 27

**EXECUTED** on the date set forth below in the acknowledgment, but effective for all purposes as of the Effective Date.

                                        **INTERNATIONAL CHILDREN'S FUND-**
                                        **ROHKA PARAKEY, INC.**
                                        **("ASSIGNOR")**

                                        _____
                                        Stan R. Smith, President


**STATE OF TEXAS**            §

**COUNTY OF HARRIS**          §

This instrument was acknowledged before me on the 27th day of June 2000, by Stan R. Smith, President of International Children's Fund-Rohka Parakey, Inc.



CHRIS TILLERSON
MY COMMISSION EXPIRES
February 8, 2003

_____
Notary Public in and for the
State of Texas

## EXHIBIT "A"

Attached to and made a part of that certain Proceeds Assignment Agreement by and between INTERNATIONAL CHILDREN'S FUND-ROHKA PARAKEY, INC., a Texas non-profit corporation ("Assignor"), to HOWARD E. LINER, (Assignee"), delivered on and effective as of 10th day of May, 2000.

1.  Profit Sharing Agreement dated May 9th, 2000 by and between Howard E. Liner and Hain-Ming Chuo "Alex Cho" individually and as an authorized representative of Big Power Products Corporation, relating to $220,000,000.00 USD on deposit in the Bank of Taiwan, Taipei.

2.  Assignment, Conveyance And Bill of Sale dated May 9th, 2000 from Howard E. Liner to International Children's Fund-Rohka Parakey, Inc.

EXHIBIT "A"
PAGE 1

# PROFIT SHARING AGREEMENT

This Profit Sharing Agreement ("Agreement") is entered into on this the 9th day of May, 2000, by and between Howard E. Liner (hereinafter referred to as "Liner") and Hsin-Ming Chuo "Alex Cho", individually and as an authorized signatory for Big Power Products Corporation. (hereinafter referred to as "Principal").

**WHEREAS,** Liner has knowledge and experience in the implementation, execution, and management of high yield investment opportunities;

**WHEREAS,** Principal desires to provide certain assets that shall be committed by Liner to high yield investment opportunities;

**NOW THEREFORE,** in consideration for the promises and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Liner and Principal hereby agree as follows:

## 1.    Purpose.

Liner and Principal agree to mutually cooperate to commit the assets provided by the Principal to secure high yield investment opportunities, and to distribute the profits, if any, derived therefrom. Furthermore, it is understood and agreed between the parties, that this Agreement, along with the Non-Solicitation Letter, Letter of Intent And Authority, Indemnity Letter, and Disclaimer Letter by and between the Principal and parties designated therein (hereinafter collectively referred to as "Program Documents"), and the conduct of the parties in the performance of this Agreement and the Program Documents shall be one of mutual trust and confidence. The parties hereto shall use best efforts to achieve the purpose of this Agreement and the Program Documents through the lawful and ordinary course of conducting business as set forth herein.

## 2.    Term.

This Agreement shall be for an initial term of three (3) years beginning from the date of this Agreement. This Agreement can be either extended for additional renewal periods, or terminated earlier, upon the mutual written agreement of the Liner and Principal.

## 3.    Assets.

The assets to be committed to high yield investment opportunities under the terms of this Agreement shall be provided solely by Principal. All assets provided by Principal and committed to a high yield investment opportunity under the terms of this Agreement shall always remain the sole and exclusive property of Principal. In no event shall the assets provided by Principal hereunder ever be construed to be the property of the Joint Venture, or Liner.    However, the Principal

LINER'S INITIALS _____    Page 1 of 5    PRINCIPAL'S INITIALS _____

stipulates and agrees to place Liner as a co-signature, without rights of withdrawal, on all individual bank account(s) and on all corporate or entity account(s) Liner will be made an officer and director of said corporation or entity with full authorization to execute all contracts.

Principals shall provide the following assets:

Two Hundred Twenty Million United States Dollars ($220,000,000.00 USD), which assets are currently held, and shall remain, in the Principal's bank accounts, located in the Bank of Taiwan, Tiapei, Account Numbers: _____ & _____.

