UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
-------------------------------------------------------------
LARRY EWERS,                              )
                                          )
        Plaintiff,                        )
                                          )
v.                                        )
                                          )
INTERNATIONAL CHILDREN'S                  )   CIVIL ACTION NO.
FUND-ROKHA PARAKEY, INC.,                 )   04-10024-RWZ
                                          )
        Plaintiff-Intervenor,             )
                                          )
v.                                        )
                                          )
CHRISTOPHER PATRICK HERON,                )
CORPORATION OF THE BANKHOUSE, INC.        )
SOCIETE BANKHOUSE, and                    )
JAMES F. POMEROY, II,                     )
                                          )
        Defendants.                       )
-------------------------------------------------------------
```

## COMPLAINT OF PLAINTIFF-INTERVENOR

### Jurisdiction and Venue

1.      This Court has jurisdiction over this action pursuant to 18 U.S.C. §1332 because it is an action between citizens of different states and nations and the amount in controversy exceeds the value of $75,000, exclusive of interest and costs.

2.      This Court has personal jurisdiction over the Plaintiff and all Defendants.

3.      Venue in this District is proper pursuant to 28 U.S.C. §1391(a)(2).

### Parties

4.      Plaintiff, Larry Ewers ("Ewers") is a United States citizen residing in Corpus Christi, Texas.

5. Plaintiff-Intervenor, International Children's Fund-Rokha Parakey, Inc. ("ICF") is a Texas non-profit organization formed for the purpose of providing a camping experience to underprivileged children.

6. Defendant, Christopher Patrick Heron ("Heron") is a citizen of Ireland and a resident of the United Kingdom. Heron was adjudged bankrupt by the High Court of Justice In Bankruptcy in the United Kingdom on June 18, 2002 in the case of In re Christopher Patrick Heron, Case No. 1625 of 2002. The High Court of Justice In Bankruptcy is a court of competent jurisdiction to adjudge Heron bankrupt and to adjudicate the liability of Heron to the Petitioner-Intervenor.

7. Defendant Corporation of the BankHouse, Inc. ("COB") is, on information and belief, a corporation incorporated and existing under the laws of Delaware, with a principal place of business at 30 Rowe's Wharf, Boston, Massachusetts.

8. Defendant Societe BankHouse ("Societe") is, on information and belief, a merchant banking entity with its principal place of business at 30 Rowe's Wharf, Boston, Massachusetts.

9. Defendant James F. Pomeroy, II ("Pomeroy") is, on information and belief, an individual who resides at 11 Meadow Haven Drive, Mashpee, Massachusetts. On information and belief, Pomeroy is the principal owner and chief executive officer of both COB and Societe.

**Procedural Facts Regarding Instant Case**

10. On January 4, 2004, Plaintiff Larry Ewers initiated the above-styled action against Defendants by filing a Complaint (the "Complaint").

11. On June 4, 2004, the Court granted to Ewers an Entry of Default against all

2

Defendants herein.

12. On July 9, 2004, Ewers moved for Entry of Final Judgment against Heron. Upon information and belief, no final judgment has yet been granted to Ewers.

13. Plaintiff-Intervenor has previously informally advised the Court of its interest in a letter dated March 15, 2006.

14. Plaintiff-Intervenor has already intervened in the Houston, Texas state district court case of *Cause No. 2003-33307; E.P.D. Management Company L.L.C. and Larry Ewers, Plaintiffs vs. International Children's Fund-Rokha Parakey, Inc., Intervenor, and Howard Eugene Liner, Defendant; In the 151ST Judicial District Court of Harris County, Texas.* Pursuant to a stipulation of the parties, the Texas court entered a judgment that the Plaintiff-Intervenor in fact owns an undivided interest in the claim brought by the Plaintiff against the Defendants in this case. See Exhibit "A" attached hereto.

15. Plaintiff-Intervenor solely intervenes to protect its respective interest in the Final Judgment to be rendered against Heron herein and the funds and assets collected pursuant thereto.

15. On May 9, 2000, Howard Liner entered into an agreement with Alex Cho to invest money. At the time, Howard Liner was an officer and director of the Plaintiff-Intervenor.

16. On the same day the agreement with Mr. Cho was assigned, Mr. Liner assigned 100% of his interest in the agreement to the Plaintiff-Intervenor. See Exhibit "B."

