UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| LARRY EWERS,<br>    Plaintiff, | ) <br> ) <br> ) | |
| | ) | |
|     v. | ) <br> ) | CIVIL ACTION<br>NO. 04- 10024-RWZ |
| CHRISTOPHER PATRICK HERON,<br>CORPORATION OF THE BANKHOUSE, INC.,<br>SOCIETE BANKHOUSE, and<br>JAMES F. POMEROY, II,<br>    Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) | |

## MOTION TO RE-OPEN CASE AND FOR ENTRY OF FINAL JUDGMENT AGAINST DEFENDANT CHRISTOPHER PATRICK HERON

Plaintiff Larry Ewers, with the assent of all of the interested parties identified below, moves that this case be administratively re-opened and that final and separate judgment pursuant to Fed. R. Civ. P. 54(b) be entered in the form submitted herewith against defendant Christopher Patrick Heron. As grounds, Ewers states as follows:

As contemplated by this Court in its Memorandum of Decision entered on February 3, 2006, all previously contested issues concerning (a) the validity and irrevocability of the Power of Attorney executed by Howard Eugene Liner in favor of Ewers (the "POA") and (b) Ewers' authority to file and prosecute this action, have been resolved in the case E.P.D. Management Company, L.L.C. and Larry Ewers, Plaintiffs v. Howard Eugene Liner, Defendant and International Children's Fund-Rokha Parakey, Inc.; Buckley, Mathews, White & Howell, L.L.P.; and Larry Morris, Intervenors, Cause No. 2003-33307 (the "Texas Case") in the District Court of Harris County, Texas, 151st Judicial District (the "Texas Court").

1

Specifically, on September 15, 2006, the Texas Court entered an Agreed Final Judgment

with Prejudice (the "Texas Judgment"), a true copy of which is attached hereto as Exhibit A.

The Texas Judgment adjudicated as follows:

> "It is ADJUDGED that the June 18, 2002 Exclusive Power of Attorney
> and Mandate, which Howard Eugene Liner signed in favor of Larry
> Ewers, is valid and irrevocable, and gave Larry Ewers full authority to file
> and prosecute the lawsuit styled *Larry Ewers v. Christopher Patrick
> Heron et al.*, in the U.S. District Court, District of Massachusetts, Cause
> No. 04-10024-RWZ, and that any and all attempts to revoke such
> Exclusive Power of Attorney and Mandate are void."

The Texas Judgment further adjudicated the precise percentage interests of ownership of all

interested parties in any judgment recovered against Heron:

| | |
|---|---|
| Larry Ewers/E.P.D. Management Company, L.L.C. | 30% |
| Howard Eugene Liner | 16% |
| International Children's Fund-Rokha Parakey, Inc. | 38% |
| Buckley, Mathews, White & Howell, L.L.P. | 15% |
| Larry Morris | 1% |

There is therefore no further impediment to entry of, nor any just reason for delay in

entering, a final judgment against Heron.[1]

### Procedural Posture

1. The original Complaint in this case was filed on January 5, 2004.

2. Proof of Service was filed in this Court on April 20, 2004, including the originals of:

> (A)     Certificate of Service, stamped by the Central London County
> Court; and
>
> (B)     Certificate of Compliance with the Hague Convention,
> sworn before John Leonard, Solicitor.

---

[1] As discussed below, entry of a judgment against defendant Pomeroy, has been stayed
by Pomeroy's filing of a Bankruptcy Petition under Chapter 7. This circumstance should
not, however, delay entry of final judgment against Heron pursuant to Fed. R. Civ. P.
54(b). An express determination pursuant to Fed. R. Civ. P. 54(b) is included in the
proposed final judgment.

(Certificate of Service/Compliance [Docket # 7]); Affidavit of Alan M. Spiro in Support

of Plaintiff's Motion for Entry of Default Judgment Against Christopher Patrick Heron

[Docket # 14] ["Spiro Aff."], ¶¶ 3 – 5).

3.   Process was served on Heron on April 7, 2004, pursuant to Articles 5(b) and 6 of The

Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or

Commercial Matters.  (Certificate of Service/Compliance [Docket # 7]; Spiro Aff. [Docket #

14], ¶¶ 3 – 5).