**4.    *Profits*.**

The gross profits derived from the utilization of the assets in high yield investment opportunities, with full disclosure to all parties, shall be shared equally, and shall be divided as follows:

Fifty Percent (50%) to Liner; and

Fifty Percent (50%) to Principal.

All payments will be made directly to the appropriate Trust Accounts of the law firm of Buckley, Mathews, White, & Howell, L.L.P., or its successors (the "Law Firm"), where this Agreement and individual bank coordinates of Liner and Principal will be lodged. The Law Firm shall oversee the disbursement of Profits, which shall be paid directly to the respective banking coordinates for Liner and Principal, as they are received. Notwithstanding the foregoing, it is agreed and understood between the parties that Liner and Principal will be required to execute all appropriate documents required by the Law Firm to effectuate the disbursement of said Profits.

**5.    *Non-Circumvention and Confidentiality*.**

Liner and Principal on behalf of their respective, officers, directors, managers, trustees, agents and/or employees, do hereby agree that under no circumstances, or eventuality, will they ever circumvent, directly or indirectly, the performance of this Agreement pertaining to the transactions contemplated herein. All transactions contemplated by this Agreement shall be by, through, and for the benefit of the Liner and Principal.

The Parties further agree to keep confidential all information disclosed, directly or indirectly, by either of the parties hereto during the performance of the obligations of this Agreement, including, without limitation, the identity of the funders, collateral holders, program managers, agencies, entities, or individuals with whom negotiations are conducted or contracts are entered into as contemplated in this Agreement. The confidentiality and non-circumvention provisions of this

Agreement shall be applicable to all phases of the transactions encompassed by this Agreement, with the covenants of this paragraph surviving the termination of this Agreement for a period of three (3) years from the termination date of this Agreement.

### 6. Cooperation of the Parties.

The Liner and Principal agree that neither party or representative thereof shall, under any circumstances, commit any act(s), or act(s) of negligence, that in any way hinders, delays, or otherwise impedes the parties activities, and/or their ability to conduct business under the terms of this Agreement and the Program Documents. Liner and Principal stipulate and agree that Liner is a direct beneficiary of the provisions contained in the Program Documents as if said Program Documents were specifically addressed to Liner. The parties shall do, or shall cause to be done, whatever is reasonable and necessary to facilitate and consummate the transactions contemplated herein, and/or to otherwise fulfill the terms of this Agreement and the Program Documents. The parties agree that in the event of a conflict between the provisions of this Agreement and the Program Documents that the provisions of this Agreement shall prevail as between Liner and Principal.

### 7. Arbitration.

The Liner and Principal hereby agree to use best efforts to amicably resolve any claims and/or controversies arising out of this Agreement; however, if said parties fail to amicably resolve any such claims and/or controversies, then the claiming party shall deliver to the other parties a written notice identifying the basis of any such unresolved claim and/or controversy. If within thirty (30) days after receipt of written notice of the basis of any unresolved claim and/or controversy the matter is not resolved, the parties shall submit any such claim and/or controversy to binding non-appealable arbitration pursuant to the rules of the American Arbitration Association. The three (3) member arbitration panel shall be established by each party appointing one (1) arbitrator within thirty (30) days from the date written notice of any unresolved claim or controversy is delivered. The two (2) appointed arbitrators shall then appoint a third arbitrator who shall act as the chairman of the arbitration panel. If the two (2) appointed arbitrators are unable to agree on a third arbitrator within forty five (45) days from the date written notice of any unresolved claim or controversy is delivered. Then the third arbitrator shall be appointed by the American Arbitration Association. The arbitration hearing shall be conducted at a mutually agreeable location in Houston, Harris County, Texas. All costs of the arbitration, including, without limitation, the prevailing party's reasonable attorney's fees shall be borne solely by the party against which the arbitration panel's award is rendered.