17. On June 27, 2000, the Plaintiff-Intervenor assigned 50% of the proceeds of the Liner-Cho agreement back to Mr. Liner.

18. On July 18, 2000, Plaintiff-Intervenor caused the capital of the Liner/Cho

3

agreement to be placed with Christopher Heron.

19. The investment grew very rapidly but then Christopher Heron refused to pay the money.

### Facts Concerning Claims of Plaintiff-Intervenor Against Defendant

20. Plaintiff-Intervenor alleges each and every fact set forth in the Complaint except as specifically otherwise alleged herein and such allegations are incorporated by reference as if fully set forth.

21. On January 17, 2002, Heron entered into a Settlement Agreement with Howard Liner (on behalf of Mr. Liner and Plaintiff-Intervenor) as well as other of his creditors (the "Heron Settlement Agreement").

22. In the Heron Settlement Agreement, Heron acknowledged his indebtedness to the creditors as follows: to Liner in the principal amount of One Billion Nine Hundred Eighty Million Dollars ($1,980,000,000.00); to Ban in the principal amount of Five Hundred Million Dollars ($500,000,000.00); to Flamecrest in the principal amount of One Hundred Million Dollars ($100,000,000.00); and to Wolfensberger in the principal amount of One Hundred Ten Million Dollars ($110,000,000.00).

23. The Settlement Agreement acknowledged the debt to Liner, 50% of which was owned by Plaintiff-Intervenor. Such debt was a valid and legitimate obligation of Heron to Liner and Plaintiff-Intervenor and such debt was recognized in the courts of competent jurisdiction of the United Kingdom.

24. Heron agreed to liquidate his net worth, which he represented to be approximately Six Million Dollars ($6,000,000.00), and to pay to the Plaintiff-Intervenor seventy percent of the

liquidated value thereon on or before January 24, 2002. In addition, Heron was to provide a financial statement "evidencing the amount of the Heron Net Worth as at 15th January 2002 containing full and precise particulars of Mr. Heron's assets and liabilities supported by documents evidencing the same and prepared in accordance with generally accepted accounting principles."

25. The "financial statement" tendered by Heron stated a net worth consisting entirely of Heron's ownership interest in what was eventually identified as Syndicate 150, an account under the exclusive management of COB, the entity controlled and directed by Pomeroy.

26. Upon information and belief, on January 29, 2002, Heron wrote "The schedule of assets will be contained in my financial statement, that schedule should be furnished today and include an estimate of the further time needed to liquidate the assets. I will not know the nature of the assets until I receive the schedule. The assets are under management of a third party with complete discretion with the priviso that the capital is not be to depleted."

27. The third party referred to by Heron in this correspondence was COB, an entity directed and controlled by Pomeroy.

28. On January 31, 2002, Pomeroy, as President of COB, replied to Heron. He attached an "Interim Review" to his letter and cautioned that that report "states value for only the remaining Participation Interests in the COB Syndicate 150. It does not value current or accrued coupons, partnership interests, rights or attachments of interests in underlying transactions." The attached "Interim Review" states: "Effective 15 January 2002, the syndicate holds remaining participation amounts of USD 1,814,158.25 in accordance with our internal cash flow detail for Syndicate 150. These participation amounts take the form of corporate note obligations

5

exclusive of current and/or accrued coupons, rights or attachments in underlying transaction interests." No value was given for the excluded items and they are not otherwise described.

29.     In the same January 31, 2002 correspondence, Pomeroy reported that: "We are negotiating with the South African partnerships at your direction, the sale of the current participation amounts in Syndicate 150. This group valued the potential purchase of Syndicate 150 remaining interests at approximately USD $4.48 Million during our last working session."

30.     On his financial statement of February 1, 2002, Heron described his assets as "Corporate note obligations held through Syndicate 150 Societe BankHouse."

31.     Based on the application of Liner as the petitioning creditor, Heron was placed in bankruptcy in the United Kingdom on June 18, 2002. On his schedule of assets, he listed as the only significant asset: "Private Investment Syndicate held and managed on full discretionary basis by Corporation of the Bankhouse, Incorporated."