4.   Service of the Complaint was effected on Heron at his residence, 21 Dale House,

Boundary Road, London, United Kingdom, by delivery in hand on Heron, who, according to the

Process Server's Certificate of Service, "accepted it voluntarily" on April 7, 2004.  (Certificate

of Service/Compliance [Docket # 7]; Spiro Aff. [Docket # 14], ¶¶ 4 – 5).

5.   Heron's response to the Complaint was due on April 27, 2004. (Spiro Aff., ¶ 6).

6.   On May 11, no answer or other response having been received, Plaintiff filed a Motion

for Entry of Default against Defendant Christopher Patrick Heron.

7.   Default entered against Heron on June 4, 2004.  (Docket # 9).

8.   Heron filed neither any timely motion to remove the default, nor any responsive

pleading.  On July 15, 2004, Ewers filed a Motion for Entry of Final Judgment against Heron.

(Docket # 10).

9.   On July 22, 2004, Heron wrote a letter to Ewers' counsel, and copied that Letter to the

Court (the "Heron Letter") (Docket # 18).  The Heron Letter did not constitute an Answer or

other pleading.  Nor did the Heron Letter seek timely relief that the default previously entered

be removed.  The Heron Letter did confirm, first, that Heron's address was in fact the address at

which Heron had been served with the Complaint (21 Dale House, Boundary Road, London),

and second, that Heron had actual notice of these proceedings, yet failed to answer or otherwise plead, failed to seek timely relief that the default against him be vacated, and failed to advance reasons sufficient for such relief to enter.

10. There followed substantial motion practice by would-be intervenors Howard Liner and Alexander Pladott.[2] On November 2, 2004, this Court denied the proposed intervenors' motion to intervene. The Court's denial was upheld by the First Circuit Court of Appeals on August 11, 2005. Ewers v. Heron, 419 F.3d 1 (1st Cir. 2005).

11. In the Court's denial of the proposed intervenors' Motion to Intervene, the Court directed that counsel "submit a form of default judgment against all existing defendants that shall include a clause prohibiting plaintiff from disbursing any funds collected without notice to the proposed intervenors and approved by the court." Plaintiff's counsel submitted such a form of default judgment on November 9, 2004. The would-be intervenors submitted their own form of judgment, notwithstanding the denial of their motion to intervene. The Plaintiff and the proposed intervenors were unable to agree on a form of default judgment.

12. On October 14, 2005, Defendant Pomeroy filed a Petition for Relief under Chapter 7 of the Bankruptcy Code. U.S. Bankruptcy Court Petition # 05-23127 (Bankr. D. Mass.) (Hillman, Bankr. J.)

13. On October 18, 2005, Heron, without leave of Court and with the default against him still in place, purported to file an "Answer to Summons."

14. After this Court's November 2, 2004 denial of the proposed intervenors' Motion to Intervene, on November 17, 2004, Heron filed a "Motion to Dismiss for Lack of Jurisdiction,

---

[2] The status of Pladott's purported interests will be discussed below.

4

Motion to Set Aside Default; and Motion to Dismiss for Lack of Real Parties in Interest." On January 18, 2005, Heron filed an Affidavit in support of his Motion.

15. In a Memorandum of Decision dated February 3, 2006, this Court denied Heron's Motion in its entirety.

16. The recent Texas Judgment puts to rest Heron's multiple arguments with respect to the existence of a case or controversy, standing, authority to proceed, real party in interest, and adequacy of Ewers' representation, and vindicates both this Court's denial of the proposed intervenors' Motion to Intervene and its denial of Heron's Motion to Dismiss.

17. The Court's Memorandum of Decision stayed and administratively closed this case, awaiting resolution of "the dispute regarding the force and effect of the POA pending in the Texas state court." (Id. at 2).

18. Subsequently, on June 16, 2006, with the case still closed, another proposed intervenor, the International Children's Fund-Rokha Parakey Inc. ("ICF-RPI"), moved to intervene. This motion was denied on July 20, 2006. ICF-RPI was successful, however, in intervening in the Texas case.