### 8. Notices.

All notices or other communications required under the terms of this Agreement shall be deemed to have been officially received when actually received by the addressee at the address set forth above, said receipt being evidenced by receipt verification from a overnight courier, by hand

LINER'S INITIALS _WLe_                    **Page 3 of 5**                    PRINCIPAL'S INITIALS _____

.FROM : ICF RP                    FAX NO. :                    Apr. 28 2006 03:47PM P2

Nov 18 01 12:38a        larry ewers                361 949-8258                p.8

delivery receipt, certified U.S. Mail/return receipt requested, or, if transmitted by telefacsimile or similar reproduced electronic transmission on the date such transmission is evidenced as delivered by the facsimile confirmation records. The parties may change the address by designating such change in writing to the other parties at least three (3) days in advance, and in the manner set forth above.

**9.    Governing Law.**

This Agreement, and the rights and obligations of the parties hereunder, shall be governed by, and interpreted, construed, and enforced in accordance with the substantive and procedural laws of the State of Texas, United States of America.

**10.    Facsimile.**

Signatures to this Agreement which are received by facsimile, or transmitted by facsimile, shall be deemed legally binding, enforceable, and admissible for all purposes necessary to enforce the terms of this Agreement.

**11.    Statement.**

The Liner and Principal stipulate, agree, confirm, and understand that the contemplated transaction herein is strictly one of private placement, and that it is not in conflict with the rules and regulations of the United States Securities Act of 1933, or related regulations, as amended, and does not involve the sale of securities. Said parties hereby declare and stipulate that they, and/or their employees, officers, trustees, directors or agents, are not licensed brokers, or governmental employees. Said parties also stipulate and agree that this Private Placement Transaction is exempt from the Securities Act, or Acts, as amended, of the United States, and have not relied upon these Acts in the negotiation and execution of this Agreement. Said parties stipulate and agree that this transaction is not intended for the general public, and that all materials, documents and information provided and utilized by said parties are for their private use only.

**12.    No Partnership/Taxes.**

This Agreement is expressly NOT a joint venture and nothing contained herein shall be deemed to create a partnership, association, or joint venture between the parties hereto. All the parties to this agreement agree to be responsible for their own taxes, duties, imposts, and levies or any kind which may become due in their country of domicile or any taxing jurisdiction, and to hold each other harmless in this regard.

**13.    Binding Effect.**

This Agreement shall be binding upon, and inure to the benefit of, the parties hereto, and their respective legal representatives, successors, and assigns.

LINER'S INITIALS ____        Page 4 of 5        PRINCIPAL'S INITIALS ____

## 14.    *Amendments.*

●      This Agreement may not be changed, modified, or amended unless in a writing executed by duly authorized representatives of all parties hereto, which specifically sets forth that the fact such writing is intended to serve as a change, modification, or amendment to this Agreement.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first written above, and is to be effective as of said date.

HOWARD E. LINER

"Liner"

By: _____
Howard E. Liner


HSIN-MING CHUO "ALEX CHO",
INDIVIDUALLY AND ON BEHALF
OF BIG POWER PRODUCTS CORPORATION

"Principal"

By: _____
Hsin-Ming Chuo "Alex Cho",
Individually and as General Manager
and Director


Page 5 of 5

## ASSIGNMENT, CONVEYANCE
## AND BILL OF SALE

This ASSIGNMENT, CONVEYANCE and BILL OF SALE ("Conveyance") from HOWARD E. LINER (hereinafter referred to as "Grantor") to INTERNATIONAL CHILDREN'S FUND-ROHKA PARAKEY, INC. (hereinafter referred to as "Grantee"), was delivered and effective as of the 9TH day of May, 2000, ("Effective Date").

### WITNESSETH:

For the sum of Ten and No/100 Dollars ($10.00) cash, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by Grantors, Grantor does hereby ASSIGN, TRANSFER, AND CONVEY, subject to the provisions herein, and all matters effecting or describing, in whole or in part, unto Grantee, effective as of the Effective Date:

All of Grantor's right, title, and interest, including without limitation, all proceeds derived therefrom, in and to the following instruments:

That certain Profit Sharing Agreement dated May 9, 2000, by and between Howard E. Liner and Hsin-Ming Chuo "Alex Cho" individually and as the authorized signatory of Big Power Products Corporation.