32.     On July 8, 2002, Ewers' representative requested Pomeroy in writing to identify the Syndicate 150 assets and to voluntarily produce the relevant documents. Pomeroy never responded.

**Facts Concerning The Relationship Between Plaintiff and Plaintiff-Intervenor**

33.     In paragraph 2 of the Complaint, Ewers alleged that he was the sole plaintiff and party in interest with respect to the causes of action in the Complaint. That is not true.

34.     In paragraph 22 of the Complaint Ewers alleged that he was acting as plaintiff in the case on behalf of Plaintiff-Intervenor Liner based on a Power-of-Attorney dated January 11, 2002 (the "Power of Attorney").

35.     On May 9, 2000, Mr. Liner transferred 100% ownership of the Liner/Cho profit

sharing agreement to Plaintiff-Intervenor. See Exhibit "B." This assignment was expressly binding on subsequent assignees. On June 27, 2000, Plaintiff-Intervenor transferred 50% of the proceeds of the agreement to Mr. Liner. See Exhibit "C." The actual ownership of the contract remained with ICF. These transfers were made before the January 11, 2002 power of attorney relied upon by Mr. Ewers.

36. The Texas court in *Cause No. 2003-33307; E.P.D. Management Company L.L.C. and Larry Ewers, Plaintiffs vs. International Children's Fund-Rokha Parakey, Inc., Intervenor, and Howard Eugene Liner, Defendant; In the 151ST Judicial District Court of Harris County, Texas* has entered a judgment that Plaintiff-Intervenor owns an undivided interest in the claim filed by the Plaintiff against Mr. Heron in this Court. See Exhibit "A."

37. In December of 2001, Mr. Ewers promised Plaintiff-Intervenor to take care of Plaintiff-Intervenor's interest and keep them well informed of collection efforts if Plaintiff-Intervenor would refrain from intervening into the United Kingdom litigation.

38. Mr. Ewers claims a personal interest in the Heron claim because of a compensation agreement allegedly entered into between Mr. Ewers and Mr. Liner on May 3, 2002.

39. In November and December of 2001, Mr. Ewers met with Mr. Stan Smith, president of Plaintiff-Intervenor. Mr. Ewers was shown the assignment to Plaintiff-Intervenor. Mr. Ewers therefore had actual awareness of the assignment before he entered into the compensation agreement and the power of attorney upon which this suit is based.

40. Mr. Ewers bases his personal claim on the settlement agreement of January 17, 2002 and the subsequent compensation agreement of May 3, 2002. Mr. Ewers is not a party to

the settlement agreement although he signed it on behalf of Mr. Liner. Paragraph 8.4 of the settlement agreement expressly prohibits Mr. Liner from assigning his rights under the agreement to anyone without consent of the other parties. Since Mr. Liner did not obtain consent to assign Mr. Ewers any interest, the subsequent alleged assignment is not valid. While Mr. Ewers may have had the power to file this suit on behalf of Mr. Liner and ICF, Mr. Ewers owns no personal interest in the Heron claim.

## Count I
## Declaratory Judgment

41.     Plaintiff-Intervenor repeats, realleges and incorporates paragraphs 1 through 40 as though fully set forth herein.

42.     Plaintiff-Intervenor seeks a declaratory judgment that it owns at least 50% of the $1.98 billion claim asserted by Plaintiff Ewers against the Defendant Heron as well as any statutory multiples of that amount.

43.     Since Plaintiff-Intervenor owns 100% of the $1.98 billion claim against Mr. Heron and is entitled to at least 50% of the proceeds. Any judgment entered in this case should be entered in the name of ICF for collection and distribution to all claimants under court supervision.

44.     Plaintiff-Intervenor seeks a declaratory judgment that Mr. Ewers owns no personal interest in the Heron claim.

## Count II
## Injunction

45.     Plaintiff-Intervenor repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 40 as though fully set forth herein.

8

46. Ewers has repeatedly declined to provide to Liner information concerning his actions pursuant to the Power of Attorney.

47. Upon information and belief Ewers has utilized the Power of Attorney for his own benefit and not for the benefit of Liner in breach of Ewers' fiduciary duty to Liner.

48. Ewers owes a duty to Liner and Plaintiff-Intervenor to disclose all information concerning or relating to Heron's assets or causes of action against Heron or third parties relating to Heron to Liner.