19. In summary, this case has been stayed and administratively closed since February 3, 2006, awaiting resolution of "the dispute regarding the force and effect of the POA pending in the Texas state court." That dispute has now been resolved, and the time is now ripe to re-open the case and, finally, to proceed to judgment against Christopher Patrick Heron.

### The Status of Would-Be Intervenor Alexander Pladott

20. In his papers supporting his motion to intervene, Pladott claimed – without adducing any documentary support – to represent three different creditors who had claims against defendant Heron: Ah Ping Ban, Flamecrest Enterprises Limited Trust and Balz Rudolph Wolfensberger

Trust. Heron owed these alleged creditors a debt of $710,000,000, which was separate and distinct from the $1.98 billion debt that Heron owed to Liner and his assignees. Heron acknowledged the two separate debts in the Settlement Agreement dated January 17, 2002. (Spiro Aff., Ex. A). It is the latter $1.98 billion debt which forms the basis for Ewers' claims in this case.

21. This Court properly denied Pladott's intervention since, in addition to the many reasons previously briefed in this Court and the First Circuit Court of Appeals, Pladott: (i) never asserted any and has no ownership interest in the $1.98 billion claim prosecuted by Ewers under the POA; (ii) never provided any documentary support for his claims that he represented the creditors he alleged to represent; (iii) never filed a direct action against Heron for the separate $710,000,000 debt; and (iv) has refused to pay any of the costs incurred by Ewers for the filing and prosecution of this suit on a separate debt. At all times, Pladott's role has been obstructive rather than constructive: Pladott has sought to piggy-back on Ewers' efforts, while neither contributing to those efforts nor taking any independent action to collect the separate debt owed to the creditors he claims to represent. Pladott could have filed his own suit against defendant Heron but has never done so.

22. Pladott does not and cannot claim to be an owner of the Liner debt. Rather, he claims that by virtue of a subsequent agreement, he is owed a percentage of any proceeds collected in this case. However, the issues surrounding Pladott's claims do not become relevant unless and until assets of Defendant Christopher Patrick Heron are actually located and reached. They are not relevant to whether or not final judgment should be entered against Heron for his acknowledged $1.98 billion debt in favor of Ewers and the other parties who own that debt by virtue of Heron's admissions, his default in this case and the valid and final Texas Judgment. If

6

no assets of Heron's are ever reached, it will never be necessary for this Court to decide Pladott's purported issues. If such assets are reached, the proposed judgment provides adequate protection to Pladott by virtue of the clause, which this Court ordered to be included in the judgment, "prohibiting plaintiff from disbursing any funds collected without notice to the proposed intervenors and approved by the court."

23. In addition, since Pladott's alleged group of creditors are not owners of the $1.98 billion claim against Heron, it is neither necessary nor proper that Pladott be named in the judgment on that claim. By contrast, naming the true owners of the claim is necessary so that each will be empowered to collect whatever assets may be found on behalf of themselves and the other Liner creditors and to transfer any such assets to this Court for ultimate distribution.

## Proposed Findings

1. In § 1.15 of an Agreement dated January 17, 2002, a true copy of which is attached to the Spiro Affidavit as Exhibit A (the "Agreement"), Heron admitted his debt, defined as the "Cho/Liner Debt," in the amount of $1,980,000,000. Heron further admitted, in § 3.3 of the Agreement, that "Mr. Heron is indebted to Mr. Liner for the Cho/Liner Debt." Ewers is the attorney-in-fact for this debt under the POA and has "full authority to file and prosecute" this lawsuit, as confirmed by all interested parties in the Texas Judgment.

2. In the Agreement, Heron agreed to pay "the Settlement Sum," defined in § 1.19 as "Seventy percent of the liquidated value of the Heron Net Worth." Heron agreed in § 4.1 to remit the Settlement Sum by "the Payment Date," defined in § 1.18 as January 24, 2002. The parties further agreed that "time shall be of the essence." § 4.1.

3. Heron did not pay the Settlement Sum by the Payment Date, nor has he paid the Settlement Sum at any time thereafter. (Spiro Aff. ¶ 14).