All of the foregoing interests, rights, properties and estates identified hereinabove is referred to the **"Contracts"**.

It is the intent of this Conveyance that Grantee shall own, after the Effective Date, the entirety of the interest owned by Grantor in the Contract as of the Effective Date, subject to all matters recited herein.

All of the terms, provisions, covenants, and agreements herein contained, shall extend to, and be binding upon, the parties hereto, and their respective successors and assigns.

If this Conveyance is executed in multiple counterparts, or by facsimile, each shall, for all purposes, be deemed to be an original, and all such counterparts together shall constitute but one and the same instrument. All such counterparts, if any, shall be identical.

FROM : ICF RP                     FAX NO. :                    Dec. 16 2004 01:03PM P2

EXECUTED on the date set forth below in the acknowledgment, but effective for all purposes as of the Effective Date.

"GRANTOR"

HOWARD E. LINER

_____
Howard E. Liner

STATE OF TEXAS       §
                     §
COUNTY OF HARRIS     §

This instrument was acknowledged before me on the 9th day of May, 2000, by Howard E. Liner.



_____
Notary Public In And For The
State Of Texas

Page 2 of 2

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

### CIVIL ACTION NO. 04-10024-RWZ

### LARRY EWERS

v.

### CHRISTOPHER PATRICK HERON, CORPORATION OF THE BANKHOUSE, INC., SOCIETE BANKHOUSE, and JAMES F. POMEROY, II

### MEMORANDUM OF DECISION

February 3, 2006

ZOBEL, D.J.

Howard Eugene Liner ("Liner") invested money with defendants Christopher

Heron ("Heron"), Corporation of the Bankhouse, Inc. ("COB") and James F. Pomeroy, II

("Pomeroy") who, together, allegedly swindled him of his entire investment.

Subsequently, Liner executed a Power of Attorney (the "POA") and Compensation

Agreement with plaintiff Larry Ewers ("Ewers") in exchange for Ewers' efforts to recoup

Liner's investment. Plaintiff then filed the instant suit allegedly on his own behalf

against the alleged swindlers for claims of (1) tortious interference with contract, (2)

fraud and conspiracy to commit fraud, (3) reach and apply, (4) constructive trust and (5)

unfair and deceptive business practices. Liner disputes the scope of plaintiff's

authority, and he and the other creditors moved to intervene as plaintiffs. The court

denied the motion for intervention, and the First Circuit affirmed the denial. See Ewers

v. Heron, 419 F.3d 1 (1st Cir. 2005). In the meantime, Liner, who is not a party to the



action, filed with the court an unofficial notice of litigation between himself and plaintiff regarding the validity and scope of authority of the POA in a separately filed case in Texas state court, E.P.D. Mgmt. Co., L.L.C. and Ewers v. Liner (2003-33307). The rulings on several pending motions follow:

1.    Decision to Stay and Administratively Close the Case

Whether the litigation in Texas will solidify or undermine plaintiff's standing in the instant case remains unclear. Accordingly, the court will stay and administratively close this case until the dispute regarding the force and effect of the POA pending in the Texas state court is resolved. Plaintiff shall advise this court every three months on the status of the Texas proceeding and file an immediate notice upon issuance of a decision in that case.

2.    Plaintiff's Motions for Entry of Final Judgment (Dockets #10, #13 and #39)

Plaintiff seeks entry of final judgment against defendants COB and Pomeroy for treble damages of the amount $4,480,000, under Chapter 93A of the Massachusetts General Laws, summing to $13,440,000, in total. Additionally, he seeks default judgment against defendant Heron in the amount of $1,980,000,000, trebled under Chapter 93A for total of $5,940,000,000.

Liner and the other would-be intervenors oppose these motions in an effort to ensure that any funds received by Ewers will be appropriately allocated among all of the swindled investors. In response, the court instructed the parties to draft a jointly acceptable form of final judgment that prohibited plaintiff from disbursing any funds

2

collected without providing prior notice to the other creditors and obtaining prior court approval. The parties have yet to do so.