49. Ewers owes a duty to Liner and Plaintiff-Intervenor to disclose to Liner all instances and situations where the Power of Attorney has been utilized in bringing suits, seeking the collection of assets, or take other action with respect to Heron or any third party.

## Count III
## Reach and Apply

50. Plaintiff-Intevenor repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 40 as though fully set forth herein.

51. Upon information and belief, Ewers transferred assets to his own account or for his benefit which rightly belong to Plaintiff-Intervenor without consideration, and with the intent to hinder, delay and defraud Plaintiff-Intervenor.

52. Ewers is liable as a fiduciary to account to Liner and Plaintiff-Intervenor ICF for any and all instances in which Ewers or anyone acting on his behalf has transferred money or assets utilizing or based upon the Power of Attorney.

## Count IV
## Breach of Contract

53. Plaintiff-Intevenor repeats, realleges and incorporates by reference the allegations

contained in paragraphs 1 through 40 as though fully set forth herein.

54. Defendant Christopher Heron has breached the settlement agreement and therefore owes $1.98 billion.

55. Defendant Christopher Heron's conduct constituted fraudulent, unfair, and deceptive practices in violation of GLC 93A §2; took place in trade or commerce, and therefore entitles claimants to double or treble damages.

### Count V
### Breach of Fiduciary Duty

56. Plaintiff-Intevenor repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 40 as though fully set forth herein.

57. Ewers has breached his fiduciary duty to both ICF and Liner and therefore under Texas law should disgorge any compensation to ICF and/or Liner.

WHEREFORE, Plaintiff-Intervenor prays that this Court:

1) Enter judgment on behalf of Plaintiff-Intervenor and against Defendants Corporation Bankhouse, Inc. and James F. Pomeroy, II for a sum certain of $4,480,000.00, trebled to $13,440,000.00 as of January 5, 2004, the date of filing of the Complaint, together with interest as provided by law;

4) Enter judgment on behalf of Plaintiff-Intervenor and against Defendant Christopher Patrick Heron for the sum certain of $1,980,000,000.00, trebled to $5,940,000,000.00 as of January 5, 2004, the date of filing of the original Complaint in this action, plus interest as provided by law;

5) Temporarily and, after hearing, permanently enjoin Ewers from acting in any way

pursuant to the Power of Attorney and requiring Ewers to disclose all facts concerning any instance where Ewers has initiated any action or obtained any funds based upon the powers granted to him in the Power of Attorney;

6) Grant all remedies sought in the Complaint against Defendants; and

7) Provide such other and further relief as the Court may find just and proper.

### Jury Demand

Plaintiff-Intervenor demands a trial by jury on all issues so triable.

Respectfully submitted,

s/Matthew C. Welnicki/

Michael S. Appel (BBO 543898)
Matthew C. Welnicki (BBO 647104)
Sugarman, Rogers, Barshak & Cohen, P.C.
101 Merrimac Street
Boston, MA 02114
(617) 227-3030
Fax: (617) 523-4001

ROBERT D. GREEN
ROBERT D. GREEN & ASSOCIATES, P.C.
State Bar No. 08368025
440 Louisiana St., Ste. 1930
Houston, Texas 77002
(713) 654-9222 - Telephone
(713) 654-2155 – Telecopier

**ATTORNEYS FOR PLAINTIFF-INTERVENOR, INTERNATIONAL CHILDREN'S FUND-ROKHA PARAKEY, INC.**

## CERTIFICATE OF SERVICE

    I hereby certify that a true and correct copy of the foregoing document has been forwarded to all known counsel of record via this Court's ECF system, on this the 15th day of June 2006, as follows:

Isaac H. Peres
Law Offices of Isaac H. Peres
50 Congress St., Ste. 225
Boston, MA 02109
fax number (617) 367-8840

Kenneth V. Nourse
Edwards, Angell, Palmer & Dodge, L.L.P.
111 Huntington Ave.
Boston, MA 02199
fax number (888) 325-9091

Alan M. Spiro
Edwards, Angell, Palmer & Dodge, L.L.P.
101 Federal St.
Boston, MA 02110
fax number (617) 439-4170

                                              s/Matthew C. Welnicki/
                                              _____
                                              Michael S. Appel

#378751