4.  Heron agreed that the Settlement Sum would extinguish the debt currently owed to Ewers under the POA only if "the Settlement Sum is paid by Heron on or before the Payment Date." (Agreement § 6). Other conditions were imposed on and not fulfilled by Heron, but Heron's failure to pay the Settlement Sum by the Payment Date, without more, rendered the entire $1,980,000,000 due and payable to Ewers pursuant to the POA on January 25, 2002. (Agreement § 4.1; Spiro Aff. ¶¶ 13 – 15).

## PROPOSED JUDGMENTS AND ORDERS

### JUDGMENTS AND ORDERS ON COUNT I

5.  Count I of the Complaint states a claim for tortious interference with contract against COB and Pomeroy, for their active participation in the concealment and diversion of funds from Heron's creditors, which interfered with and frustrated the consummation of the Settlement Agreement between Heron and his creditors. (Complaint ¶¶ 32 – 37).

6.  As a result of Pomeroy's pending bankruptcy proceedings, Plaintiff does not currently seek judgment on Count I.

### JUDGMENTS AND ORDERS ON COUNT II

7.  Count II of the Complaint states claims against Defendants Heron, COB and Pomeroy for fraud.

8.  The Complaint alleges that Heron was a "sophisticated con artist" who "has defrauded numerous individuals." (Complaint ¶ 9). In particular, Heron is alleged to have "defrauded" the creditors who entered into the January 17, 2002 Settlement Agreement. (Complaint ¶ 10).

9.  Heron is alleged to have continued his fraudulent conduct by making "repeated fraudulent promises to pay the 70% of his net worth to his creditors, but fail[ing] ever to do so" and "never [having] had any intention to do so." (Complaint ¶ 20).

10. Heron is alleged to have made "false and fraudulent" misrepresentations concerning his true net worth (Complaint ¶ 26), claiming "that his investment in Syndicate 150 was his only significant asset" while at the same time making inconsistent representations concerning his ability to execute $100,000,000 and $200,000,000 transactions.  (Complaint ¶ 26).

11. Heron is alleged to have "millions of dollars of funds in accounts which he has claimed to be 'outside the jurisdiction' of the United Kingdom Bankruptcy Court and 'out of reach' of creditors." Thus, Heron is alleged to have both misrepresented his true assets to his creditors and to have transferred and concealed assets outside the reach of those creditors, in fraud of those creditors.  (Complaint ¶ 27).

12. With respect to Heron, the amount of damages has been established, in that Heron admitted, both in the Agreement and on his List of Creditors in the United Kingdom proceedings, his indebtedness of $1,980,000,000.

13. Subject to all of the terms and conditions set forth below and in the proposed Final Judgment for distribution of any proceeds of the Judgment, Judgment should be entered on Count II of the Complaint in favor of Ewers and against Heron in the amount of $1,980,000,000, plus interest as provided by law.

14. Count II of the Complaint also states claims against Defendants COB and Pomeroy for fraud and conspiracy to commit fraud.  As a result of Pomeroy's pending

bankruptcy proceedings, Plaintiff does not currently seek judgment against COB and Pomeroy on Count II.

## JUDGMENTS AND ORDERS ON COUNT III

15. Count III of the Complaint states a claim against Heron (as well as against Defendants COB and Pomeroy) for constructive trust. The Complaint alleges that if COB and Pomeroy maintain "any benefit from assets transferred from Heron," they "will be unjustly enriched" (Complaint ¶ 48), and the Complaint seeks a constructive trust in favor of Ewers (Complaint ¶ 49).

16. As a result of Pomeroy's pending bankruptcy proceedings, Plaintiff does not currently seek judgment on Count III.

## JUDGMENTS AND ORDERS ON COUNT IV

17. Count IV of the Complaint states a claim against Heron (and against Defendants COB and Pomeroy) in the nature of an action to reach and apply. In summary, the Complaint alleges that "Heron transferred assets to the Defendants without consideration, and with the intent to hinder, delay and defraud" Heron's creditors, including Liner, for whom Ewers is attorney-in-fact. In light of the fact that Count IV concerns funds in the custody of Pomeroy and COB, and given Pomeroy's pending bankruptcy proceedings, Plaintiff does not currently seek judgment on Count IV.