Moreover, it is now clear that entry of final judgment before resolution of the Texas proceeding is premature. Ruling on the motions for entry final judgment is therefore deferred until a decision by the Texas court.

3.  Plaintiff's Motion for Attachment of Real Estate of Defendant Pomeroy (Docket #12)

As with the motions for entry of judgment, ruling on the Motion for Attachment is deferred until resolution of the Texas proceeding.

4.  Motion for Leave to Enter Appearance Pro Hac Vice (Docket #20)

Local counsel Charles P. Kazarian for the would-be intervenors moves for the appearance pro hac vice of attorney Thomas L. Kummer on behalf of the would-be intervenors. Because the underlying Motion to Intervene (Docket #22) was denied, and the court's denial was affirmed by the First Circuit Court of Appeals, the would-be intervenors are not parties to this case. The motion for leave to enter an appearance is thus denied as moot.

5.  Plaintiff's Motion to Strike Proposed Form of Final Judgment Submitted by Proposed Intervenors (Docket #38)

The parties and would-be intervenors continue to disagree about the appropriate form of final judgment to be entered. The Motion to Strike is denied as premature.

6.  Defendant Heron's Motions to Dismiss for Lack of Jurisdiction and for Lack of Real Parties in Interest; Motion to Set Aside Default (Docket #41)

3

Heron filed a pro se motion for dismissal of the instant suit for lack of jurisdiction on the argument that the United States Constitution conditions jurisdiction on the existence of a case or controversy between parties to a suit. The "case-or-controversy requirement means that parties must continue to have a personal stake in the outcome through all the stages of judicial proceedings, trial and appellate." U.S. v. Duclos, 382 F.3d 62, 65 (1st Cir. 2004)(internal quotes omitted). In challenging whether plaintiff has a personal stake in the outcome of the instant suit, Heron essentially questions whether plaintiff has standing, arguing that plaintiff cannot have sustained an injury-in-fact when "Liner has denied to this Court that [plaintiff] has his authority to proceed and has unsuccessfully attempted to intervene over the objection of [plaintiff] in this case claiming [plaintiff] does not represent him." (Def. Heron's Mot. to Dismiss 3). Heron's corresponding Motion to Dismiss for Lack of Real Parties in Interest also derives from the argument that Liner, and not plaintiff, is the true party in interest. (See id. 7-8). However, Heron's attacks rely on arguments already raised by Liner and other would-be intervenors in their Motion for Intervention, namely, that plaintiff does "not adequately represent Plaintiff-Intervenor's interests because of the termination of [plaintiff]'s Power of Attorney and because plaintiff has declined to advise Liner of the actions taken pursuant to the Power of Attorney." (Mot. to Intervene 3). Because the court has already addressed the arguments that underlie these two of Heron's motions, they are both denied.

Heron also seeks dismissal for lack of personal jurisdiction. In response to Heron's repeated claims that plaintiff never served him adequately to confirm personal

4

jurisdiction, plaintiff has repeatedly filed with the court copies of the service made. Heron had never identified any specific deficiency in these filings but simply continues to assert their insufficiency. In the absence of any substantive argument, Heron's Motion to Dismiss for Lack of Personal Jurisdiction is denied.

Heron's final motion seeks to set aside the default judgment against him on the same grounds that Liner and the other would-be intervenors, and not plaintiff, are the true parties in interest. The court has already addressed this issue by requiring that any disbursement of funds collected pursuant to the judament be preceded by court approval and notice to the would-be intervenors. Accordingly, Heron's motion to set aside is denied.

7.    Motion to Withdraw (Docket #45)

Local counsel Charles P. Kazarian moves to withdraw as attorney for the would-be intervenors as the result of differences having arisen between himself and the intervenors. He filed the motion prior to issuance of the First Circuit ruling that affirmed denial of his clients' motion to intervene. After filing the intervention motion but before the First Circuit ruling, attorney Isaac H. Peres entered an appearance on behalf of some of the creditors (Docket #50). The motion to withdraw is allowed.

_____                     /s/ Rya W. Zobel_____
DATE                                RYA W. ZOBEL
                                    UNITED STATES DISTRICT JUDGE

5