## JUDGMENTS AND ORDERS ON COUNT V

18. Count V of the Complaint states a claim against Heron (and against COB and Pomeroy) under G.L. c. 93A for treble damages and attorneys' fees.

19. The following allegations of the Complaint support a claim for unfair and deceptive acts and practices under G.L. c. 93A:

a. Paragraph 9 of the Complaint alleges: "Heron is a sophisticated con artist who represents to investors that he will generate substantial profits from trans-national trading in debt instruments of large denomination. On information and belief, Heron has defrauded numerous individuals."

b. Paragraph 10 of the Complaint alleges: "On January 17, 2002, Heron entered into a Settlement Agreement with four such defrauded creditors, including ... Liner [represented by Ewers under the POA] (the 'Heron Settlement Agreement')."

c. Paragraph 11 of the Complaint alleges: "Heron acknowledged his debt ... in the principal amount of $1,980,000,000." This debt arose out of the fraud on creditors alleged in Paragraph 10 of the Complaint, including the creditor represented by Ewers.

d. Paragraph 12 of the Complaint alleges: "Also in the Heron Settlement Agreement, Heron represented his net worth to be approximately $6,000,000.00. Heron agreed to liquidate this net worth, and to pay the creditors seventy (70%) percent of the liquidated value of his net worth on or before January 24, 2002."

e. Paragraph 20 of the Complaint alleges: "Heron made repeated fraudulent promises to pay the 70% of his net worth to his creditors, but failed ever to do so and, on information and belief, never had any intention to do so." Heron is therefore alleged to have misrepresented his present intention and, in context, to have committed this fraud in an effort to hinder and delay his creditors.

f. Paragraph 26 of the Complaint alleges: "Heron's representation that his investment in Syndicate 150 was his only significant asset was false and fraudulent. By way of examples only, shortly after he made such representation, on May 3, 2002, Heron communicated with Boston attorney Robert Masud concerning a 'Letter of Guarantee' in the amount of $20 million dollars, of which, Heron represented, 'I am to be the First Beneficiary of the instrument....' On February 27, 2003, Heron executed an Affidavit stating 'I ... hereby confirm under penalty of perjury that funds are readily available for the completion of the transaction per the attached [Letter of Intent], being an Intent to Purchase Bank Guarantee in the amount of $200,000,000.' On March 11, 2003, Heron transmitted a letter of 'intent to purchase ... Bank Guarantees ... Amount of $10 Billion USD, First Tranche $100 Million USD.' On information and belief, Heron has continued substantial investment activities, while at the same time falsely and fraudulently claiming that he has no liquid assets."

g. Paragraph 27 of the Complaint alleges: "Heron maintains millions of dollars of funds in accounts which he has claimed to be 'outside the

jurisdiction' of the United Kingdom Bankruptcy Court and 'out of reach' of creditors."

h. Paragraph 28 of the Complaint alleges: "On April 3, 2003, Heron was charged with contempt in the United Kingdom proceedings and incarcerated for 60 days."

20. Taken together, these allegations describe a pattern of unfair and deceptive conduct by Heron. Heron is alleged to be a "sophisticated con artist" who "has defrauded numerous individuals." (Complaint ¶ 9). Heron is alleged to have "defrauded" his creditors, which fraud formed the basis for those creditors' claims which gave rise to the January 17, 2002 Settlement Agreement. (Complaint ¶ 10). Heron is alleged to have continued his unfair and deceptive conduct by making "repeated fraudulent promises to pay the 70% of his net worth to his creditors, but fail[ing] ever to do so" and "never [having] had any intention to do so" (Complaint ¶ 20); making "false and fraudulent" misrepresentations concerning his true net worth (Complaint ¶ 26); claiming "that his investment in Syndicate 150 was his only significant asset" while at the same time claiming to be able to execute $100,000,000 and $200,000,000 transactions (Complaint ¶ 26); and, having delayed and defrauded his creditors, boasting that he had "millions of dollars" in accounts which he claimed to have put "'out of reach' of creditors."

21. In their context and totality, these allegations contain the self-evident allegations that Heron's frauds, misrepresentations and concealments were knowing and willful, undertaken for the purpose of defrauding investors, and stringing those investors along by means of a settlement agreement he never intended to fulfill, while fraudulently concealing assets available to satisfy those same investors.

22. The allegations of the Complaint therefore describe a pattern of fraudulent conduct on the part of Heron, from his initial defrauding of creditors (including those represented by Ewers) out of $1,980,000,000, through his continuing efforts to defraud and hinder those creditors,

which constituted knowing and willful unfair and deceptive acts and practices within the meaning of G.L. c. 93A.[3]

23. Subject to all of the terms and conditions set forth below for distribution of any proceeds of this Judgment, Judgment should be entered on Count V of the Complaint in favor of Ewers and against Heron in the amount of $1,980,000,000, trebled pursuant to G.L. c. 93A to $5,940,000,000, plus interest as provided by law.

24. As a result of Pomeroy's pending bankruptcy proceedings, Plaintiff does not currently seek judgment on Count V with respect to COB and Pomeroy.

### TERMS AND CONDITIONS OF DISTRIBUTION OF PROCEEDS RECOVERED PURSUANT TO THIS JUDGMENT

25. Pursuant to the Texas Judgment and the agreement of the persons adjudged in that Judgment to have interests in the claims against Heron asserted in this lawsuit, any judgment entered in this case must, and the proposed judgment submitted herewith does, conform to the following requirements and include the following provisions:

　　1.　　The following persons (the "Parties") each own an undivided interest in the claims against Heron underlying this case and any judgment arising herefrom, as well as any other claims and benefits arising out of the May 9, 2000 Profit Sharing Agreement entered into by Howard Eugene Liner and Alex Cho, the July 18, 2000 Memorandum of Understanding executed by Howard Eugene Liner, Alex Cho and Christopher Heron, and the January 17, 2002 Settlement Agreement entered into by Howard Eugene Liner (by his attorney-in-fact, Larry Ewers), Ah Ping Ban, Alexander Pladott, Anthony

---

[3]　Heron's pattern of conduct falls well within the sphere of conduct recognized as unfair and deceptive under Chapter 93A. *See, e.g.*, Arthur D. Little International, Inc. v. Dooyang Corp., 979 F. Supp. 919, 925 (D. Mass. 1997)("a strategy of commercial extortion by failing to pay clear obligations ... to force favorable price concessions through the threat of expensive litigation"); Mass. Employers Ins. Exch. v. Propac-Mass, Inc., 420 Mass. 39, 43 (1995)("conduct undertaken as leverage to destroy the rights of another party to the agreement...."); Anthony's Pier Four, Inc. v. HBC Associates, 411 Mass. 451, 475 (1991)("conduct 'in disregard of known contractual arrangements' and intended to secure benefits for the breaching party constitutes an unfair act or practice for c. 93A purposes").

Feldman and Christopher Patrick Heron (the "Heron Claims"), all in the following percentages contained in the Agreed Final Judgment in the Texas Case:

| | |
|---|---|
| Larry Ewers/E.P.D. Management Company, L.L.C. | 30% |
| Howard Eugene Liner | 16% |
| International Children's Fund-Rokha Parakey, Inc. | 38% |
| Buckley, Matthews, White & Howell, L.L.P. | 15% |
| Larry Morris | 1% |

2.    The Texas Court adjudicated, and each of Howard Eugene Liner, International Children's Fund-Rokha Parakey, Inc., Buckley, Mathews, White & Howell, L.L.P., and Larry Morris have fully and completely ratified that: (a) the June 18, 2002 Exclusive Power of Attorney and Mandate which Howard Eugene Liner signed in favor of Larry Ewers (the "POA") is valid, irrevocable and has not been revoked; (b) the POA gave Larry Ewers full authority to file and prosecute this lawsuit; and (c) any and all attempts to revoke such Exclusive Power of Attorney and Mandate were and are void."

3.    All Parties must do everything possible to cause any Heron-related assets found anywhere in the world to be deposited into the U.S. District Court, District of Massachusetts, in which Judge Rya W. Zobel (or any successor judge) presides over this case, for distribution to the Parties in the percentages specified above as adjudicated in the Agreed Final Judgment in the Texas lawsuit.

4.    All Parties must concurrently provide notice to this Court and the attorneys of all Parties of all Heron-related transfers and results of any post-judgment orders and actions including, but not limited to, garnishments, turnovers, and writs of execution.

5.    No funds shall be disbursed to any of the Parties without prior notice to the other Parties and obtaining the prior approval of this Court.

## CONCLUSION

WHEREFORE, Plaintiff Larry Ewers moves that the Court:

(1)    administratively re-open this case;

(2)    make an express determination that there is no just reason for delay;

(3)    make an express direction for the entry of final and separate judgment against

Defendant Christopher Patrick Heron, in the form submitted herewith; and

(4)    enter such other or further relief as the Court deems just.

LARRY EWERS

By his attorney,

Alan M. Spiro, BBO # 475650
EDWARDS ANGELL
PALMER & DODGE LLP
111 Huntington Avenue
Boston, MA  02199
(617) 951-2204

Dated:  October 26, 2006

ASSENTED TO:

E.P.D. MANAGEMENT COMPANY, L.L.C.
LARRY EWERS

By their attorney:

Robert W. Painter
THE PAINTER LAW FIRM, P.L.L.C.
5625 FM 1960 West, Suite 404
Houston, Texas  77069
Telephone:  (281) 580-8800
Facsimile:  (281) 580-8802

INTERNATIONAL CHILDREN'S FUND-
ROKHA PARAKEY, INC.

By its attorney:

Robert D. Green
ROBERT D. GREEN & ASSOCIATES
440 Louisiana St., Suite 1930
Houston, TX 77002
Telephone:  (713) 654-9222
Facsimile:  (713) 654-2155

15

(4)    enter such other or further relief as the Court deems just.

LARRY EWERS

By his attorney,

_____
Alan M. Spiro, BBO # 475650
EDWARDS ANGELL
PALMER & DODGE LLP
111 Huntington Avenue
Boston, MA  02199
(617) 951-2204

Dated: October __, 2006

ASSENTED TO:

E.P.D. MANAGEMENT COMPANY, L.L.C.
LARRY EWERS

By their attorney:


_____
Robert W. Painter
THE PAINTER LAW FIRM, P.L.L.C.
5625 FM 1960 West, Suite 404
Houston, Texas  77069
Telephone:  (281) 580-8800
Facsimile:  (281) 580-8802

INTERNATIONAL CHILDREN'S FUND-
ROKHA PARAKEY, INC.

By its attorney:

_____
Robert D. Green
ROBERT D. GREEN & ASSOCIATES
440 Louisiana St., Suite 1930
Houston, TX 77002
Telephone:  (713) 654-9222
Facsimile:  (713) 654-2155

15

HOWARD EUGENE LINER

By his attorney:

Kevin R. Michaels
LAW OFFICES OF KEVIN R. MICHAELS, P.C.
11767 Katy Freeway, Suite 730
Houston, TX 77079
Telephone: 281-496-9889
Facsimile: 281-496-4211

BUCKLEY, MATHEWS, WHITE & HOWELL, L.L.P.

By its attorney:

Richard Howell
BUCKLEY, MATHEWS, WHITE & HOWELL, L.L.P.
2401 Fountainview, Suite 1000
Houston, TX 77057
Telephone: 713-789-7700
Facsimile: 713-789-7703

LARRY MORRIS

By his attorney:

Mickey L. Washington
THE WASHINGTON LAW FIRM, P.L.L.C.
440 Louisiana St., Suite 1930
Houston, TX 77002
Telephone: 713-654-9222
Facsimile: 713-654-2155

16

HOWARD EUGENE LINER

By his attorney:

Kevin R. Michaels
LAW OFFICES OF KEVIN R. MICHAELS, P.C.
11767 Katy Freeway, Suite 730
Houston, TX 77079
Telephone: 281-496-9889
Facsimile: 281-496-4211

BUCKLEY, MATHEWS, WHITE & HOWELL, L.L.P.

By its attorney:

Richard Howell
BUCKLEY, MATHEWS, WHITE & HOWELL, L.L.P.
2401 Fountainview, Suite 1000
Houston, TX 77057
Telephone: 713-789-7700
Facsimile: 713-789-7703

LARRY MORRIS

By his attorney:

Mickey L. Washington
THE WASHINGTON LAW FIRM, P.L.L.C.
440 Louisiana St., Suite 1930
Houston, TX 77002
Telephone: 713-654-9222
Facsimile: 713-654-2155

16

HOWARD EUGENE LINER

By his attorney:

_____

Kevin R. Michaels
LAW OFFICES OF KEVIN R. MICHAELS, P.C.
11767 Katy Freeway, Suite 730
Houston, TX 77079
Telephone: 281-496-9889
Facsimile: 281-496-4211

BUCKLEY, MATHEWS, WHITE & HOWELL, L.L.P.

By its attorney:

_____

Richard Howell
BUCKLEY, MATHEWS, WHITE & HOWELL, L.L.P.
2401 Fountainview, Suite 1000
Houston, TX 77057
Telephone: 713-789-7700
Facsimile: 713-789-7703

LARRY MORRIS

By his attorney:

_____

Mickey L. Washington
THE WASHINGTON LAW FIRM, P.L.L.C.
440 Louisiana St., Suite 1930
Houston, TX 77002
Telephone: 713-654-9222
Facsimile: 713-654-2155

16

CERTIFICATE OF SERVICE

I, Alan M. Spiro, hereby certify that a true copy of the above document was served upon the attorneys for all persons known to assert an interest in the proceeds of any judgment entered in this case by electronic transmission and/or U.S. mail, first class, postage pre-paid, on October 26, 2006, upon the following:

CHRISTOPHER PATRICK HERON
21 Dale House
Boundary Road
London, NW8, United Kingdom

Isaac H. Peres
50 Congress Street
Boston, MA 02109
Telephone: 617.722.0094
Facsimile: 617.367.8840
ATTORNEY FOR PROPOSED INTERVENORS
ALEXANDER PLADOTT, FLAMECREST
ENTERPRISES LIMITED TRUST, AH PING BAN and
CREDITORS COMMITTEE OF THE BANKRUPTCY
ESTATE OF CHRISTOPHER PATRICK HERON

JAMES F. POMEROY
11 Meadow Haven Drive
Mashpee, MA 02649

CORPORATION OF THE BANKHOUSE, INC.
c/o its President, James F. Pomeroy
11 Meadow Haven Drive
Mashpee, MA 02649

Robert D. Green
ROBERT D. GREEN & ASSOCIATES
440 Louisiana St., Suite 1930
Houston, TX 77002
Telephone: (713) 654-9222
Facsimile: (713) 654-2155
ATTORNEY FOR INTERVENOR INTERNATIONAL
CHILDREN'S FUND-ROKHA PARAKEY, INC.

Kevin R. Michaels
LAW OFFICES OF KEVIN R. MICHAELS, P.C.
11767 Katy Freeway, Suite 730
Houston, TX 77079
Telephone: 281-496-9889
Facsimile: 281-496-4211
ATTORNEY FOR DEFENDANT HOWARD
EUGENE LINER

Richard Howell
BUCKLEY, MATHEWS, WHITE & HOWELL, L.L.P.
2401 Fountainview, Suite 1000
Houston, TX 77057
Telephone: 713-789-7700
Facsimile: 713-789-7703
ATTORNEY FOR INTERESTED PARTY
BUCKLEY, MATHEWS, WHITE & HOWELL, L.L.P.

Mickey L. Washington
THE WASHINGTON LAW FIRM, P.L.L.C.
440 Louisiana St., Suite 1930
Houston, TX 77002
Telephone: 713-654-9222
Facsimile: 713-654-2155
ATTORNEY FOR INTERESTED PARTY LARRY MORRIS

Robert W. Painter
THE PAINTER LAW FIRM, P.L.L.C.
5625 FM 1960 West, Suite 404
Houston, Texas  77069
Telephone: (281) 580-8800
Facsimile: (281) 580-8802
ATTORNEY FOR PLAINTIFFS
E.P.D. MANAGEMENT COMPANY, L.L.C. AND LARRY EWERS

Alan M. Spiro
Attorney for Plaintiff Larry Ewers